## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| KENNETH EUGENE SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **Case No. <u>2:22-cv-00497-RAH</u>** |
| | ) |
| JOHN Q. HAMM, Commissioner, | ) |
| Alabama Department of Corrections, | ) |
| | ) |
| Defendant. | ) |

### Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) of the <br> <u>Federal Rules of Civil Procedure and 42 U.S.C. § 1997e(c)</u>

COMES NOW Defendant John Q. Hamm, Commissioner of the Alabama Department of Corrections, by and through the Attorney General of Alabama, and moves this Honorable Court to dismiss Plaintiff Kenneth Eugene Smith's complaint for failure to state claims upon which relief can be granted. Specifically, Defendant seeks dismissal of Smith's complaint because the facts pleaded, taken as true, establish that both claims are time-barred under the applicable two-year statute of limitations. Additionally, Smith has not exhausted his administrative remedies as to both of his claims for relief, requiring dismissal under the Prison Litigation Reform Act (hereinafter "PLRA"). Finally, the facts pleaded in Smith's complaint, even if true, would not entitle him to the specific relief he requests from the Court under controlling Eighth Amendment precedent.

Specifically, as to Smith's first claim for relief, Smith asks this court to enjoin Defendant "absent a change in Defendants' lethal injection process," but his complaint does not allege the existence of facts showing that there is a feasible, readily available change to the lethal injection process that could be made. (Doc. 1 at 18.) As to his second claim for relief, and related to his failure to exhaust, Smith has not attempted to elect nitrogen hypoxia through Alabama's statutorily required method, so his complaint does not present an actual case or controversy for the court's consideration. That is, Smith has not suffered the rejection of an attempted nitrogen hypoxia election due to Alabama's thirty-day period for inmates to make an election. The relief Smith requested—enjoining Alabama's statutory thirty-day period for method-of-execution elections—has no relation to his claim that he was deprived of the right to make an informed decision in 2018. As discussed herein, Smith's complaint does not seek to address a refusal of Defendant to permit him to elect nitrogen hypoxia; Smith merely asks the Court to prevent Defendant from blocking him from making an election at some point in the future, if he chooses to do so. Giving Smith such preferential treatment compared to other condemned inmates falls outside the permissible scope of his due process challenge and constitutes relief that this Court cannot grant.

**I.    Defendant is entitled to dismissal of Smith's first claim for relief, challenging Alabama's lethal injection protocol, because the facts pleaded in the complaint, taken as true, establish that his complaint is time-barred, Smith has not exhausted his administrative options, and such facts would not permit the relief requested in his complaint.**

Defendant is entitled to a dismissal of Smith's first claim for relief on statute of limitations grounds. A statute of limitations dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is warranted whenever the facts pleaded in the complaint, taken as true, show that the plaintiff's claims are time-barred. *La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citing *Omar v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003)). Additionally, Defendant is entitled to dismissal of the complaint under the PLRA because Smith failed to exhaust his administrative remedies, requiring the court to use the two-step process set forth in *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008). Finally, Defendant is entitled to dismissal of Plaintiff's first claim for relief because the facts pleaded in the complaint would not permit the Court to provide the relief Smith requests from the Court.

**A.    Smith's first claim for relief is barred by the statute of limitations.**

Alabama inmates like Smith who challenge the method of judicial execution to be used to carry out their sentence must file suit within two years of either the date

3

their direct review is completed by denial of certiorari or "the date on which the capital litigant becomes subject to a new or substantially changed execution protocol." *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008); *see also Gissendaner v. Comm'r*, *Ga. Dep't of Corr.*, 779 F.3d 1275, 1280–81 (11th Cir. 2015). A claim that accrues by virtue of an alleged "substantial change" in a state's execution protocol is limited to the particular aspect of the protocol that the plaintiff alleges has changed, and a "wholesale challenge" to a state's protocol is not permissible in that case. *Gissendaner*, 779 F.3d at 1280–81. Where a plaintiff's claims "rely on factual conditions that have not changed in the past twenty-four months," they are time-barred. *Id*. at 1281.

