IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KENNETH EUGENE SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:22-CV-497-RAH |
| | ) | [WO] |
| JOHN Q. HAMM, Commissioner, | ) | |
| Alabama Department of Corrections, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Plaintiff Kenneth Eugene Smith is an Alabama death row inmate in the custody of the Alabama Department of Corrections (ADOC) and housed in the Holman Correctional Facility[1] in Atmore, Alabama.  Presently, Smith is scheduled for execution by lethal injection on November 17, 2022.  On August 18, 2022, Smith filed a Complaint pursuant to 42 U.S.C. § 1983, asserting two causes of action against Defendants John Q. Hamm, Commissioner of the ADOC, in his official capacity (Commissioner), and the ADOC[2]: (1) Alabama's three-drug lethal injection

---

[1]  Holman is the primary correctional facility for housing death row inmates in Alabama and is the only facility in the state that performs executions.

[2]  Smith has since withdrawn his claims against the ADOC.  (Doc. 12 at 4, n.1.)

protocol violates his right to be free from cruel and unusual punishment under the Eighth Amendment, and (2) his purported waiver of his right to elect an execution by nitrogen hypoxia violates his Fourteenth Amendment due process rights.  Smith seeks declaratory and injunctive relief.

The Commissioner has moved to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6) and 42 U.S.C. § 1997e(c).  The Commissioner argues that Smith's Eighth Amendment challenge is time-barred and non-justiciable because of his failure to exhaust state administrative remedies and because it does not properly assert a method-of-execution challenge under 42 U.S.C. § 1983.  As to Smith's Fourteenth Amendment challenge, the Commissioner similarly argues that the claim is time-barred and that it fails to state a claim upon which relief may be granted. The motion has been fully briefed and is ripe for review.   For the following reasons, the Commissioner's Motion to Dismiss is due to be granted.

## II. JURISDICTION AND VENUE

The Court has original subject matter jurisdiction of this case pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), 2201(a).

Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III.  BACKGROUND

### A.     Backdrop of the Present Action

*1.  Nitrogen Hypoxia Becomes an Alternative Method of Execution*

On June 1, 2018, Alabama Act 2018-353 went into effect.  *See* 2018 Ala. Laws Act 2018-353; Ala. Code § 15-18-82.1(b).  This law granted death row inmates one opportunity to elect nitrogen hypoxia as their method of execution, in lieu of Alabama's default method, lethal injection.  Ala. Code § 15-18-82.1(b).  The nitrogen hypoxia election process requires an inmate to make that election in writing and deliver it to his or her warden within thirty days after a certificate of judgment has been issued affirming the inmate's conviction.  *Id*.  Inmates, like Smith, whose certificates of judgment issued prior to June 1, 2018, had from June 1 until July 2, 2018,[3] to elect nitrogen hypoxia in writing to the warden.  *Id.* at § 15-18-82.1(b)(2).

Any writing from the inmate is sufficient under the statute.  An inmate's failure to elect nitrogen hypoxia within the thirty-day period operates as a waiver of that method of execution.  *Id.* ("The election for death by nitrogen hypoxia is waived unless it is personally made by the person in writing and delivered to the warden of

---

[3] Alabama law states that the "[t]ime within which any act is provided by law to be done must be computed by excluding the first day and including the last.  However, if the last day is Sunday, . . . the last day also must be excluded, and the next succeeding secular or working day shall be counted as the last day within which the act may be done."  Ala. Code § 1-1-4.  Excluding June 1, 2018, the day the statutory period began to run, the thirty-day period expired on July 1, 2018.  July 1, 2018, was a Sunday and thus could not be counted as the last day.  Thus, under Alabama rules of construction, the statutory period to elect nitrogen hypoxia was from June 1, 2018, through July 2, 2018.

the correctional facility. . . . If a certificate of judgment is issued before June 1, 2018, the election must be made and delivered to the warden within 30 days of that date.").

### 2. No Execution Protocol Developed for Nitrogen Hypoxia

When the Alabama Code was amended to add nitrogen hypoxia as an alternative execution method, and throughout the election period, the ADOC had not yet developed a protocol for performing nitrogen hypoxia executions. Smith states that "[t]o date, ADOC has not established a protocol for executing condemned people by nitrogen hypoxia despite repeated representations to courts that one is imminent." (Doc. 1 at 14.)

