IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| **KENNETH EUGENE SMITH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | CASE NO. 2:22-cv-0497-RAH |
| **vs.** ) | |
| ) | |
| **JOHN Q. HAMM, Commissioner,** ) | EXECUTION SCHEDULED FOR |
| **Alabama Department of Corrections,** ) | NOVEMBER 17, 2022 |
| ) | |
| ) | |
| **Defendant.** ) | |

**PLAINTIFF'S MOTION TO ALTER OR AMEND THE JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 59(e) AND TO EXPEDITE RESOLUTION OF THE MOTION**

Plaintiff Kenneth Eugene Smith moves under Federal Rule of Civil Procedure 59(e) to alter or amend the Court's Final Judgment, Doc. 23, based on its Memorandum Order and Opinion of October 16, 2022, Doc. 22 ("Order"), dismissing Mr. Smith's complaint pursuant to 42 U.S.C. § 1983 with prejudice.  The Court should alter or amend the judgment to the extent it dismissed Mr. Smith's Eighth Amendment Claim.[1]   Because Mr. Smith is set to be executed by the Alabama Department of Corrections (ADOC) on November 17, 2022, less than one month away, Plaintiff requests that the Court set an expedited schedule to resolve this motion.

---

[1] While Mr. Smith respectfully disagrees with the Court's dismissal of his Fourteenth Amendment claim and reserves his right to appeal from it, he does not ask for relief from that aspect of the Court's judgment.

1

**ARGUMENT**

**I.    THE COURT MISAPPREHENDED MR. SMITH'S EIGHTH AMENDMENT CLAIM AS A "GENERAL CHALLENGE" TO THE LETHAL INJECTION PROTOCOL**

The Court's judgment dismissing Mr. Smith's Eighth Amendment Claim is based on a manifest error of law resulting from the Court's misapprehension of the nature of the Claim. *See Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (the Court should alter or amend the judgment to correct "manifest errors of law or fact").

Instead of construing Mr. Smith's complaint in the light most favorable to him, the Court adopted Defendant's characterization of Mr. Smith's Eighth Amendment claim and wrongly construed that claim as "challeng[ing] the lethal injection protocol as a whole," and thus being time-barred. Order at 11. Alternatively, the Court interpreted Mr. Smith's claim as a challenge to the lethal injection protocol to the extent that ADOC uses a cut-down procedure or an intramuscular injection to establish intravenous access. Neither characterization is correct, and in so characterizing, the Court "effectively reshaped [Mr. Smith's] complaint into a different claim all together." *West v. Warden*, 869 F.3d 1289, 1299 (11th Cir. 2017).

To be clear, Mr. Smith's challenge is not to the entirety of the protocol. It is to deviations from the protocol—namely, ADOC's treatment of the Protocol as advisory only—about which information has only recently surfaced. Those deviations to the protocol, which essentially rendered it advisory, have only recently come to light with the July 28, 2022 execution of Joe Nathan James, and again with the more recent failed execution attempt of Alan Eugene Miller on September 22, 2022.[2] That the Protocol is strictly advisory is not apparent from the face of the

---

[2] As explained below, Mr. Smith alternatively requests that he be permitted to amend his Eighth Amendment claim. Attached as Exhibit A is a copy of Mr. Smith's proposed amended complaint, along with exhibits thereto, and attached as Exhibit B is a redline version showing the differences between Mr. Smith's original complaint and the proposed

Protocol. Indeed, ADOC has attempted to conceal that fact from the public by repeatedly representing to the public that it strictly follows the Protocol during executions. *See, e.g.,* Complaint, Doc. 1, ("Compl.") ¶¶ 28, 30, 42. Not until an independent autopsy was performed on Mr. James's body could Mr. Smith have known that ADOC's Protocol is not binding on those who are responsible for carrying out executions in Alabama. *See id.* ¶¶ 35-40. As such, Mr. Smith's Eight Amendment claim is not time-barred.

