IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KENNETH EUGENE SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:22-cv-00497-RAH |
| v. | ) | |
| | ) | **EXECUTION SCHEDULED FOR** |
| JOHN Q. HAMM, Commissioner, Alabama | ) | **NOVEMBER 17, 2022** |
| Department of Corrections, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF KENNETH EUGENE SMITH'S MEMORANDUM IN RESPONSE TO THE COURT'S OCTOBER 31, 2022 ORDER**

Plaintiff Kenneth Eugene Smith submits this memorandum as directed by the Court's Order dated October 31, 2022 to "brief whether Smith's request for leave to amend [his Complaint] is barred under any of the . . . enumerated three exceptions" to the principle that "when a complaint is dismissed under the affirmative defense of the statute of limitations, dismissal with prejudice is generally inappropriate." Doc. No. 27 at 1–2. Those three exceptions are found in *Garcia v. Chiquita Brands Int'l, Inc.*, 48 F.4th 1202, 1220 (11th Cir. 2022). For the following reasons, Mr. Smith's request is not barred.

In *Garcia*, the Eleventh Circuit held that the district court abused its discretion when it dismissed the plaintiffs' complaint with prejudice on statute of limitations grounds. The Court explained that "a plaintiff's failure to plead facts that would prevent a dismissal on statute of limitations grounds does not typically warrant dismissal with prejudice." *Id.* Rather, "'[g]enerally, where a more carefully drafted complaint might state a claim, a plaintiff must be given *at least one* chance to amend the complaint before the district court dismisses the action with prejudice.'" *Id.* (emphasis in original) (quoting *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001)).

1

However, "a district court need not give leave to amend under three circumstances: '(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments . . . ; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile.'" *Id.* (alteration in original) (quoting *Bryant*, 252 F.3d at 1163). None of those three exceptions apply to Mr. Smith's request for leave to amend his Complaint.

***First***, Mr. Smith's request to amend his Complaint is timely. As in *Garcia*, where plaintiffs sought leave to replead in their Rule 59(e) motion to alter or amend the judgment, the first exception does not apply because "there is no evidence of bad faith or delay on the part of [Mr. Smith], nor did [Mr. Smith] repeatedly fail to cure the deficiencies in [his] . . . claim." *Id.* at 1221. Mr. Smith sought leave to amend in opposition to Defendant's motion to dismiss the Complaint and reiterated his request and submitted a proposed Amended Complaint with his Rule 59(e) motion as the plaintiffs in *Garcia* did. He has not had a previous opportunity to amend his Complaint to cure any purported deficiencies. Mr. Smith's request for leave to replead is timely; there has been no delay, much less any undue delay.

***Second***, there is no prejudice to Defendant that justifies denying leave to amend where, as here, the action "ha[s] not yet progressed beyond the pleading stage" and "[t]here has been no discovery, nor a trial date set, and the claims presented in the new complaint do not differ in substance from those raised previously." *W.R. Huff Asset Mgmt. Co. v. Kohlberg, Kravis, Roberts*, 209 F. App'x 931, 935 (11th Cir. 2006). This action was commenced fewer than three months ago. Mr. Smith's proposed Amended Complaint will not require any new or different discovery and it does not change the substance of his claim that his execution would violate his Eighth Amendment right to be free from cruel and unusual punishment.

***Finally***, Mr. Smith's proposed amendment would not be futile.  The Amended Complaint, replete with citations to the declarations of three expert physicians, would not be subject to dismissal on statute of limitations grounds as this Court held his original Complaint is. Mr. Smith's proposed Amended Complaint clarifies that his claim is based on information that became apparent only after the Alabama Department of Corrections ("ADOC") implemented its lethal injection protocol (the "Protocol") when it executed Joe Nathan James in July and took three hours to establish intravenous ("IV") access and when it unsuccessfully attempted to execute Alan Eugene Miller in September and took nearly two hours attempting to establish IV access.

