IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KENNETH EUGENE SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:22-CV-497-RAH |
| | ) | [WO] |
| JOHN Q. HAMM, Commissioner, | ) | |
| Alabama Department of Corrections, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On October 16, 2022, this Court granted the Commissioner's Motion to Dismiss Plaintiff Kenneth Eugene Smith's Complaint, concluding that Smith's claims are time-barred.[1] (Docs. 22, 23.) On October 19, 2022, Smith filed a Motion to Alter or Amend the order of dismissal, along with a proposed amended complaint. (Doc. 24.) The Defendants have filed a response. (Doc. 26.) The parties also filed supplemental briefing as to whether Smith should be granted leave to file an amended complaint in this matter. (Docs. 30, 31.) For the reasons that follow, Smith's motion is due to be denied.

---

[1] The Court also dismissed the claims against the Alabama Department of Corrections upon Smith's consent. (Doc. 22 at 15.)

# I.   STANDARD OF REVIEW

A court may only grant a motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e) if the movant presents newly discovered evidence or can show "manifest errors of law or fact" in the court's prior judgment. *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (quoting *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999)). "[R]econsideration of a previous order is an extraordinary remedy to be employed sparingly." *Richards v. United States*, 67 F. Supp. 2d 1321, 1322 (M.D. Ala. 1999) (quoting *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994)). "[A] Rule 59(e) motion [cannot be used] to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Arthur*, 500 F.3d at 1343 (alterations in original) (quoting *Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005)).

# II.   DISCUSSION

In his motion, Smith argues the Court committed a manifest error of law by misunderstanding his Eighth Amendment claim as a general challenge to the lethal injection protocol, rather than construing it as a specific challenge to the *advisory nature* of the protocol.[2]  Smith also asserts the Court committed a manifest error of

---

[2] Smith does not challenge the Court's dismissal of his Fourteenth Amendment procedural due process claim, although he has reserved the right to appeal from that dismissal. (Doc. 24 at 1 n.1.)

law by dismissing the Complaint with prejudice and not giving him an opportunity to file an amended complaint.  Finally, Smith argues the threat of sanctions against the Alabama Department of Corrections (ADOC) and its attorneys is insufficient to protect him from cruel and unusual punishment.  None of these contentions warrant relief under the strict standards that govern a Rule 59(e) motion, and therefore the order of dismissal will not be altered or amended.

### A. Manifest Error of Law in Construing Smith's Complaint

Smith first contends the Court committed a manifest error of law by dismissing his Eighth Amendment claim, arguing the Court failed to make all inferences in the light most favorable to him when it failed to interpret the Complaint as alleging that Joe Nathan James's execution shows that the ADOC's lethal injection protocol is merely advisory.  The Court committed no manifest error of law by not construing Smith's Complaint in the manner he now asserts.

When ruling on a motion to dismiss under Rule 12(b)(6), a court must decide whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To survive a motion to dismiss, a plaintiff must plead sufficient facts to nudge his claims "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task

that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  When ruling on a motion to dismiss, the Court accepts as true the complaint's factual allegations and construes them in the light most favorable to the plaintiff.  *See Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 854, 864 (11th Cir. 2017).

Smith argues the Court erred by not interpreting the Complaint in the light most favorable to him—namely, that the Joe Nathan James execution demonstrated that the ADOC's lethal injection protocol is merely advisory.  The Court committed no manifest error of law when it primarily construed the Complaint as challenging the lethal injection protocol as a whole.   The Complaint references the lethal injection process as a whole several times, especially when presenting its claim for relief pursuant to the Eighth Amendment.   (*See, e.g.*, Doc. 1 at 2 ("Given that ADOC's lethal injection process is unexplained, shrouded in secrecy, and, in all events, insufficient to prevent subjecting Plaintiff to an intolerable risk of torture, cruelty, or substantial pain . . . ."); 12 ("Absent a change in ADOC's lethal injection process after an independent review . . . ."); 16 ("Defendant's lethal injection process . . . .").)   At no point does the Complaint allege that the lethal injection protocol is merely advisory, nor did Smith argue as much in his response in opposition to the motion to dismiss.  (*See generally* Doc. 12.)