In his first claim for relief, Smith alleges that execution of his sentence through Alabama's lethal injection protocol will violate his Eighth Amendment right to be free from cruel and unusual punishments. His claim incorporates the first seventy-nine paragraphs of his complaint as support. (Doc. 1 ¶ 80.) A review of those factual averments, even accepting them as true, establishes that Defendant is entitled to dismissal of this claim under the governing two-year statute of limitations.

Importantly, Smith does not allege that Alabama's lethal injection protocol has substantially changed since the execution of Ronald Bert Smith in December

4

2016; to the contrary, his first claim for relief is predicated on alleged facts[1] about that execution. (*Id.* ¶¶ 18–30.) To establish the required Eighth Amendment element of a substantial risk that ADOC will cause him harm or severe pain, Smith pleads his factual view of the executions of Ronald Bert Smith in 2016 and Torrey McNabb in October 2017, and the attempted execution of Doyle Lee Hamm in February 2018. (*Id.* ¶¶ 23–30.) In the paragraphs immediately preceding his discussion of these prior events, paragraphs 18 through 22, Smith alleges that ADOC has historically failed to publicly disclose its execution protocol, as a matter of policy maintains secrecy as to the identity of the person (or persons) responsible for establishing intravenous access and the supplier of its lethal injection drugs, and performs the task of obtaining intravenous access prior to the "public" portion of a judicial execution. Smith also notes that aspects of Alabama's lethal injection protocol was not publicly available until a federal court required the protocol to be disclosed in redacted form in 2019 (*Id.* ¶ 18.)

Assuming each of these allegations is true, Smith has been able to act on these facts since no later than December 31, 2019,[2] placing his August 18, 2022, complaint

---

[1] Notably, Smith cites only to press articles regarding this execution, not to any judicially tested fact.

[2] A motion to dismiss pursuant to Rule 12(b)(6) is limited to the facts pleaded in the complaint. Because Smith failed to identify the date of the federal court's 2019 order, this motion gives Smith the (inaccurate) benefit of assuming that this order occurred on December 31, 2019, the most favorable construction of this factual pleading for him.

well outside of the applicable two-year statute of limitation. As to the Ronald Smith, Torrey McNabb, and Doyle Hamm factual averments, the complaint concedes that all occurred in or before February 2018, placing those aspects of the complaint further outside of the statute of limitation. And Alabama's decision not to identify the person (or persons) responsible for establishing intravenous access has not changed throughout its use of lethal injection as a method of execution. There has been no change as to this aspect of Alabama's policies or procedures in the twenty-four months preceding the filing of Smith's lawsuit, and Smith pleads no facts that would suggest otherwise.

Even if Alabama's maintenance of secrecy as to the identities of those who assist Holman's warden in his statutory duties pertaining to judicial execution were a recent development, it would not save Smith's complaint from dismissal. For example, the Eleventh Circuit has held that Georgia's adoption of a law accomplishing the same ends of secrecy was not a "substantial change" to its lethal injection protocol for statute of limitations purposes. *Gissendaner*, 779 F.3d at 1281–82 (citing *Wellons v. Comm'r, Ga. Dep't of Corr.*, 754 F.3d 1260, 1267 (11th Cir. 2014)). Because Alabama's secrecy policy predates Georgia's decision, it is plain that these factual averments do nothing to exclude Smith's complaint from the application of the statute of limitations.

6

Similarly, the Eleventh Circuit has previously held that claims alleging insufficient training of ADOC personnel tasked with carrying out lethal injections are time-barred where a plaintiff fails to allege that ADOC has recently altered its training or credentialing requirements, or that the results stem from any change to the lethal injection practices that have been in place since 2002. *Boyd v. Warden, Holman Corr. Fac.*, 856 F. 3d 853, 874 (11th Cir. 2017). As noted in *Boyd*, "To allow each instance of employee turnover in a state's execution team to create a new Eighth Amendment violation would render the "significant change" requirement meaningless." *Id*. at 875. Thus, while Smith's complaint does not even make such an explicit claim, even a "liberal reading" of his factual pleadings to encompass such a claim would not prevent the application of the statute of limitations.