### 3. Smith Did Not Elect Nitrogen Hypoxia During the Election Window

Smith states that during the thirty-day election window in June 2018, he did not know that the ADOC "had no protocol for execution by nitrogen hypoxia and no prospect for developing one, thereby resulting in indefinite delays of execution for condemned people who chose execution by nitrogen hypoxia." (*Id.* at 3.) He further states that "[h]ad he known that the State was offering him a choice between an unknown nitrogen hypoxia protocol that may not be implemented for many years and a lethal injection protocol that subjects him to an intolerable risk of torture, cruelty, or substantial pain," he would have elected execution by nitrogen hypoxia. (*Id.*)

4

*4. Smith's Execution Date is Set*

On June 24, 2022, Alabama Attorney General Steve Marshall moved the Alabama Supreme Court to set Smith's execution date. On September 30, 2022, the Alabama Supreme Court set Smith's execution date for November 17, 2022.

**B.     Smith's Claims**

Against this backdrop, Smith alleges that Alabama's three-drug lethal injection protocol violates his right to be free from cruel and unusual punishment under the Eighth Amendment. Further, Smith clams that the ADOC's failure to provide him with information necessary to make a knowing and voluntary waiver of his nitrogen hypoxia election right in 2018 violated his due process rights under the Fourteenth Amendment.

## IV.  STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In ruling on a motion to dismiss for failure to state a claim upon which

relief can be granted, the court must accept well-pled facts as true, but the court is not required to accept a plaintiff's legal conclusions. *Id.* at 664.

A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. *See id.* at 679 (explaining that "only a complaint that states a plausible claim for relief survives a motion to dismiss"). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted). Conclusory allegations that fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Id.* This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting

*Twombly*, 550 U.S. at 555). It is the plaintiff's responsibility to allege sufficient facts to support his claims. *Twombly*, 550 U.S. at 555.

## V. DISCUSSION

### A. Smith's Eighth Amendment Claim

The Commissioner argues that Smith's Eighth Amendment claim is time-barred because he did not bring this challenge to the lethal injection protocol within two years of the protocol having undergone its last substantial change.

"[A] federal claim accrues when the prospective plaintiff 'knows or has reason to know of the injury which is the basis of the action.'" *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008) (quoting *Corn v. City of Lauderdale Lakes*, 904 F.2d 585, 588 (11th Cir. 1990)). To determine the statute of limitations for a claim brought pursuant to § 1983, the Court looks to the law of the state where the claim accrued. "All constitutional claims brought under §1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." *Id.* In Alabama, the statute of limitations applicable to personal injury actions is two years. Ala. Code § 6-2-38. Therefore, for Smith's Eighth Amendment claim to be timely, it must have been brought within two years of its accrual.

An Eighth Amendment method-of-execution claim "accrues on the later of the date on which state review is complete, or the date on which the capital litigant

becomes subject to a new or substantially changed execution protocol." *McNair*, 515 F.3d at 1174.  "However, a substantial change to a state's lethal injection protocol doesn't create an open season on all aspects of the state's protocol." *Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 873 (11th Cir. 2017).  "[A] claim that accrues by virtue of a substantial change in a state's execution protocol is *limited to the particular part* of the protocol that changed."  *Id.* at 873 (emphasis added) (quoting *Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275, 1280–81 (11th Cir. 2015)).  Thus, "a substantial change to one aspect of a state's execution protocol does not allow a prisoner whose complaint would otherwise be time-barred to make a 'wholesale challenge' to the State's protocol." *Gissendaner*, 779 F.3d at 1281 (citing *Henyard v. Sec'y, DOC*, 543 F.3d 644, 647 (11th Cir. 2008)).

Smith was convicted of capital murder in 1996.  *See Smith v. State*, 908 So. 2d 273, 278 (Ala. Crim. App. 2000).  Lethal injection using a three-drug protocol became the primary method of execution in Alabama on July 31, 2002.  *Boyd*, 856 F.3d at 860, 874; *see also* Ala. Code § 15-18-82.1(a).  In 2019, according to the Complaint, the State released a redacted version of its lethal injection protocol to the public.  The Complaint does not assert that there were any changes made to the protocol when it was released in 2019.  Even assuming *arguendo* that the State overhauled its lethal injection protocol when it publicly released the protocol in 2019, the statute of limitations for Smith to challenge the lethal injection protocol in

its entirety expired on December 31, 2021, at the latest—months before Smith initiated the current litigation on August 18, 2022.[4]

Smith asserts that the execution of Joe Nathan James on July 28, 2022, demonstrates that the ADOC has changed its lethal injection protocol, thus setting a new accrual date for his Eighth Amendment claim.[5] Smith also points to specific aspects of the James execution as demonstrating alterations to the protocol. For instance, Smith cites the duration of the James execution as evidence of a change in protocol, asserting that the process lasted for more than three-and-a-half hours. Yet, Smith does not plead sufficient facts to show that the duration of James's execution was a substantial change in protocol.