Separately, the Court characterized Mr. Smith's claim as possibly attempting to challenge the use of a cutdown procedure or intramuscular sedation. Order at 11. To be sure, both are significant protocol violations, and as alleged in the complaint, there is evidence to suggest that both occurred during the James execution, despite ADOC's representations to the contrary. *See* Compl. ¶¶ 35-40. But those are just two among a host of deviations which, taken as a whole, show that once ADOC is given permission to begin an execution, the Protocol goes by the wayside and unidentified actors deviate from the protocol substantially to obtain intravenous ("IV") access and will not stop those efforts until the warrant expires, even when their efforts go well past the point of causing substantial pain. For example, it has been alleged that Mr. James was not conscious for the reading of the warrant or his final words—two steps provided for in the Protocol that cannot meaningfully occur if the inmate is not conscious. *See, e.g.,* Compl. ¶ 4. Moreover, the Protocol only contemplates two methods of IV access: a standard procedure and a central line. *See* ECF No. 12-1, Annex C. Implicit in that provision is the notion that if neither of those procedures allow access, the execution should be stopped. And yet the James execution and Miller attempted execution both demonstrate that ADOC staff will repeatedly hit, poke, prod, and stick inmates well after the time at which it should be apparent that neither of those procedures can be performed.

---

amended complaint. The attempted execution of Alan Eugene Miller—which occurred after Mr. Smith filed his original complaint—is discussed in Mr. Smith's proposed Amended Complaint.

Furthermore, the duration of time spent trying to gain IV access for Mr. James' execution, paired with the allegations of conducting cutdown procedures and intramuscular sedation, suggests that ADOC cannot or will not stop an execution after it has begun, even when they have to deviate from the protocol, and even when the process amounts to cruel and unusual punishment. *See e.g.*, Compl. ¶ 48; Opp. at 2, 5-6. As set forth in the Complaint, and not disputed by Commissioner Hamm in the Motion to Dismiss, ADOC operates under a shroud of secrecy, and does not reveal to the public what happens behind closed doors during executions. *See* Compl. ¶¶ 34, 41, 43-45; Motion to Dismiss at 5-6; *see also* Opp. at 5. Such a manner of operation leaves the public, and those inmates who have been sentenced to death, to place their utter trust in those responsible for establishing IV access, the identities of whom are also undisclosed. This lack of transparency is insufficient to properly ensure the constitutional protections of inmates to be executed, and generally affords ADOC the discretion to proceed however they please without repercussion. Finally, it is unclear, at this early stage in the litigation, what other deviations discovery would allow Mr. Smith to uncover. For example, without further discovery, it is unclear what other impermissible procedures ADOC might have used in gaining IV access on Mr. James.

Mr. Smith has pleaded allegations, which if taken as true, plausibly show that ADOC will not stop an execution by lethal injection once begun, even if it must resort to impermissible and torturous means of gaining IV access. Mr. Smith has further plausibly pleaded that those impermissible means included cutdown procedures and intramuscular sedation employed during the execution of Mr. James. In doing so, Mr. Smith has plausibly established that, if his execution by lethal injection is carried out on November 17 by ADOC, he will be subjected to a "substantial risk of serious harm," and that there is a preferable, available and feasible alternative method, nitrogen hypoxia. *Baze v. Rees*, 553 U.S. 35, at 50, 52 (2008).

## II. THE THREAT OF SANCTIONS AGAINST ADOC AND ITS LAWYERS IS INSUFFICIENT TO PROTECT MR. SMITH FROM CRUEL AND UNUSUAL PUNISHMENT.

In its Order, the Court held that "even if the Court could construe Smith's Complaint as an Eighth Amendment challenge to a cutdown procedure or intramuscular sedation sufficient to avoid the limitations bar," as opposed to a general challenge to the lethal injection protocol, "*there is no need to address the underlying merit of such a claim because of the Commissioner's representations and stipulations to this Court*." Order at 11 (emphasis added). The Order indicates that there is no need to reach the merits because it prohibits Mr. Hamm and his agents "from deviating from the ADOC's established lethal injection protocol during Smith's execution" and suggests it will impose sanctions if there are deviations. Mr. Smith respectfully disagrees for the reason that this relief is virtually unenforceable.