Eleventh Circuit law is well-settled that "[w]hether a significant change has occurred [for purposes of determining accrual of the statute of limitations] is a fact-dependent inquiry." *Arthur v. Thomas*, 674 F.3d 1257, 1260 (11th Cir. 2012).  The law in this Circuit is equally well-settled that that "fact-dependent inquiry" is not limited solely to the text of the Protocol.  Rather it "requires careful consideration of the specific allegations and evidence presented by the plaintiff in each case," including evidence about ADOC's implementation of its Protocol.  *West v. Warden*, 869 F.3d 1289, 1298 (11th Cir. 2017).

The factual allegations in Mr. Smith's proposed Amended Complaint supported by declarations submitted by physicians make clear that Mr. Smith's Eighth Amendment claim is neither a general challenge to the Protocol nor limited to particular procedures performed on Mr. James during ADOC's attempts to establish IV access at his execution.  It is a challenge to Alabama's implementation of its Protocol for establishing IV access that was not apparent from the text of the Protocol, that ADOC does not permit the public to observe, and that are otherwise shrouded in secrecy given ADOC's lack of transparency about the process.  In particular, ADOC's implementation of the Protocol during Mr. James' execution and Mr. Miller's aborted execution

demonstrated for the first time that "once ADOC is allowed to begin an execution, it will not stop until the warrant expires, and during that time, will do anything to obtain intravenous ('IV') access, including disregarding its own [Protocol]" and will continue well beyond the point where the conduct has become unnecessarily cruel and painful. Doc. No. 24-1 at ¶ 5; *see also id.* at ¶ 105. At a minimum, Mr. Smith's factual allegations, which must be accepted as true at this pleading stage, create a fact issue about when his Eighth Amendment Claim accrued that can only be resolved by submission of evidence at a hearing. *See Arthur*, 674 F.3d at 1261 (holding that the district court abused its discretion in dismissing Eighth Amendment method of execution claim where "[t]here has been no finding about the manner in which Alabama administers its lethal injections, no evaluation of whether Alabama's representations are accurate, and no opportunity whatsoever to contradict the State's assertions with Arthur's own evidence").

For those reasons, as explained more fully below, the Court should permit Mr. Smith to file his proposed Amended Complaint and set an expedited schedule for resolution of Mr. Smith's anticipated preliminary injunction motion.

## BACKGROUND

On August 18, 2022, Mr. Smith filed his Complaint. *See* Doc. No. 1. Mr. Smith asserted a claim under 42 U.S.C. § 1983 for injunctive and declaratory relief finding that his execution would subject him to an intolerable risk of torture, cruelty, or substantial pain in violation of the Eighth Amendment to the U.S. Constitution based on ADOC's implementation of the Protocol when it executed Mr. James three weeks earlier on July 28, 2022. *Id.* at ¶¶ 3–5, 31–53, 80–89. Mr. Smith alleged that during the three-hour process of attempting to establish IV access, Mr. James was subjected to torture, cruelty, and substantial pain, including repeated needle

punctures and procedures outside the Protocol such as a cutdown procedure and an intramuscular injection, which rendered Mr. James non-responsive. *Id.*[1]

On August 26, 2022, Defendant moved to dismiss the Complaint, including on the ground that Mr. Smith's Eighth Amendment Claim purportedly was barred by the governing two-year statute of limitations. *See* Doc. No. 10. On September 19, 2022, Mr. Smith opposed the motion and, alternatively, requested that the Court grant him leave to replead if the Court determined that the Complaint contained pleading deficiencies. *See* Doc. No. 12.

On October 16, 2022, after oral argument, the Court dismissed the Complaint with prejudice and entered a Final Judgment. *See* Doc. Nos. 22, 23. Construing Mr. Smith's Eighth Amendment Claim as a "challenge[] [to] the entire lethal injection protocol," the Court held that "the statute of limitations for Smith to challenge the lethal injection protocol in its entirety expired on December 31, 2021, at the latest"—two years after it was disclosed—and Mr. Smith "cannot rely on the James execution as resetting the statute of limitations on his claim." Doc. No. 22 at 8–9, 10.