Smith's Complaint focuses heavily on the events surrounding the Joe Nathan James execution.  In particular, Smith alleged in the Complaint that the ADOC deviated from its lethal injection protocol in James's execution, citing the alleged use of a cutdown procedure and intramuscular sedation during his execution.  (Doc. 1 at 7–12.)  But these events do not allege, mention, or even plausibly show that the ADOC has treated its lethal injection protocol as merely advisory, nor does this plausibly show how a mere advisory protocol is, in itself, cruel and unusual punishment in violation of the Eighth Amendment.  Thus, the Court committed no manifest error of law in failing to discern this advisory-protocol theory when it ruled on the motion to dismiss.

The plausible reading of the events surrounding the Joe Nathan James execution from the Complaint is that ADOC personnel went off-protocol by using a cutdown procedure and intramuscular sedation.  In its order now challenged by Smith, the Court addressed those two concerns by ordering the Commissioner of the ADOC and his agents to comply with his sworn stipulation that the ADOC will not use a cutdown or intramuscular sedation during Smith's execution.  (Doc. 22 at 15.)  The Court discerns no manifest error of law here.

Smith also argues the Court did not properly consider the issue of the duration of James's execution as being a deviation from the protocol.  Without addressing whether the duration of an execution is addressed in the published 2019 protocol, or

whether there is a duration of an execution that would violate the Eighth Amendment, the Court will not disturb its original finding that "Smith does not plead sufficient facts to show that the duration of James's execution was a substantial change in protocol." (*Id.* at 9.)  Smith points to no section of the Complaint that undermines the Court's conclusion.

Smith may not relitigate this matter in a Rule 59(e) motion.  To obtain relief, Smith must show that the Court committed a manifest error of law.  He has not done so.

### B. Manifest Error of Law in Not Granting Leave to Amend the Complaint

Smith also asserts that the Court committed a manifest error of law by not granting his request to amend his Complaint—a request that was embedded within his responsive brief to the Commissioner's Motion to Dismiss.  As a general matter, under Rule 15(a)(2), leave to amend a complaint "shall be 'freely given when justice so requires.'"  *McKinley v. Kaplan*, 177 F.3d 1253, 1258 (11th Cir. 1999) (quoting Fed. R. Civ. P. 15(a)(2)).  When a complaint is dismissed under the affirmative defense of the statute of limitations, dismissal with prejudice is generally inappropriate, and leave to amend the complaint under Rule 15(a) shall be granted except in the following three circumstances: "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments . . . ; (2) where allowing amendment would cause undue prejudice to

the opposing party; or (3) where amendment would be futile." *Garcia v. Chiquita Brands Int'l, Inc.*, 48 F.4th 1202, 1220 (11th Cir. 2022) (quoting *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001)).

A district court does not abuse its discretion when it denies a motion for leave to amend a complaint when the amendment would be futile. *Harris v. Ivax Corp.,* 182 F.3d 799, 807–08 (11th Cir. 1999). "[D]enial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (quoting *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)); *see also Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint *as amended* would still be properly dismissed or be immediately subject to summary judgment for the defendant." (emphasis added)); *Wyatt v. BellSouth, Inc.*, 176 F.R.D. 627, 630–31 (M.D. Ala. 1998) ("An amendment adding a cause of action is considered futile if the new cause of action does not state a claim upon which relief can be granted, or if the claim would not survive an affirmative defense." (internal citations omitted)).

After considering supplemental briefing by the parties on this issue (Docs. 30, 31), the Court concludes that amendment of the Complaint would be futile. Therefore, the Court's prior judgment dismissing Smith's Complaint with prejudice did not constitute a manifest error of law.  While Smith presents the stronger

7

argument as to whether his claim survives the statute of limitations defense, the Court nevertheless finds that his proposed Amended Complaint does not plausibly allege a violation of Smith's Eighth Amendment.