The facts pleaded in support of Smith's "alternate method" of nitrogen hypoxia—another required element of an Eighth Amendment claim—also reveal his claim is time-barred. Plaintiff Smith cites the April 10, 2019, opinion of the Eleventh Circuit in *Price v. Dunn* (Doc. 1 ¶ 54), cites Governor Ivey's signing of the law adding nitrogen hypoxia as a statutory method of execution, notes that Alabama's nitrogen hypoxia amendment became law on June 1, 2018 (*id.* ¶ 55), cites a February 2018 press article (*id.* ¶ 56), describes the alleged activities of the Federal Defenders for the Middle District of Alabama in and around the month of June 2018 (*id.* ¶¶ 61–64), and alleges that Holman's warden ordered the distribution of nitrogen hypoxia

forms to all death row inmates on June 26, 2018 (*id.* ¶ 65). Each of these factual averments, if true, demonstrate that no later than April 10, 2019, Smith was aware of the potential availability of nitrogen hypoxia as an alternative method of execution for purposes of an Eighth Amendment claim. Thus, his August 18, 2022, complaint was filed far outside of a two-year period after the *last* of these "nitrogen hypoxia" facts he relies upon occurred.

Finally, to the extent that Defendant's motion to dismiss is based on 42 U.S.C. § 1997e,[3] it is relevant that Smith has previously challenged Alabama's lethal injection protocol – and had an active challenge pending at the time of the 2018 election period. In dismissing that action, the Honorable Abdul Kallon told Smith in September 2019 that his challenge to Alabama's lethal injection protocol must be brought as a § 1983 action. *See* Memorandum Opinion at *51, *Smith v. Dunn*, 2:15-cv-0384, 2019 WL 4338349 (N.D. Ala. Sep. 12, 2019). Smith, even then represented by his current counsel, was told that his lethal injection challenge "is not cognizable in a federal habeas corpus action," but that a § 1983 action "is the proper way to challenge" Alabama's lethal injection protocol. Had Smith and his counsel

---

[3]. A motion to dismiss pursuant to Rule 12(b)(6) is limited to the facts pled in the complaint and requires accepting them as true. Section 1997e requires the Court to dismiss a frivolous complaint once the Court becomes aware of the deficiency in the filing. As discussed below, the Court can conduct limited fact finding, if necessary, to reach the determination of whether dismissal is required under the PLRA.

considered that legal opinion and followed its instruction, it is possible that he could have timely filed his complaint. However, after that decision, Smith and his counsel waited one month shy of *three years* to file this lawsuit, and only then after the State moved for Smith's execution. Under § 1997e, this Court is not confined to Rule 12(b)(6), and it should consider the fact that Judge Kallon's opinion establishes that Smith had the necessary information to file this claim in a timely manner but that he elected not to do so.

### B. Smith did not exhaust his state administrative remedies prior to filing his complaint.

Under PLRA, Smith was required to exhaust his administrative remedies. Alabama law imposes three requirements on an inmate seeking to elect nitrogen hypoxia: (1) the condemned inmate must personally make an election for nitrogen hypoxia, (2) that election must be placed in writing, and (3) that election must be delivered to the warden of the inmate's correctional facility. Ala. Code § 15-18-82.1(b)(2). These requirements involve actions that *must* be taken by the condemned inmate. Smith did not do that prior to filing his lawsuit, nor has he done that through this lawsuit.[4] Until he has made such an election – even if it is rejected - he has not

---

[4] Indeed, if Smith prevailed under his present complaint and prayer for relief, he would not be subject to execution by nitrogen hypoxia; instead, he would have the luxury of deciding whether he wished to elect at a future date *determined only by Smith himself.*

exhausted his administrative remedies, and there is no adverse action by the State to challenge.