Smith also points to the ADOC's alleged use of a cutdown procedure as well as an intramuscular sedation procedure during the James execution, as reported by various news outlets and public interest groups—assertions that the Commissioner vehemently disputes. Smith asserts that these procedures are not part of the ADOC's

---

[4] Smith's Complaint does not assert the date when the lethal injection protocol was made public in 2019. For purposes of the statute of limitations analysis, the Court finds that even if the protocol was released on December 31, 2019, the claim would nevertheless be time-barred.

[5] Smith's Complaint contains other allegations that constitute additional triggering dates for the statute of limitations, including those referencing the execution of Ronald Bert Smith on December 8, 2016; the execution of Torrey Twane McNabb on October 18, 2017; and the attempted execution of Doyle Lee Hamm on February 22, 2018. These executions and attempted executions occurred well outside the two-year window for Smith to bring his claim challenging the same protocol. Smith largely ignores these factual allegations in his brief in response to the Commissioner's Motion to Dismiss, placing singular focus on the recent James execution.

established lethal injection protocol.    Assuming without deciding that these assertions are accurate and constitute a substantial alteration to the protocol, Smith would only be permitted to challenge the specific change or changes to the lethal injection protocol enacted during the James execution, not the entire lethal injection protocol.[6]  *Cf. Boyd*, 856 F.3d at 873–74 (holding that the plaintiff's allegations of inadequate training for ADOC execution personnel were barred under the applicable statute of limitations because the plaintiff could not show that the ADOC recently altered its training and credentialing requirements for members of the execution team).  Therefore, to the extent Smith challenges the entire lethal injection protocol as violative of the Eighth Amendment, he cannot rely on the James execution as resetting the statute of limitations on his claim.  *See Gissendaner*, 779 F.3d at 1280–81.

The Commissioner represents in his brief and during oral argument that the ADOC did not employ a cutdown procedure or intramuscular sedation during the James execution and denies "any present intent to employ any such procedure[s] in the future."  The Commissioner further "stipulate[s] that [the ADOC] will not employ a 'cutdown' procedure or intramuscular sedation during the execution of

---

[6] In his brief in response to the Commissioner's Motion to Dismiss, Smith extrapolates from James's execution that something must have changed in the protocol based on news reports following the execution.  But again, Smith's constitutional challenge is based on the protocol as a whole, not the constitutionality of the changes that news reports suggest has occurred.

Smith set for November 17, 2022." Use of such procedures during an execution could constitute a sufficient change in the protocol to re-start the statute of limitations clock as related to those changes only. But as previously explained, the Complaint does not assert an Eighth Amendment challenge directed solely to the use of a cutdown procedure or intramuscular sedation. Instead, Smith challenges the lethal injection protocol as a whole.

But even if the Court could construe Smith's Complaint as asserting an Eighth Amendment challenge to a cutdown procedure or intramuscular sedation sufficient to avoid the limitations bar, there is no need to address the underlying merits of such a claim because of the Commissioner's representations and stipulations to this Court.[7] Instead, as invited by counsel for the Commissioner, the Court will order the Commissioner to abide by his stipulation, made in writing and in sworn testimony, that the ADOC will not employ a cutdown procedure or intramuscular sedation during Smith's execution. Additionally, the Court will order that the Commissioner and his agents are prohibited from deviating from the ADOC's established lethal injection protocol during Smith's execution. Sanctions will be

---

[7] While there has been minimal judicial discussion on whether cutdown procedures violate the Eighth Amendment, one court has determined that Arkansas's cutdown procedure, which per protocol requires administration by a physician and the use of a local anesthetic agent, does not create a substantial risk of serious harm such that it violates the Eighth Amendment. *Nooner v. Norris*, 594 F.3d 592, 604 (8th Cir. 2010). This Court takes no position as to whether a cutdown or similar procedure during a lethal injection execution would violate the Eighth Amendment.

swift and serious if counsel and the Commissioner do not honor or abide by their representations and stipulations.[8]

Accordingly, the Court will grant the Commissioner's motion to dismiss Smith's Eighth Amendment claim, while also ordering the Commissioner and his agents to strictly follow the established lethal injection protocol during Smith's execution.

## B.  Smith's Fourteenth Amendment Claim

The Commissioner similarly argues that Smith's Fourteenth Amendment due process claim is time-barred.

To establish a due process violation under 42 U.S.C. § 1983, a plaintiff must show: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).  In a due process challenge, the statute of limitations begins to run "from the date 'the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Brown v. Ga. Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003) (quoting *Rozar v. Mullis*, 85 F.3d 556, 561–62 (11th Cir. 1996)).