First, the threat of sanctions does little to nothing to remedy the substantial risk of serious harm posed to Mr. Smith were his execution on November 17 by lethal injection to move forward for the simple reason that ADOC's procedures are hidden from the public eye. The identity, or even qualifications, of the persons responsible for obtaining IV access for inmates to be executed are unknown. The only persons who will know what happens behind closed doors are Defendant, his agents, and Mr. Smith—who is not expected to survive the ordeal and will have no attorneys or other representatives present to bear witness to what happens to him when he is strapped to a gurney and the curtains are closed. ADOC has the discretion to do whatever they please in secret, and, in any event, sanctions for improper treatment of Mr. Smith can in no way provide any meaningful relief to him after execution has already occurred.

What is more, the State's representations that it strictly follows its Protocol cannot be squared with evidence showing serious violations in its previous two execution attempts. Even in cases presenting extremely suspicious circumstances, such as the three hours it took between 6pm

5

and 9pm on July 28, 2022 to obtain IV access for Mr. James, Defendant and his agents refuse to answer questions. In the Complaint, Mr. Smith alleges that there are independent autopsy results consistent with the use of cutdowns and intramuscular sedation on Mr. James, of which Defendant curtly denies and refuses to explain.  In light of both ADOC's refusal to meaningfully address serious questions related to the James execution and Mr. Smith's inability to obtain any meaningful relief for protocol violations after the fact, ADOC's representations regarding future conduct cannot be accepted at face value.

As such, Mr. Smith respectfully submits that the partial relief granted by this Court is insufficient to prevent ADOC from deviating from the lethal injection protocol, and therefore insufficient to remedy his Eighth Amendment challenge.

### III. THE COURT'S DISMISSAL OF MR. SMITH'S COMPLAINT WITH PREJUDICE DISREGARDED HIS REQUEST TO FILE AN AMENDED COMPLAINT.

In his opposition to Defendant's Motion to Dismiss ("Opp."), Doc. 12, Mr. Smith requested, in the alternative, that if the Court found a deficiency in the Complaint, the Court grant him leave to file an amended complaint. *See* Opp. at § III.  Under Rule 15(a)(2), Courts should "freely give" such leave "when justice so requires." Indeed, as Mr. Smith set forth in the Opposition, the Eleventh Circuit holds that absent some reason, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance, futility of amendment, etc.—the leave sought should, as the rules require, be freely given." *McKinley v. Kaplan*, 177 F.3d 1253, 1258 (11th Cir. 1999) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (internal quotation marks omitted). The Eleventh Circuit has also stressed the particular importance of favoring the right to amend in capital cases. *See e.g.*, *Moore v. Balkcom*, 716 F.2d 1511, 1526 (11th Cir. 1983).

To the extent there is a dispute over the nature of Mr. Smith's Eighth Amendment Claim, at a minimum, the Court should alter or amend the Final Judgment to dismiss the claim without prejudice, and permit Mr. Smith to amend his complaint and replead his Eighth Amendment Claim. In addition, new information previously unbeknownst to Mr. Smith has arisen since the filing of his original complaint, including information pertaining to the attempted execution of Alan Eugene Miller. Mr. Smith has not made prior amendments in this case, nor would leave to replead unduly prejudice Defendant. On the contrary, Mr. Smith would be unduly prejudiced, potentially with the cost of his life, if this Court does not give leave "freely" as it should.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant Petitioner's expedited motion to alter or amend the judgment.

Respectfully submitted,

 */s/ Andrew B. Johnson*
Andrew B. Johnson (JOH168)
BRADLEY ARANT BOULT CUMMINGS LLP
1819 Fifth Avenue North
Birmingham, Alabama 35103-2104
Telephone: 205-521-8000
Facsimile: 205-521-8800
ajohnson@bradley.com

Jeffrey H. Horowitz (NY Bar No. 3949070)
Robert M. Grass (NY Bar No. 2501278)
David Kerschner (NY Bar No. 5126420)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
jeffrey.horowitz@arnoldporter.com
robert.grass@arnoldporter.com
david.kerschner@arnoldporter.com

*Counsel for Petitioner Kenneth Eugene Smith*

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 19, 2022, I electronically filed the foregoing with the Clerk of the Court using the Pacer system, which will send notification to the following:

Richard D. Anderson
Assistant Attorney General
Office of the Attorney General
Capital Litigation Division
501 Washington Street
Montgomery, AL 36130-0152
Richard.Anderson@AlabamaAG.gov
*Attorney for Defendant*

                                                                  /s/ Andrew B. Johnson
                                                                  Of Counsel