The Court determined that "use of [cutdown and intramuscular sedation] procedures could constitute a sufficient change in the protocol to re-start the statute of limitations clock as related to those changes only." *Id.* at 11. But the Court held that even if Mr. Smith's Eighth Amendment Claim was construed as a challenge to the use of "a cutdown procedure or intramuscular sedation . . ., there is no need to address the underlying merits of such a claim because of the

---

[1] Mr. Smith also asserted a claim that his execution would violate his Fourteenth Amendment due process rights based on ADOC's failure to provide him with information necessary to make an informed decision whether to elect nitrogen hypoxia instead of lethal injection as his method of execution. *See id.* at ¶¶ 6–8, 54–79, 90–98. Although Mr. Smith respectfully disagrees with the Court's dismissal of his Fourteenth Amendment Claim and reserves his appellate rights, he does not seek leave to amend his Complaint with respect to that Claim.

Commissioner's representations and stipulations to this Court" that "ADOC will not employ a cutdown procedure or intramuscular sedation during Smith's execution." *Id.*

On October 19, 2022, Mr. Smith filed a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). *See* Doc. No. 24. Among other things, Mr. Smith requested that the Court alter its judgment to dismiss his Eighth Amendment Claim without prejudice and with leave to replead. To that end, Mr. Smith submitted a proposed Amended Complaint, which attached evidence in support of his allegations, including declarations from three physicians— Dr. Joel B. Zivot (an Associate Professor in the Department of Anesthesiology at Emory University School of Medicine), Dr. David C. Pigott (an emergency medicine physician at the University of Alabama School of Medicine in Birmingham), and Dr. Robert Jason Yong (an anesthesiologist and Chief of Pain Medicine at Brigham and Women's Hospital in Boston, Massachusetts and Associate Professor in Anesthesiology at Harvard Medical School). *See* Doc. No. 24-1.

The Amended Complaint clarifies that Mr. Smith's Eighth Amendment Claim is neither directed to "the lethal injection protocol in its entirety" nor limited to the use of "a cutdown procedure or intramuscular sedation." Doc. No. 22 at 8–9, 11. Rather, Mr. James' execution and the aborted execution of Alan Eugene Miller on September 22, 2022—after Mr. Smith filed his Complaint—demonstrate that "once ADOC is allowed to begin an execution, it will not stop until the warrant expires, and during that time, will do anything to obtain intravenous ('IV') access, including disregarding its own [Protocol]." Doc. No. 24-1 at ¶ 5; *see also id.* at ¶ 105.

The Amended Complaint alleges that the Protocol authorizes only two methods to establish IV access—the "standard procedure" or, failing that, "a central line procedure." *Id.* at ¶ 23. Citing Dr. Zivot's Declaration, the Amended Complaint further alleges: "It should not take three hours,

6

as it did in Mr. James case, or nearly two hours, as it did in Mr. Miller's case to establish intravenous access by the standard procedure or determine that is not possible, and then to establish intravenous access by a central line procedure or determine that is not possible." *Id.* at ¶ 24.  But Mr. James' execution and Mr. Miller's aborted execution demonstrate that "[o]nce an execution begins, ADOC reserves the right to deviate from the protocol to establish intravenous access as long as that is accomplished before the warrant expires at midnight." *Id.* at ¶ 25; *see also id.* at ¶¶ 26–46 (describing ADOC's material deviation from the Protocol during the execution of Mr. James), ¶¶ 47–56 (describing ADOC's material deviation from the Protocol during the aborted execution of Mr. Miller).[2]

ADOC's reservation of a purported right to deviate from the Protocol to establish IV access was not apparent from the face of the Protocol, but only became apparent after implementation of the Protocol during Mr. James' execution and Mr. Miller's aborted execution.  That is especially true given ADOC's history of secrecy and lack of transparency into its lethal injection processes such as efforts to establish IV access, which ADOC conducts without public observation.  *See id.* at ¶¶ 57–72.  Indeed, ADOC has failed to disclose what happened during its attempts to establish IV access during Mr. James' execution and Mr. Miller's aborted execution, much less investigate what happened and why and what it can do to reduce the risk of subjecting other condemned people like Mr. Smith to the same cruel treatment.  *See id.* at ¶¶ 39–46, 55.  Thus, particularly "[g]iven