### 1. Statute of Limitations

The Court agrees with Smith that his proposed Amended Complaint is not plainly time-barred under the relevant statute of limitations. As discussed in the Memorandum Opinion dismissing Smith's original Complaint, "a federal claim accrues when the prospective plaintiff 'knows or has reason to know of the injury which is the basis of the action.'" *McNair v. Allen*, 515 F.3d 1168, 1174 (11th Cir. 2008) (quoting *Corn v. City of Lauderdale Lakes*, 904 F.2d 585, 588 (11th Cir. 1990)). To determine the statute of limitations for a claim brought pursuant to § 1983, the Court looks to the law of the state where the claim accrued. *Id.* at 1183. In Alabama, the statute of limitations applicable to personal injury actions is two years. Ala. Code § 6-2-38. Therefore, for Smith's Eighth Amendment claim to be timely, it must have been brought within two years of its accrual.

Typically, an Eighth Amendment method of execution claim "accrues on the later of the date on which state review is complete, or the date on which the capital litigant becomes subject to a new or substantially changed execution protocol." *McNair*, 515 F.3d at 1174. Smith's claim, however, is somewhat atypical for a method of execution challenge, as it is rooted in a series of alleged violations of

8

Alabama's lethal injection protocol, rather than a particular change to the State's protocol.[3]  For pleading purposes, the proposed Amended Complaint plausibly alleges that, during the execution of Joe Nathan James and attempted execution of Alan Miller, ADOC officials deviated from standard practices for establishing intravenous access.  Smith alleges no particular change to the protocol.  Since the proposed Amended Complaint is rooted in a series of alleged protocol violations, the Court must look elsewhere for guidance on determining when Smith's proposed claim accrues.

When evaluating claims challenging repeated actions by government actors, the Eleventh Circuit recently held in a published opinion that courts must "sort a continuing violation, on the one hand, from a series of repeated violations that result in related harms, on the other" to determine the accrual of a cause of action.  *Doe ex rel. Doe #6 v. Swearingen*, No. 21-10644, --- F.4th ----, 2022 WL 12338515, at *7 (11th Cir. Oct. 21, 2022) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)) (discussing a § 1983 challenge to Florida's sex offender registry law).  "When a discrete violation 'gives rise to a new cause of action,' then each new violation 'begins a new statute of limitations period as to that particular event.'"  *Id.*

---

[3] In the proposed Amended Complaint, Smith repeatedly asserts an allegation that recent difficulties in various executions suggests that the protocol is now merely advisory.  The Court finds that the more plausible reading of the facts, in the light most favorable to Smith, would be that the State has violated its own lethal injection protocol in various recent executions, rather than set its entire protocol aside.

(quoting *Knight v. Columbus*, 19 F.3d 579, 582 (11th Cir. 1994)).   "[W]hen a defendant takes separate and discrete acts that repeatedly violate the law, the continuing violation doctrine does not apply," and "a plaintiff may seek to remedy the discrete violations that occurred within the limitations period."   *Id.* (citing *Knight*, 19 F.3d at 580–82).

For statute of limitations purposes, each allegation by Smith concerning a deviation from Alabama's lethal injection protocol can be plausibly read as a separate and discrete act that violates Smith's Eighth Amendment rights.   Each alleged (and unique) deviation from the lethal injection protocol affirmatively created a new risk for Smith.   Each deviation is also distinct from an alleged change in protocol because, unlike a change in protocol, a unique and unexpected harm emerges following each distinct violation.   *Cf. Arthur v. Thomas*, 674 F.3d 1257, 1261–62 (11th Cir. 2012) (holding that the district court erred in dismissing complaint on statute of limitations grounds where, among others, plaintiff relied on recent executions of Alabama inmates to show there had been a substantial change in protocol).   Accordingly, the Court finds that the statute of limitations on Smith's claim more reasonably accrued on the date of the most recent lethal injection protocol violation alleged—the date of Miller's recent attempted execution—and incorporates all violations alleged to have occurred within the past two years.   As

the attempted execution occurred on September 22, 2022, less than two months ago,

Smith's proposed claim is not time-barred in its entirety.

### 2. Merits of Smith's Eighth Amendment Claim

Nevertheless, the Court finds that the proposed Amended Complaint fails to

state sufficient factual detail to raise a plausible Eighth Amendment method of

execution challenge.  This is particularly true in light of the Court's order prohibiting

the State from using a cutdown procedure, intramuscular sedation, or any other off-

protocol tactics during Smith's execution.