In *Turner v. Broadside*, 541 F.3d 1077, 1082 (11th Cir. 2008), the court developed a two-step process for determining whether to dismiss an inmate's complaint under the PLRA for failure to exhaust state administrative remedies. First, "the court looks to the factual allegations in the defendant's motion to dismiss and those in plaintiff's response." *Id*. If they conflict, the court must take the plaintiff's version as true. *Id*. The court must dismiss if, in that posture, the court determines that the plaintiff failed to exhaust his administrative remedies. Otherwise, the court moves to the second step. It must "make specific findings in order to resolve the disputed factual issues *related to exhaustion*." *Id*. Defendant would bear the burden of proof. The court would then decide the disputed issues of fact and determine whether the inmate exhausted his available remedies. *Id*. Importantly, this process focuses on what the inmate did *before filing his lawsuit*, because the issue is the PLRA's limits on prisoner litigation and when a prisoner can file suit

Smith has not personally elected nitrogen hypoxia, he has not placed his personal election for nitrogen hypoxia into writing, and he has not delivered that written election to the warden of his correctional facility. As a result, Defendant has never prevented Smith from electing nitrogen hypoxia on the basis of the challenged waiver provision. Because Alabama law requires Smith to do those three things to

elect nitrogen hypoxia and he has done *none* of them, he has not attempted to exhaust the available administrative remedies provided by statute. Nor is Smith's failure to do so insignificant. By filing this suit without either attempting to make an election or asking this Court to order the Defendant to accept an election, Smith is attempting to eat his cake and have it – to avoid his lawful execution by lethal injection while simultaneously avoiding any decision about whether to elect nitrogen hypoxia.

Notably, as discussed above, *Smith has not asked this court for nitrogen hypoxia as a method of execution*. Among the allegations in Smith's complaint are that:

- He was "unable to make an informed decision" about whether to elect (Doc. 1 ¶ 6);

- Had he known future events, he "would have chosen" nitrogen hypoxia (*id.* ¶ 8);

- He did not consult with the Federal Defenders for the Middle District of Alabama about making an election (*id.* ¶¶ 62–64);

- He was omitted from an ADOC distribution of an election form (*id.* ¶¶ 66, 68);

- He did not have the means to obtain information about nitrogen hypoxia himself (*id.* ¶ 75);[5]

- He did not elect nitrogen hypoxia during the thirty-day window after the law was enacted (*id.* ¶ 78); and

---

[5]. His complaint is silent about what means were provided by his legal counsel. This is likely to fall within the scope of any hearing the court may order pursuant to *Tucker v. Burnside*, discussed below.

- He *would have* elected nitrogen hypoxia in 2018 had he known that there could be an infinite delay until a nitrogen hypoxia protocol was developed (*id.* ¶ 79).

Absent from Smith's complaint is any claim that he *has elected* nitrogen hypoxia and that his request has been refused by *Defendant*. Nor has Smith prayed for the relief of having Defendant provide nitrogen hypoxia as the method of execution used to carry out his sentence of death.

The closest Smith comes to such a pleading is that he tells the Court that if he had known "that Defendants had no protocol for executing condemned people by nitrogen hypoxia" and that "the choice of nitrogen hypoxia, at a minimum, would have delayed his execution for years" (*id.* ¶ 94), that "he *would have* elected to be executed by nitrogen hypoxia" (*id.* ¶ 95). His *ex post facto* reasoning is understandable, but it does not tell this Court anything about what Smith would actually have done if he had been "more informed" in 2018. Moreover, Smith is alleging that he "would have" elected nitrogen hypoxia in the past, but he has not asked the Court to *order* that he be executed by nitrogen hypoxia. Even his prayer for relief would not require him to elect nitrogen hypoxia. Smith merely asks that Defendant be enjoined from enforcing any waiver *if he chooses to elect nitrogen hypoxia at some future date*. (*Id.* at 18–19). This is, of course, gamesmanship of the first water.