---

[8] The Eleventh Circuit has held that "sanctions under Federal Rule of Civil Procedure 11 are a 'collateral' issue and thus a court may decide a Rule 11 sanctions motion even if it lacks jurisdiction over the underlying case." *Hyde v. Irish*, 962 F.3d 1306, 1309 (11th Cir. 2020) (citing *Willy v. Coastal Corp.*, 503 U.S. 131, 137–39 (1992)).

Smith asserts the statute of limitations for this claim did not begin to run until he learned about the deficiencies of the ADOC's lethal injection protocol shortly after July 28, 2022—the date of James's allegedly "botched" execution. The Court struggles with the nexus Smith attempts to establish between James's execution by lethal injection in July 2022 and any possible deficiencies with the nitrogen hypoxia election process in June 2018. It appears that Smith's concern regarding alleged deficiencies with the nitrogen hypoxia election process is not based on the actual election process itself, but rather his concerns about the lethal injection protocol as evidenced by several lethal injection executions over the past several years including that of Joe Nathan James.

From the face of the Complaint, Smith's claim is more appropriately rooted in the thirty-day election window that closed on July 2, 2018. The statute of limitations for such a claim expired in July 2020. Smith alleges no facts that, legally, would toll the statute of limitations concerning the closure of that window. To the extent Smith asserts that he was unaware of the election period in 2018, this assertion alone is insufficient to overcome the legal presumption that all citizens know the law. *See Price v. Dunn*, 139 S. Ct. 1533, 1535 (2019) (Thomas, J., concurring in the denial of certiorari) (explaining that Alabama death row inmates are "presumed to be aware of the law" and thus the deadline for electing nitrogen hypoxia); *Hardy v. Hardin*, 200 So. 3d 622, 630 (Ala. 2016); *Rice v. Tuscaloosa Cnty.*, 4 So. 2d 497,

501 (Ala. 1941) ("All men are conclusively presumed to know the law, without which legal accountability could not be enforced, and judicial administration would be embarrassed at every step.") (internal quotation marks and citation omitted)).

Smith similarly asserts that he was unaware in 2018 that choosing between nitrogen hypoxia and lethal injection would be akin to choosing "between execution by an unknown nitrogen hypoxia process that would not be implemented for years, if ever, and by a lethal injection process that would subject him to an intolerable risk of torture, cruelty, or substantial pain." (Doc. 1 at 15.) This claim is facially insufficient to overcome a clear statute-of-limitations hurdle.[9]

To the extent Smith challenges the procedure by which death row inmates could elect nitrogen hypoxia, his claim is untimely. Accordingly, the Court will grant the Commissioner's motion to dismiss Smith's Fourteenth Amendment claim.

---

[9] The Eleventh Circuit has considered a similar challenge to the nitrogen hypoxia election process presented on a motion for a preliminary injunction. *See Woods v. Comm'r, Ala. Dep't of Corr.*, 951 F.3d 1288 (11th Cir. 2020). In *Woods*, the court considered whether an inmate was likely to succeed on his § 1983 procedural due process claim based on the state's failure to inform him that electing nitrogen hypoxia would affect the timing of his execution. *Id.* at 1293. The Eleventh Circuit held that Mr. Woods was unlikely to succeed on this claim, since electing nitrogen hypoxia would not ultimately spare him from execution, he was represented by counsel, and he received an election form from his warden. *Id.* at 1294. While Smith's claim is distinct due to his assertion that he never received an election form (Doc. 1 at 14), he would face difficulty challenging this precedent if the Court denied this motion to dismiss. Nevertheless, the statute of limitations on this claim expired in July 2020, two years after the election period ended.

## VI. CONCLUSION

Accordingly, it is hereby ORDERED[10] as follows:

1. The Commissioner's Motion to Dismiss (Doc. 10) is GRANTED;

2. Smith's claims against the ADOC are DISMISSED upon Smith's consent;

3. The Commissioner and his agents, which include all ADOC employees involved in Kenneth Eugene Smith's execution, are to strictly adhere to, and not deviate from, the ADOC's established lethal injection protocol during Smith's execution.  In particular, the Commissioner and his agents shall not perform a cutdown procedure or use intramuscular sedation on Smith.

**DONE** this the 16th day of October, 2022.

                     /s/ R. Austin Huffaker, Jr.
                     R. AUSTIN HUFFAKER, JR.
                     UNITED STATES DISTRICT JUDGE

---

[10] Since both claims are time-barred, the Court does not reach the Commissioner's other arguments for dismissal.

15