---

[2] In his opposition to Mr. Smith's Rule 59(e) motion, Defendant contends that Mr. "Smith points to nothing in the preparations for Miller's execution that deviated from Alabama's long-public protocol." Doc. 26 at 9.  But puncturing a condemned person with a needle for nearly two hours in the hope that the needle might eventually find a vein cannot meet any reasonable definition of the "standard procedure" for establishing IV access.  In any event, Defendant's denials of Mr. Smith's allegations are beside the point at this stage of the action when the Court must accept Mr. Smith's allegations as true.  *See McWaters v. Houston*, No. 2:21-cv-57, 2022 WL 395309, at *1 (M.D. Ala. Feb. 8, 2022) (Huffaker, J.).

ADOC's history of evasion and lack of transparency, there was no way for a condemned person to know that the Protocol is only advisory until that was demonstrated by the facts surrounding Mr. James' execution and Mr. Miller's aborted execution." *Id.* at ¶ 72.

## ARGUMENT

As explained below, given Mr. Smith's proposed Amended Complaint, there are no exceptions that would justify the Court deviating from the legal principle that "when a complaint is dismissed under the affirmative defense of the statute of limitations, dismissal with prejudice is generally inappropriate." Doc. No. 27 at 1. The Court should grant Mr. Smith leave to file the proposed Amended Complaint.

### I.     MR. SMITH TIMELY REQUESTED LEAVE TO AMEND HIS COMPLAINT

The Eleventh Circuit's decisions in *Garcia* and *Bryant* establish that the first exception where there has been undue delay does not apply to deny Mr. Smith leave to amend his Complaint. In *Garcia*, as here, plaintiffs sought leave to amend in their Rule 59(e) motion after the district court had entered judgment dismissing their complaint. *Garcia* 48 F.4th at 1220. The Court held that "there is no evidence of bad faith or delay on the part of Plaintiffs, nor did the Plaintiffs repeatedly fail to cure the deficiencies in their . . . claim." *Id.* at 1221. Likewise, in *Bryant*, the Eleventh Circuit held that the district court abused its discretion when it denied leave to amend where plaintiffs sought to do so in response to defendant's motion to dismiss and "indicated . . . that if given the chance to amend, they will meet the PSLRA's pleading requirement." *Bryant*, 252 F.3d at 1164.

This case was commenced on August 18, 2022. In opposition to Defendant's motion to dismiss, Mr. Smith sought in the alternative leave to replead if the Court determined that the allegations in his Complaint were deficient. *See* Doc. No. 12 at 22–23. After the Court so found,

Mr. Smith renewed his request for leave to replead in his Rule 59(e) motion and attached a proposed Amended Complaint. *See* Doc. Nos. 24 at 6–7; 24-1. There has been no discovery and no scheduling order has been entered, much less a deadline for amendments to pleadings. *See*, *e.g.*, *Loggerhead Turtle v. Cty. Council of Volusia Cty., Fla.*, 148 F.3d 1231, 1256–57 (11th Cir. 1998) ("hold[ing] that the district court's denial of leave to amend fell outside the permissible range of discretion" where plaintiffs "filed their motion for leave to amend within the time period prescribed in the district court's scheduling order"); *Alabama Municipal Ins. Corp. v. Munich Reinsurance Am., Inc.*, No. 2:20-cv-300, 2021 WL 4096545, at *1 (M.D. Ala. Sept. 8, 2021) ("the mere passage of time without anything more is an insufficient reason to deny leave to amend a complaint" (citation and internal quotation marks omitted)); *Nodd v. Integrated Airline Servs., Inc.*, 41 F. Supp. 3d 1355, 1368 (S.D. Ala. 2014) ("a scheduling order under Federal Rule of Civil Procedure 16(b) has not yet been entered, further hampering the Court's ability to deny leave to amend"). Under *Garcia* and *Bryant*, Mr. Smith's requests for leave to amend his Complaint are timely.