"[T]he Eighth Amendment does not guarantee a prisoner a painless

death . . . ." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1124 (2019).  Instead, the relevant

Eighth Amendment inquiry is whether the State's chosen method of execution

"'superadds' pain well beyond what's needed to effectuate a death sentence." *Id.* at

1126–27.  And "[t]o determine whether the State is cruelly superadding pain," the

Supreme Court requires "asking whether the State had some other feasible and

readily available method to carry out its lawful sentence that would have

significantly reduced a substantial risk of pain." *Id.* at 1127; *see also Boyd*, 856 F.3d

at 858 (explaining that a plaintiff asserting an Eighth Amendment method of

execution challenge "must plausibly plead, and ultimately prove, that there is an

alternative method of execution that is feasible, readily implemented, and in fact

significantly reduces the substantial risk of pain posed by the state's planned method

of execution"). The plaintiff must establish that the challenged method poses a "'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" *Glossip v. Gross*, 576 U.S. 863, 877 (2015) (citation omitted).

Smith's proposed Amended Complaint is replete with references to the execution of Joe Nathan James, particularly the ADOC's alleged use of a cutdown procedure and intramuscular sedation during his execution. But the Court has mooted those issues by ordering the Commissioner and his agents to avoid using a cutdown procedure or intramuscular sedation during Smith's execution.

Putting aside those moot issues, Smith's other allegations regarding the Joe Nathan James execution are insufficient to state a plausible Eighth Amendment claim. Although Smith alleges that James was tortured for approximately three hours behind closed curtains during his lethal injection execution, a declaration attached to Smith's proposed Amended Complaint clarifies this allegation in a material way. Board-certified anesthesiologist Dr. Joel Zivot, who witnessed a private autopsy of James, opines that James was tortured and suffered "unnecessary pain" because, in Dr. Zivot's opinion, James was subjected to a cutdown procedure and intramuscular sedation. (Doc. 24-1 at 27–31.) The specific details in Dr. Zivot's attached declaration control over the general allegation of torture in Smith's

proposed Amended Complaint.  *See Gill ex rel. K.C.R. v. Judd*, 941 F.3d 504, 514–16 (11th Cir. 2019).  Dr. Zivot also mentions that James's autopsy revealed evidence of pulmonary edema.  But other than Dr. Zivot's vague reference to "unnecessary" pain, neither his declaration nor Smith's proposed Amended Complaint says anything about the severity or duration of pain James would have suffered from the alleged cutdown procedure, intramuscular sedation, or any other aspect of James's execution—let alone whether Smith likely faces a risk of such pain.  Nor do they explain whether these alleged procedures lasted the duration of the three hours during which James was hidden from the public eye.  Nor do they say anything about the severity or duration of pain that could be inferred from the presence of pulmonary edema—let alone whether Smith likely faces a risk of such pain.

These omissions are fatal because the relevant Eighth Amendment question is "how long [the inmate] will be capable of feeling pain."  *See Bucklew*, 139 S. Ct. at 1133.  Assuming without deciding that the Court could infer, based on common sense, that James experienced some pain during his execution, Smith's proposed Amended Complaint is insufficient to plausibly demonstrate that James experienced the severe pain required for an Eighth Amendment violation.  *Cf. id.* at 1124 (explaining that "the Eighth Amendment does not guarantee a prisoner a painless death"); *Baze v. Rees*, 553 U.S. 35, 50 (2008) (plurality opinion) ("Simply because an execution method may result in pain . . . does not establish the sort of 'objectively

intolerable risk of harm' that qualifies as cruel and unusual.").  And even if the Court could infer that James experienced severe pain, that does not render plausible the allegation that *Smith* faces the requisite "objectively intolerable risk of harm," *cf. Baze*, 553 U.S. at 50  (citation omitted), as the Court will discuss in more detail below.  Finally, as explained above, the Court addressed any concerns related to the cutdown procedure and intramuscular sedation by ordering the Commissioner and his agents not to use either procedure during Smith's execution.