Nor is Smith's failure to attempt election a trivial matter. Taken collectively, Smith's prayer for relief requests (1) a blanket declaration that Alabama's lethal injection protocol is unconstitutional (with no comparison to any alternate method), (2) a limitation on Alabama's ability to use lethal injection "absent a change in Defendants' lethal injection process," even though he has not pleaded an alternate method that would constitute such a "change" in this complaint, (3) an injunction preventing Defendant from enforcing the statutory thirty-day election period *if Smith chooses to elect in the future*, and (4) a declaration that any waiver *that might be applied to Smith if he chooses to elect at a future date* "is invalid and obtained in violation of his due process rights." (*Id.*) Because Smith does not seek to validate an attempted election, and his complaint fails to ask that nitrogen hypoxia be used to carry out his sentence of death, his complaint is, at bottom, nothing more than an attempt to obtain unrestricted authority over when, if ever, his lawful execution can be carried out.

### C.    Smith cannot be awarded the relief he requests as to his first claim for relief.

The Supreme Court has clarified its Eighth Amendment jurisprudence such that there can be no doubt that an inmate's § 1983 challenge to a method of execution is entirely predicated on a mandatory "comparative exercise." *Nance v. Ward*, 142 S. Ct. 2214, 2220 (2022). That is, the inmate must plead facts that, if true, would establish that the challenged execution procedure presents a "substantial risk of

serious harm," defined as "severe pain over and above death itself." *Id.* Additionally, facts must be pleaded showing an alternative method of execution exists "that is feasible, readily implemented, and in fact significantly reduces" the risk of harm identified. *Id.* Those two elements must permit the court to engage in a "comparative exercise" to determine "whether the State has cruelly 'superadded' pain to the punishment of death." *Id.* (quoting *Bucklew v. Precythe*, 139 S. Ct. 1112, 1126 (2019). Finally, a successful § 1983 litigant is not entitled to an order preventing the State from executing the inmate's sentence, instead it must give "the State a pathway forward." *Id.* at 2223.

As to the burden to plead and prove an alternative method of execution that is both feasible and readily implemented, the Court has further explained that this requirement is the equivalent of the inmate "providing the State with a veritable blueprint for carrying the death sentence out." *Id.* That is, if the inmate "wins" his lawsuit, "it is because he has persuaded a court that the State could readily use his proposal to execute him." *Id.* As to his challenge to lethal injection, Smith pleaded nitrogen hypoxia as the required alternate method of execution. (Doc. 1 ¶¶ 85–87.)

Smith's "prayer for relief" as to this claim does not mention nitrogen hypoxia, nor does it mention Alabama's ability to carry out his judicial execution. Instead, Smith asks for "[a] preliminary and permanent injunction prohibiting Defendants from executing Plaintiff by lethal injection *absent a change in Defendants' lethal*

*injection process to reduce the intolerable risk of torture, cruelty, or substantial pain.*" (*Id.* at 18 (emphasis added).) However, as the Supreme Court emphasized in *Nance*, this Court cannot order the State of Alabama to "change" its lethal injection process *unless and until* Smith proves the existence of an alternative method that is markedly safer and removes the risks he identified. Smith has not pleaded any facts about how Alabama's lethal injection protocol could be amended or changed to cure the constitutional risks he identifies in his complaint. In other words, even if the Court accepted every factual pleading made by Smith as true, Smith *cannot* obtain the relief requested in Prayer for Relief 1a.