By contrast, the Eleventh Circuit "has found delay to be undue where 'both the parties and the court were fully prepared for trial and the addition of a new claim would have re-opened the pretrial process and delayed the trial and [where the plaintiff's] attorney had sufficient opportunity to request a timely amendment before the pretrial order has been submitted.'" *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999) (citation omitted). The Eleventh Circuit also has found undue delay "where the motion for leave to amend was filed thirty months after the original complaint and three weeks before trial, where the only apparent reason for the delay was the plaintiff's retention of a new attorney." *Id.*; *see also Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213, 1218 (11th Cir. 2004) ('[i]t is not an abuse of discretion for a district court to deny a motion

9

for leave to amend following the close of discovery, past the deadline for amendments, and past the deadline for filing dispositive motions") (citation and internal quotation marks omitted).  Here, there is nothing remotely resembling the circumstances that would justify a finding of undue delay.

In his opposition to Mr. Smith's Rule 59(e) motion, Defendant suggests that Mr. Smith's request for leave to amend is untimely because he did not submit a proposed amended complaint with his opposition to Defendant's motion to dismiss.  *See* Doc. No. 26 at 7–8 (citing *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999) and *My24HoursNews.com, Inc. v. AT&T Corp.*, 791 F. App'x 788, 803 (11th Cir. 2019)).  In the cases on which Defendant relies, however, the plaintiffs *never* submitted a proposed amended complaint in the district court.  Mr. Smith has done so with his Rule 59(e) motion.  The Eleventh Circuit's decision in *Garcia*—decided after Defendant's authorities—demonstrates that is sufficient.

In any event, Defendant's authorities hold only that a district court does not abuse its discretion when it denies a party who has not submitted a proposed amended pleading leave to amend it.  "[I]t does not follow [from those authorities] that it would be an abuse of discretion for the Court to grant" a motion to amend under those circumstances.  *United States ex rel. Mitchell v. Beverly Enters., Inc.*, No. 2:06-CV-0540, 2006 WL 8437801, at *3 n.3 (N.D. Ala. Aug. 1, 2006). In *Beverly Enterprises*, the court granted the plaintiff leave to amend his complaint because he "has not had an opportunity to amend his Complaint and the possibility exists that a more carefully drafted complaint might state a Claim in which this Court could provide relief."  *Id.* at *3.

## II. DEFENDANT WOULD NOT BE PREJUDICED BY MR. SMITH'S PROPOSED AMENDMENT

Permitting Mr. Smith leave to file his proposed Amended Complaint would not prejudice Defendant.  In *Garcia*, even where the "underlying litigation [had] spanned more than a decade,"

10

the Eleventh Circuit held that permitting plaintiffs leave to amend their complaint that had been dismissed on statute of limitations grounds would not have prejudiced the defendant. *Garcia*, 48 F.4th at 1221. The Court explained that "[t]he lengthy nature of litigation, without any other evidence of prejudice to the defendants or bad faith on the part of the plaintiffs, does not justify denying the plaintiffs the opportunity to amend their complaint." *Id.* (alteration in original, citation and internal quotation marks omitted).

Similarly, in *W.R. Huff*, the Eleventh Circuit held that the district court abused its discretion when it denied leave to amend. The Court rejected the district court's rationale that the defendant would have been prejudiced by the amendment: "[W]e perceive no undue burden on [the defendant] when the litigation—though long-lived—had not yet progressed beyond the pleading stage. There has been no discovery, nor a trial date set, and the claims presented in the new complaint do not differ in substance from those raised previously." *W.R. Huff*, 209 F. App'x at 935; *see also Loggerhead Turtle*, 148 F.3d at 1257 (rejecting defendant's contention that its "fear of incurring 'additional expense and possible delay'" justified denial of leave to amend complaint because "[a]ny amendment to an original pleading necessarily involves *some* additional expense to the opposing party" (emphasis in original)); *compare Carruthers*, 357 F.3d at 1218 (holding that district court did not abuse its discretion when it denied motion for leave to amend complaint, which was filed "six months after the court's . . . deadline for amendments to the pleadings and two months after its . . . deadline for completion of discovery," and which "likely would have further delayed proceedings and prejudiced [the defendant], which had completed discovery and would have had to conduct additional discovery" on plaintiff's newly added claim).