The proposed Amended Complaint also alleges other protocol violations that occurred during the James execution.  (*See, e.g.*, Doc. 24-1 at 4 ("Mr. James was rendered unconscious before the warrant was read and his last remarks were requested, two steps in the Protocol that cannot meaningfully occur if the condemned is unconscious.").)  Just because the ADOC allegedly violated some aspect of the protocol does not mean that an Eighth Amendment violation resulted from the ADOC's actions.  The central question remains whether the method of execution will subject the plaintiff to a "substantial risk of serious harm."  *See Baze*, 553 U.S. at 50 (citation omitted).  Rather than decry alleged deviations from the protocol, Smith must show either how these *particular* deviations, or how deviation from an established protocol more broadly, will plausibly subject him to a substantial risk of serious harm.  Smith's proposed Amended Complaint fails to do so.

The proposed Amended Complaint also cites the recent execution attempt of Alan Miller to allege that Smith will face a similarly troubled execution.  To show that the State's lethal injection process will pose a "substantial risk of harm" sufficient to trigger an Eighth Amendment violation, and therefore survive a motion to dismiss for failure to state a claim, Smith must plead that *he* faces an additional risk of pain above and beyond that expected for establishing intravenous access.  *See Arthur v. Comm'r, Ala. Dep't of Corr.*, 840 F.3d 1268, 1312 (11th Cir. 2016) (to prevail on an Eighth Amendment method of execution challenge, plaintiff must show that "as applied to him," a protocol is "sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently imminent dangers" (quoting *Glossip*, 576 U.S. at 877)), *abrogated on other grounds by Nance v. Comm'r, Ga. Dep't of Corr.*, 981 F.3d 1201 (11th Cir. 2020); *Valle v. Singer*, 655 F.3d 1223, 1233 (11th Cir. 2011) ("[T]he fact that 'an execution method may result in pain, either by accident or as an inescapable consequence of death, does not establish the sort of "objectively intolerable risk of harm" that qualifies as cruel and unusual.'" (quoting *Baze*, 553 U.S. at 50)).  Smith simply does not plead sufficient factual detail in his proposed Amended Complaint to show that he will undergo a similarly painful experience while ADOC personnel try to establish intravenous access.

Smith's proposed Amended Complaint references allegations that Alan Miller was repeatedly "slapped, poked, prodded, and punctured" over the course of two hours during his September 22, 2022 execution attempt.  (Doc. 24-1 at 14.)  This allegation alone is insufficient to show that Smith faces a similar risk of suffering intravenous access issues while undergoing the lethal injection process—let alone that Smith faces a substantial risk of severe pain.  Experience and common sense show that individuals are biologically distinct.  *See Iqbal*, 556 U.S. at 679 (explaining that courts must rely on their experience and common sense when evaluating the plausibility of a claim for relief).  For instance, just because one person suffers consequences from a medical procedure does not mean that other individuals who undergo the same procedure will suffer the same consequences.  A plaintiff cannot point to one death row inmate's complications from lethal injection and simply say he is thus at risk because of said complications; the plaintiff must show the Court that he faces a similar risk.  *See Miller v. Hamm*, No. 2:22-cv-506-RAH, 2022 WL 16720193, at *14 (M.D. Ala. Nov. 4, 2022) (explaining that a plaintiff cannot necessarily raise "a plausible method of execution claim by identifying one recent execution (or execution attempt) that allegedly caused another inmate severe pain," but rather must show a plausible reason why *he* faces a substantial risk of severe pain).  Smith cites no authority to the contrary, nor does he argue how the Court could infer that *he* faces a substantial risk of serious harm based

on the uncompleted execution of Miller.  Thus, on this record, Smith's references to the Miller execution attempt alone do not satisfy Smith's burden to plead that he will face a substantial risk of serious harm in the manner that Miller and other death row inmates not subject to a cutdown or intramuscular sedation will.