Smith's other requested relief as to the first claim is for "[a] declaration that executing Mr. Smith by Defendants' current lethal injection process would constitute cruel and unusual punishment in violation of Mr. Smith's rights." (Doc. 1 at 18.) Again, this Court does not possess the ability to grant that relief in an Eighth Amendment § 1983 action. Smith is required to "make the case that the State really can put him to death, though in a different way than it plans" by "providing the State with a veritable blueprint for carrying the death sentence out." *Nance*, 142 S. Ct. at 2223. That is, the relief requested *must* be that "the State could readily use his proposal to execute him." *Id.* But that is not what Smith requests.[6]

---

[6] To the extent Smith might try to rely on *Price v. Commissioner, Department of Corrections* that he "may satisfy his burden to demonstrate that the method of execution is feasible and readily implemented by pointing to the executing state's

To be clear, Smith is not entitled to the blanket declaration of unconstitutionality that he seeks, as it falls *entirely* outside of the scope of a proper § 1983 claim. A comparative assessment between Alabama's current method of execution and Smith's alternative method is *required* by the Eighth Amendment. *Bucklew*, 139 S. Ct. at 1128. This Court cannot declare Alabama's lethal injection protocol "cruel and unusual punishment" "under the Eighth and Fourteenth Amendments" in isolation, as Smith requested. Instead, it could only identify Smith's feasible, readily available alternative execution method as being one that "would significantly reduce a substantial risk of severe pain" associated with Alabama's current method and order Defendant to use that method to execute Smith. *Id*. at 1130. Again, this is not what Smith requests.

Because Smith asks the Court to order Defendant to change its lethal injection protocol without pleading a feasibly and readily implementable alternative that would constitute such a change, Smith's complaint seeks relief that he *cannot* obtain. Further, by refusing to ask for nitrogen hypoxia as his method of execution and by failing to seek an order that he be executed by nitrogen hypoxia, Smith asks for

---

official adoption of that method of execution," 920 F.3d 1317, 1328 (11th Cir. 2019), *Price*'s reasoning cannot be squared with *Nance* and was thus abrogated by the Supreme Court's decision. *Nance* made abundantly clear that whether the State has authorized a method of execution or not is immaterial to the question of "whether the State really can put [a prisoner] to death, though in a different way than it plans." 142 S. Ct. at 2223.

relief—a simple declaration that Alabama's lethal injection protocol is unconstitutional—that cannot be granted. Pursuant to 42 U.S.C. 1997e(c) and Rule 12(b)(6), Defendant is entitled to dismissal of Smith's first claim for relief.

II.   **Defendant is entitled to dismissal of Smith's second claim for relief, challenging Alabama's statutory thirty-day window for method-of-execution election, because the facts pleaded in his complaint, taken as true, establish that his complaint is time-barred, demonstrate that his claim is not ripe, and would not permit the relief requested.**

Defendant is entitled to a dismissal of Smith's second claim for relief on statute of limitations grounds. As noted earlier, statute of limitations dismissal pursuant to Rule 12(b)(6) is warranted whenever the facts pleaded in the complaint, taken as true, show that the plaintiff's claims are time-barred. *La Grasta*, 358 F.3d at 845 (citing *Omar*, 334 F.3d at 1251). Additionally, Defendant is entitled to dismissal of Smith's second claim for relief because the facts pleaded in the complaint fail to present an actual case or controversy. Finally, the facts pleaded in Smith's complaint, even if true, would not permit the Court to provide the relief Smith requests from the Court.

A.   **Smith's second claim for relief is barred by the statute of limitations.**

In his second claim for relief, Smith alleges that Defendant violated his right to due process of law by failing to provide him notice of a statutorily imposed thirty-day window for death-sentenced inmates (as of June 2018) to elect judicial execution

by means of nitrogen hypoxia. Specifically, Smith attacks the manner in which the warden of Holman Correctional Facility distributed election forms (Doc. 1 ¶ 65), the fact that he was not included in the legal efforts of the Federal Defenders for the Middle District of Alabama (*id.* ¶¶ 62–64), and the (obvious) fact that both he and ADOC officials lack clairvoyance (*id.* ¶¶ 70, 73–74, 77, 79, 94.)

For statute of limitations purposes, Smith appears to attack two actions by state actors: (1) the inclusion of a thirty-day election window in the Alabama statute, and (2) the manner in which election forms were distributed at Holman Correctional Facility in late June 2018. As to the former issue, Smith admits that the law, including the thirty-day provision, became effective on June 1, 2018. (*Id.* ¶ 72.) As to the latter issue, Smith concedes that these actions occurred in late June 2018. (*Id.* ¶ 65.) Smith further makes clear that his complaint is that he "lacked notice of [his election] right during the 30-day window providing for making that election." (*Id.* ¶ 93.) But, crucially, Smith does not allege that he did not *know* about the election early enough to timely file this complaint. Instead, he alleges that he "did not know and had no way of knowing" that Alabama's nitrogen hypoxia protocol "would not be implemented for years[.]" (*Id.* ¶ 77.) This is not a distinction without a difference, especially considering the fact that Smith has been represented by *the same counsel* for the entire period between June 2018 and the present day. Smith might not have known how long it would take to develop the first-ever nitrogen hypoxia protocol in

18

the nation – indeed no one *could* have known – but he certainly had the means to learn about the election process, and he *does not deny that he knew about it.*

Still, Smith filed his complaint on August 18, 2022, more than *four years* after the nitrogen hypoxia provision in Alabama's law was enacted and after the distribution of election forms he challenges on due process grounds. Even if Smith's claim that Holman's warden erred in a constitutionally significant manner as to how election forms were distributed had any basis in fact, that event happened more than four years prior to the filing of Smith's complaint. Smith has not alleged that Defendant (or anyone else) has prevented him from asking a federal court to vindicate his due process rights in the intervening four-year period.

As noted previously, Defendant has not had occasion to consider how the waiver language in the nitrogen hypoxia statute should be interpreted because Smith has never personally requested nitrogen hypoxia by submitting a written request to his warden. Alabama has never used the "waiver" provision of this law as a means of depriving Smith of anything. For statute of limitations purposes, it is relevant that Smith has not attempted to make such an election, even though he claims that if he had effectively been clairvoyant about the time required to develop a nitrogen hypoxia protocol "he would have" elected nitrogen hypoxia in 2018. But he did not, and, instead, waited until the State sought a date for his execution to claim a violation of his constitutional rights.

**B.      Smith's second claim for relief fails to state a due process claim upon which relief may be granted.**

Smith's second claim for relief is due to be dismissed primarily based on what he failed to plead, rather than on what is pleaded. That is, Smith has never asked the State to execute him by way of nitrogen hypoxia, and he does not ask to be executed by nitrogen hypoxia in his complaint. If Smith does not wish to be executed by nitrogen hypoxia, then Alabama has not deprived him of any recognizable right requiring further proceedings.

Smith's second claim for relief is that he was (1) deprived of information necessary to make an informed decision, and (2) that he could not elect nitrogen hypoxia because of waiver language in the statute (that Defendant has never applied to him). However, Smith does not challenge the law's requirement that the inmate personally elect nitrogen hypoxia, that the election be made in writing, or that the election be delivered to the warden of inmate's correctional facility. Smith challenges *only* the statutory time limit for making his election.

It is odd, then, that Smith has not personally elected nitrogen hypoxia in writing and attempted to deliver his election to the warden of his correctional facility. At present, Smith cannot be executed by nitrogen hypoxia, not because of any time limit, but because he has never asked to make that election. Even in this Court, Smith does not ask for the relief that he be executed by nitrogen hypoxia.

Further, Smith cannot obtain the relief he requests because such relief has no relationship to the due process violation he alleges. *If* the Holman warden constitutionally erred during the election process to Smith's detriment, the only legal harm would be if Smith elected nitrogen hypoxia and was denied on the basis of the thirty-day election window. In that case, the relief the Court could grant would be to strike down the thirty-day election period as applied to Smith and to award him nitrogen hypoxia as his method of execution.

But Smith asks for something else entirely: he asks this Court to enjoin Defendant from asserting the statutory time period *in the future*. Again, if the "waiver" issue is what Smith claims has violated his constitutional rights and caused him legitimate harm, this Court does not need to enjoin Defendant; rather, it must order Defendant to provide Smith the election that he wanted to make *but for the waiver*. Because the relief that Smith requests has no relationship to the due process violation he alleges and he cannot legally obtain that relief, his complaint is due to be dismissed.

### C.     Smith's claim regarding notice of the time required to develop the nitrogen hypoxia protocol cannot be vindicated through this action.

To the extent that Smith claims that the Defendants violated a liberty interest by failing to provide him with adequate "notice" that "the Defendants had no protocol for … nitrogen hypoxia" and that such executions would be "delayed [] for years," his claim should be dismissed for an additional reason. (Doc. 1 ¶ 92-95.)

Aside from the practical issues with requiring clairvoyance on the part of Defendants, the statutory election scheme was not concerned with the time required to develop the nitrogen hypoxia protocol – it only provided death row inmates a one-time opportunity to elect a new method of execution. The Supreme Court has made it clear that plaintiffs bringing due process claims "must show that the facts they seek to establish … are relevant under the statutory scheme." *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 8 (2003). In *Doe*, a § 1983 litigant challenged Connecticut's sex offender registration scheme on the grounds that listing offenders violated a "liberty interest" without providing the offender with an opportunity to show that he was not a dangerous predator. *Id*. at 4-6. But as the Court observed, "Connecticut has decided that the registry information of *all* sex offenders—currently dangerous or not—must be publicly disclosed." *Id*. at 7. Thus, a hearing to prove the offender was not dangerous would be a "bootless exercise." *Id*. at 8. In the present case, the statutory scheme at issue did not contemplate how long it would take to execute the prisoner by one method or another – that question was irrelevant to Alabama's decision to offer all inmates a one-time opportunity to elect nitrogen hypoxia. To be sure, each inmate's choice could be influenced by numerous variables, but while those variables might be of great concern to the inmate, they were not "relevant under the statutory scheme." *Id.* at 8. Because the election scheme did not include any duty to inform inmates of the myriad potential variables that

might affect their choice, the alleged failure to inform Smith of the unknowable facts regarding the amount of time it would take to develop the nitrogen hypoxia protocol did not violate Smith's right to due process.

### III. Defendant ADOC is entitled to dismissal of Smith's Complaint on the Grounds of Sovereign Immunity.

Defendant ADOC is an agency of the State of Alabama and, as such, is entitled to sovereign immunity. *See, e.g.*, U.S. CONST. amend XI. "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). The Alabama Constitution makes clear that Alabama has not consented to this suit. *See* ALA. CONST. art. I, § 14. The key question is thus whether Congress has validly "abrogate[d]" Alabama's immunity "by appropriate legislation." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253–54 (2011). It has not.

The standard for finding a valid abrogation is "stringent." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 56 (1996). Even where Congress has the power to abrogate state immunity, it may do so "only by making its intention *unmistakably clear* in the language of the statute." *Id.* (emphasis added; internal quotation marks omitted). Smith cites no such abrogation in his petition, nor is Defendant ADOC aware of any. Consequently, Smith's complaint is due to be dismissed as to Defendant ADOC.

## Conclusion

For the reasons stated above, the Court should dismiss all claims asserted against Defendants Hamm and the ADOC.

Respectfully submitted,

Steve Marshall,
*Attorney General*

/s/ Richard D. Anderson
Richard D. Anderson
*Assistant Attorney General*

# CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of August 2022, I electronically filed the foregoing using the CM/ECF system which will send notification of such filing to the following: **Andrew B. Johnson, Jeffrey H. Horowitz, David A. Kerschner, and Robert M. Grass.**

/s/ *Richard D. Anderson*
Richard D. Anderson
***Counsel for Defendant***

OFFICE OF ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Richard.Anderson@AlabamaAG.gov