This litigation is not "lengthy" or "long-lived." It was filed fewer than three months ago and has not proceeded past the pleading stage. There is no trial date or discovery or other

11

deadlines. And Mr. Smith's Eighth Amendment Claim presented in his Amended Complaint does not differ substantively from his Claim as presented in his Original Complaint. The Amended Complaint would not require different or additional discovery. In any event, Defendant has not responded to Mr. Smith's discovery requests, which were mooted when the Court dismissed his claims with prejudice.

### III.     MR. SMITH'S PROPOSED AMENDMENT WOULD NOT BE FUTILE

"'A proposed amendment may be denied for futility when the complaint as amended would still be properly dismissed.'" *Southern-Owners Ins. Co. v. Galati Yacht Sales, LLC*, No. 8:21-cv-2567, 2022 WL 4762754, at *3 (M.D. Ala. Oct. 3, 2022) (quoting *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010)). Mr. Smith's proposed Amended Complaint would not be subject to dismissal on statute of limitations grounds.[3]

As this Court held, "a federal claim accrues when the prospective plaintiff knows or has reason to know of the injury which is the basis of his action." Doc. No. 22 at 7 (quoting *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008)). In the context of "[a]n Eighth Amendment method-of-execution claim" that occurs "'on the later of the date on which state review is complete, or the date on which the capital litigant becomes subject to a new or substantially changed execution protocol.'" *Id.* at 7–8 (quoting *McNair*, 515 F.3d at 1174).

As the Eleventh Circuit has held "[w]hether a significant change has occurred in a state's method of execution is a fact-dependent inquiry, which we have treated as such . . . ." *Arthur*, 674 F.3d at 1260. That inquiry is not dependent solely on changes to the text in the protocol governing

---

[3] To the extent Defendant contends that the proposed Amended Complaint would be subject to dismissal on grounds raised in his motion to dismiss the original Complaint but not addressed by this Court, Mr. Smith incorporates his responses to those arguments. *See* Doc. No. 12 at 14–18.

the method of execution. Instead, it "requires careful consideration of the specific allegations and evidence presented by the plaintiff in each case." *West*, 869 F.3d at 1298. Significantly, that includes consideration of allegations and evidence, like Mr. Smith's about ADOC's implementation of its Protocol, which demonstrate how the Protocol is administered even if that is not apparent from its text. Indeed, if the law were otherwise, it would create a perverse disincentive for ADOC to avoid Eighth Amendment challenges to the Protocol simply by refusing to make necessary changes to the text.

For example, in *Arthur*, the Eleventh Circuit reversed the dismissal of a condemned person's Eighth Amendment challenge to the administration of Alabama's lethal injection protocol on statute of limitations grounds even though the Court had determined that the same challenge—the replacement of sodium thiopental with pentobarbital—"did not constitute a 'significant change' in the lethal injection protocol" and, therefore, was time barred, in three previous cases involving the Alabama, Georgia, and Florida protocols. *Id.* at 1260. The Court explained that while each of those decisions was "premised on the specific factual allegations and/or evidence presented and *considered* in each of those cases," the "district court in Arthur's case, . . . never considered Arthur's evidence in support of his allegations that there has been a 'significant change' to Alabama's execution protocol." *Id.* at 1260–61 (emphasis in original). That evidence included affidavits from two expert who "were prepared to rebut . . . testimony" from Alabama's expert witness, "testify about specific defects in Alabama's execution protocol," and at least one of whom was "prepared to present his conclusions from eyewitness accounts of [a prior] execution" using pentobarbital. *Id.* at 1261–62. Consequently, the plaintiff's complaint "mark[ed] the first time that an Alabama death row inmate has been able to challenge Alabama's lethal injection procedure using evidence of how pentobarbital is actually administered in Alabama" while plaintiff's experts

13

in previous cases were "unable to rely on any evidence of how Alabama actually administers its execution protocol." *Id.* at 1262.

The Eleventh Circuit concluded that "the district court committed reversible error in dismissing Arthur's Eighth Amendment claim without any opportunity for factual development, including discovery between the parties." *Id.* The Court explained:

> There has been no finding about the manner in which Alabama administers its lethal injections, no evaluation of whether Alabama's representations are accurate, and no opportunity whatsoever to contradict the State's assertions with Arthur's own evidence. And the lack of factual development in this record is only exacerbated by Alabama's policy of maintaining secrecy surrounding every aspect of its three-drug cocktail.

*Id.* at 1261.

Eleventh Circuit cases that have affirmed dismissal of Eighth Amendment challenges on statute of limitations grounds still uphold the principle that determining whether there has been a substantial change in a state's execution protocol requires a fact-dependent inquiry, including consideration of allegations and evidence concerning the state's implementation of its protocol. In *Chavez v. Fla. SP Warden*, 742 F.3d 1267, 1275 (11th Cir. 2014), where the Court affirmed dismissal of an Eighth Amendment challenge after an evidentiary hearing, Judge Wilson, concurring, wrote "separately to underscore that the question of whether a significant change has occurred to a state's lethal injection protocol is a fact-intensive inquiry for which an evidentiary hearing is especially important." Judge Wilson further noted that "in the event of a botched execution in this or a future case, such evidence may be relevant in a subsequent Eighth Amendment challenge to Florida's execution practices." *Id.* at 1276. Judge Martin, concurring, also wrote "separately to emphasize the fact-intensive nature of the District Court's decision in this case and to commend the District Court for holding an evidentiary hearing *before* concluding

that Mr. Chavez 'has not shown a substantial likelihood of success on the merits of his claims because they are barred by Florida's four-year statute of limitations.'" *Id.* (emphasis in original).

In *Gissendaner v. Comm'r, Ga. Dep't of Corrs.*, 779 F.3d 1275, 1281 (11th Cir. 2015), the Eleventh Circuit rejected as time-barred a claim "that Georgia's written protocol does not make any specific provisions for the proper storage of the execution drugs [which] creates a risk that the drugs will expire before they are used." The Court did so because "that claim is based on Dr. Sasich's reading of Georgia's written protocol, *not on any facts about Georgia's recent storage practices or any of the recent executions it has carried out*, and the written protocol has been in place since July 17, 2012—more than two years before her complaint was filed." *Id.* (emphasis added). In other words, to determine whether the plaintiff's challenge was directed to a substantial change in the governing protocol, the Court would have considered "facts about Georgia's recent storage practices or any of the recent executions it has carried out,"—reflecting Georgia's implementation of its protocol beyond its text—if plaintiff had alleged or submitted such evidence.

As in *Arthur* and unlike in *Gissendaner*, Mr. Smith has alleged facts about Alabama's implementation of its Protocol that counter Defendant's statute of limitations defense by demonstrating that it became apparent only after Mr. James' execution and Mr. Miller's aborted execution that, in implementing its Protocol, "once ADOC is allowed to begin an execution, it will not stop until the warrant expires, and during that time, will do anything to obtain intravenous ('IV') access." Doc. No. 24-1 at ¶ 5. Additionally, as in *Arthur*, those factual allegations are supported by declarations from expert physicians based on autopsy photographs and observations of witnesses to ADOC's execution of Mr. James' and review of Mr. Miller's first-hand account of his harrowing experience.

As Mr. Smith alleges, ADOC's unsuccessful attempt to establish IV access when it tried to execute Doyle Lee Hamm in 2018 "did not put other condemned inmates on notice that the Protocol is advisory only." *Id.* at ¶ 64. That is because "Mr. Hamm was a cancer patient and had a history of intravenous drug use which compromised the ability to access his veins." *Id.* at ¶ 65; *see also Hamm v. Comm'r, Ala. Dep't of Corrs.*, 725 F. App'x 836, 837–38 (11th Cir. 2018) ("Hamm alleges in his complaint that he suffers from lymphoma (a type of blood cancer) and lymphadenopathy (enlarged lymph nodes), which combined with years of intravenous drug use, have rendered his veins inaccessible for the use of a catheter without a complicated procedure carrying the risk of 'a bloody and excruciating experience.'"). As a result, other condemned inmates could have concluded that Mr. Hamm's experience was the product of his unique medical circumstance. In addition, "the State agreed not to attempt to execute Mr. Hamm again, suggesting that it would take steps to ensure that it did not subject other condemned persons to the same cruel and painful treatment" that Mr. Hamm received. Doc. No. 24-1 at ¶ 65.

Put simply, Mr. Smith's Amended Complaint "marks the first time that an Alabama death row inmate has been able to challenge Alabama's lethal injection procedure using evidence of how [the process of establishing IV access] is actually administered in Alabama." *Arthur*, 674 F.3d at 1262. At a minimum, Mr. Smith's allegations raise a factual issue about whether ADOC's conduct during Mr. James' execution and Mr. Miller's aborted execution constitute a significant change in the Protocol from which Mr. Smith's Eighth Amendment Claim accrues. And, as in *Arthur*, the need for factual development in this case is "exacerbated by Alabama's policy of maintaining secrecy surrounding every aspect of its three-drug execution method" and its lack of transparency about what occurs during its executions when it attempts to establish IV access. *Id.* at 1261.

Defendant may dispute Mr. Smith's allegations, but he is not entitled to have those disputes resolved in his favor at the pleading stage. Mr. Smith is entitled "to contradict the State's assertions with [his] own evidence." *Id.* And any fact disputes should be resolved based on submission of evidence subject to cross-examination and rebuttal. Accordingly, the Court should permit Mr. Smith to file his proposed Amended Complaint so that the parties can submit their evidence and the Court can make the necessary findings "about the manner in which Alabama administers its lethal injections," and "evaluat[e] . . . whether Alabama's representations [about that] are accurate." *Id.*

## IV.   THE COURT SHOULD ISSUE A SCHEDULING ORDER

Mr. Smith is scheduled to be executed on November 17, 2022 at 6 pm CT. If the Court permits Mr. Smith to file his Amended Complaint, Mr. Smith will be prepared to file a motion for a preliminary injunction upon receipt of such an order. In that event, the Court should issue a scheduling order for Defendant's responses to Mr. Smith's discovery requests relating to his Eighth Amendment Claim, Defendant's response to the preliminary injunction motion, and a hearing on the merits of the motion so that the Court can resolve the motion and the aggrieved party can pursue appellate remedies, if appropriate, before Mr. Smith's planned execution.

## CONCLUSION

For the foregoing reasons, the Court should grant Mr. Smith's motion to alter or amend the judgment, permit Mr. Smith to file his Amended Complaint, and issue a scheduling order for resolution of Mr. Smith's anticipated preliminary injunction motion.

Dated:  November 4, 2022			Respectfully submitted,

/s/*Andrew B. Johnson*
Andrew B. Johnson (ASB: 8504-r76j)
BRADLEY ARANT BOULT CUMMINGS LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203
Tel: (205) 521-8000
Fax: (205) 521-8800
ajohnson@bradley.com

Jeffrey H. Horowitz (NY Bar No. 3949070)
Robert M. Grass (NY Bar No, 2501278)
David Kerschner (NY Bar No. 5126420)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Tel: (212) 836-8000
Fax: (212) 836-8689
jeffrey.horowitz@arnoldporter.com
robert.grass@arnoldporter.com
david.kerschner@arnoldporter.com

Angelique A. Ciliberti (ASB: 1504-T44C)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Tel: (202) 942-5000
Fax: (202) 942-5999
angelique.ciliberti@arnoldporter.com

*Attorneys for Plaintiff Kenneth Eugene Smith*

## CERTIFICATE OF SERVICE

  I hereby certify that on November 4, 2022, I electronically filed the foregoing with the Clerk of the Court using the Pacer system, which will send notification to the following:

Richard D. Anderson
Assistant Attorney General
Office of the Attorney General
Capital Litigation Division
501 Washington Avenue
Montgomery, AL 36130-0152
Richard.Anderson@AlabamaAG.gov

Thomas A. Wilson
Deputy Solicitor General
Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130-0152
Thomas.Wilson@AlabamaAG.gov

*Attorneys for Defendant*

                */s/ Andrew B. Johnson*
                OF COUNSEL

4875-9835-9869.3