In his declaration attached to the proposed Amended Complaint, Dr. Zivot states that execution personnel will likely have difficulty establishing intravenous access on Smith because his body mass index is "borderline obese," as "[i]t is much more difficult to locate suitable veins in obese individuals."  (Doc. 24-1 at 34.)  Dr. Zivot also attests that Smith is on medication for depression and insomnia and explains that "[i]t is highly likely that his mental state will be one of great anguish and anxiety," which he explains is a risk factor for rendering intravenous access difficult.  (*Id.*)  But just because obtaining venous access will likely be difficult on account of a generalized risk factor does not plausibly suggest anything about the severity or duration of pain Smith will likely experience due to that difficulty.  Similarly, while Dr. Robert Jason Yong's declaration details various challenges to establishing intravenous access, his statements are not specific to *Smith* or the risk of harm *Smith* likely faces from a lethal injection execution.  (*Id.* at 115–23.)  Dr. Zivot's and Dr. Yong's references to generalized and probabilistic risk factors do not plausibly show that Smith will likely experience pain "well beyond what's needed to effectuate a death sentence."  *See Bucklew*, 139 S. Ct. at 1127.  The

conclusions in Dr. Zivot's and Dr. Yong's declarations are too speculative to help Smith's proposed Amended Complaint survive a motion to dismiss.

Because Smith fails to allege facts plausibly showing that he will face a substantial risk of serious harm by undergoing execution via lethal injection, and given the strict requirements for challenging a method of execution, the Court finds that granting leave to amend the Complaint would be futile.[4]   Accordingly, the Court's judgment dismissing the matter with prejudice will stand.[5]

### C. Sanctions as a Sufficient Safeguard

Finally, Smith argues this Court's order that the Commissioner and his agents are to strictly adhere to and not deviate from the ADOC's established lethal injection protocol is insufficient to counter the risk that Smith will be executed in a cruel and unusual manner.   Smith asserts that because the ADOC prepares inmates for

---

[4] Since the Court finds that Smith has failed to plead facts showing that he faces a "substantial risk of serious harm" from a lethal injection execution, it is unnecessary for the Court to address the comparative level of pain that a nitrogen hypoxia execution would cause.  The Court does note, however, that nitrogen hypoxia is an available alternative method, even though the State disclosed at oral argument that it has yet to establish a protocol for carrying out executions via nitrogen hypoxia.  The Eleventh Circuit has explicitly held that a state may not statutorily authorize a particular method of execution and simultaneously deny it as "available." *Price v. Comm'r, Dep't of Corr.*, 920 F.3d 1317, 1328 (11th Cir. 2019) (per curiam).  Because the State of Alabama voluntarily adopted nitrogen hypoxia by statute, *Price* rejected the State's argument that nitrogen hypoxia is not available "simply because the State has not yet developed a protocol to administer this method of execution." *Id.*

[5] Because the Court rests its conclusion that it committed no manifest error of law in not granting leave to Smith to file a complaint on the grounds of futility, the Court will not address whether granting leave to amend would impose undue prejudice on the Defendants.

execution in secret, there is no way to ensure that the Commissioner and his agents will abide by this Court's order.

Smith has not demonstrated that the gravity of the potential sanctions, including criminal sanctions, is insufficient to deter any conduct violative of the Court's order. Smith's argument presupposes that the ADOC (likely) will violate the Court's order. However, Smith's argument lacks factual support and is instead based on speculation and conjecture. To the extent Smith is concerned that the secrecy which shrouds the ADOC's execution protocol and process would obscure any violations of the Court's order and therefore prevent enforcement, the Court assures Smith that there are means by which deviations from the protocol could nevertheless be brought to the Court's attention. And the secrecy of the execution protocol and process, without more, is insufficient to demonstrate *ex ante* that the ADOC (likely) will violate the Court's order and expose itself to sanctions. In sum, Smith has not demonstrated that the Court committed a manifest error of law on this issue.

## III.   CONCLUSION

Accordingly, it is hereby ORDERED that Plaintiff Kenneth Eugene Smith's *Motion to Alter or Amend the Judgment under Fed. R. Civ. P. 59(e) and to Expedite Resolution of the Motion* (Doc. 24) is DENIED.

**DONE** this the 9th day of November, 2022.

/s/ R. Austin Huffaker, Jr.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE