# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

November 17, 2022

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  22-13781-P
Case Style:  Kenneth Eugene Smith v. Commissioner, Alabama Department of Corrections
District Court Docket No:  2:22-cv-00497-RAH

Electronic Filing
All counsel must file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Although not required, non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing are available on the Court's website. Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call David L. Thomas at (404) 335-6171.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: David L. Thomas
Phone #: 404-335-6151

OPIN-1 Ntc of Issuance of Opinion

[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13781

Non-Argument Calendar

_____

KENNETH EUGENE SMITH,

                                                            Plaintiff-Appellant,

*versus*

COMMISSIONER, ALABAMA DEPARTMENT OF
CORRECTIONS,

                                                            Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:22-cv-00497-RAH

2                      Opinion of the Court                  22-13781

_____

Before WILSON, JILL PRYOR, and GRANT, Circuit Judges.

PER CURIAM:

Kenneth Eugene Smith is a death row inmate in the custody
of the Alabama Department of Corrections (ADOC) at William C.
Holman Correctional Facility (Holman).  Smith sued the Commis-
sioner of ADOC, John Hamm, for alleged constitutional violations
under 42 U.S.C. § 1983.  Smith appeals the district court's order
granting the Commissioner's motion to dismiss and the district
court's order denying Smith's motion to amend judgment.  Smith
also moves in this court to stay his execution—set for Thursday,
November 17, 2022—pending this appeal.

After careful review and with the benefit of oral argument,
we **REVERSE and REMAND**.  Further, we deny as moot Smith's
motion for stay of execution pending appeal.

## I.

In April 1996, a jury convicted Smith of capital murder based
on the robbery and murder of Elizabeth Sennett.  *Smith v. State*,
908 So.2d 273, 278 n.1, 279 (Ala. Crim. App. 2000).  Ultimately, the
jury recommended by a vote of 11 to 1 a sentence of life imprison-
ment without the possibility of parole.  *Id.* at 278.  Yet the trial

judge overrode the jury's recommendation and sentenced Smith to death.[1] *Id.*

On June 24, 2022, Alabama moved to set Smith's execution date. On September 30, 2022, the Supreme Court of Alabama granted Alabama's motion and set Smith's execution for Thursday, November 17, 2022.

On August 18, 2022, Smith sued the Commissioner asserting two Section 1983 claims. First, Smith alleged a constitutional challenge to Alabama's method of execution. He argued that ADOC has substantially deviated from its Execution Protocol to the point that it would subject Smith to intolerable pain and torture in violation of the Eighth Amendment. Second, Smith alleged that his execution would violate his Fourteenth Amendment due process rights based on ADOC's failure to provide him with the information necessary to make an informed decision on whether to elect nitrogen hypoxia as his method of execution.

The Commissioner moved to dismiss Smith's complaint, arguing that Smith's claims were time barred by the two-year statute of limitations. Smith opposed but also sought leave to amend his complaint. In response to allegations that ADOC used a cutdown

---

[1] In 2017, Alabama amended its law to no longer permit judicial override in capital cases. *See* Ala. Code § 13A-5-47(a) ("Where a sentence of death is not returned by the jury, the court *shall* sentence the defendant to life imprisonment without parole.") (emphasis added).

4                    Opinion of the Court                    22-13781

procedure and intramuscular sedation on a prior inmate,[2] the Commissioner represented to the district court that it would not attempt either of those procedures in Smith's execution.

The district court granted the Commissioner's motion to dismiss with prejudice.  Specifically, the district court found that Smith's Eighth Amendment claim was a challenge to Alabama's entire lethal injection protocol.  As a result, the court held that Smith's claims were time barred because the latest that Smith could have objected to Alabama's Execution Protocol was December 31, 2021—two years after Alabama released its redacted version of its Execution Protocol.[3]  The court also found that Smith's Fourteenth Amendment claims were time barred because the time to elect nitrogen hypoxia ended in July 2018, and related claims had to be filed by July 2020.  The district court ultimately incorporated into its order the Commissioner's stipulation that he would not employ a cutdown procedure or intramuscular sedation in Smith's execution.  The district court further ordered the Commissioner not to deviate from the Execution Protocol.

_____

[2] On July 28, 2022, ADOC executed Joe Nathan James.  For three hours, James was behind closed curtains with Alabama's execution team who proceeded to attempt intravenous (IV) access.  Two doctors have opined on what happened, with one doctor finding that ADOC attempted a cutdown procedure and the other doctor disagreeing with that assessment.

[3] In March 2019, this court affirmed the district court's order to release Alabama's Execution Protocol.  *Comm'r, Ala. Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1173 (11th Cir. 2019).

Smith then moved to amend the judgment, specifically asking that the district court amend its judgment to dismissal without prejudice to allow Smith to replead his Eighth Amendment claim. Smith's proposed amended complaint focused on Joe Nathan James's execution in July 2022 and the attempted execution of Alan Eugene Miller in September 2022 as evidence that ADOC deviated from its protocol and will likely do it again. He further alleged that ADOC's "[u]se of [the] Protocol" would subject him to an Eighth Amendment violation because, "as ADOC implements it," he will likely be subject to cruel and unusual punishment due to particular physiological predispositions.[4] To evidence ADOC's handling of prior condemned inmates with similar difficulties, Smith's proposed amended complaint details how long it took Alabama's execution team to get intravenous (IV) access in James's execution and Miller's attempted execution at Holman. In James's execution, James remained hidden behind a curtain for over three hours. When the execution team could not access James's veins to place an IV, they allegedly employed a cutdown procedure. In Miller's attempted execution, Miller was strapped to a gurney for almost two hours while the execution team attempted IV access. Smith alleged that ADOC will likely either take advantage of the Execution Protocol's lack of specificity or disregard or deviate from its

---

[4] The Execution Protocol states that "[t]he standard procedure for inserting IV access will be used," but "[i]f the veins are such that [IV] access cannot be provided, [an unknown person] will perform a central line procedure to provide [IV] access."

Protocol by attempting any means necessary to proceed with and complete the execution, which often subjects the inmate to cruel and intolerable pain.

The district court denied Smith's motion.  First, the court determined that it did not commit a manifest error of law in dismissing Smith's original complaint.  Second, after considering Smith's amended complaint, the district court reversed course on whether Smith's claims were timely.  The court found that Smith's allegations were challenges to specific deviations from Alabama's Execution Protocol, rather than a challenge to the Protocol as a whole, and that Smith's Eighth Amendment claim was therefore not time barred in its entirety.  But the district court determined, after examining the proposed amended complaint, granting leave to amend would be futile.  Again, the district court reiterated that Smith's allegations that the Commissioner deviated from its Execution Protocol by using a cutdown procedure or intramuscular sedation was mooted because the Commissioner stipulated under oath not to use those procedures on Smith.  The district court explained that, to support an Eighth Amendment violation, Smith had to show how ADOC's deviations—or how implementation of its Execution Protocol more broadly—subjected Smith to a substantial risk of serious harm.  The court explained that Smith's amended complaint failed to do so.

Smith timely appealed.  Smith also seeks to stay his execution pending this appeal.

## II.

First, Smith argues that the district court erred in dismissing his Eighth Amendment claim from his original complaint by re-shaping it into a different claim. Second, Smith argues that the district court erred in denying his request for leave to file his proposed amended complaint, finding that Smith failed to plausibly state a claim and thus amendment was futile. Third, Smith argues that the district court erred in concluding that his Eighth Amendment claim, specifically ADOC's alleged use of a cutdown procedure and intramuscular sedation, was mooted. Last, Smith argues the district court erred by dismissing his Fourteenth Amendment due process claim as untimely. Because we find that the district court erred in not granting leave to amend Smith's complaint because it found amendment to be futile, we focus only on Smith's arguments related to his allegations in his proposed amended complaint.

## A.

First, Smith argues that the district court erred in concluding that his Eighth Amendment claim, specifically ADOC's alleged use of a cutdown procedure and intramuscular sedation, was mooted. He argues that despite the district court order prohibiting the Commissioner and his agents from employing a cutdown procedure, intramuscular sedation, or other protocol violation, protocol violations may still occur.

We review the question of mootness de novo. *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328 (11th Cir. 2004).

8                    Opinion of the Court                    22-13781

An issue is moot when it "no longer presents a live controversy with respect to which the court can give meaningful relief." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001) (per curiam) (internal quotation mark omitted).

The district court's order resolves Mr. Smith's concern that ADOC will likely violate the lethal injection protocol.[5]  Smith's proposed amended complaint—asserting ADOC's alleged use of a cutdown procedure, intramuscular sedation, or any other violation of the protocol places him at risk of experiencing cruel and unusual punishment—is no longer a live controversy because ADOC is prohibited by court order from attempting those things.  Thus, the district court did not err in finding these allegations to be moot.

## B.

Even if part of his claim is mooted, as we have concluded it is, Smith contends that his proposed amended complaint nonetheless contained allegations that support an Eighth Amendment method-of-execution claim that is not moot.[6]  Specifically, he

---

[5] The district court has also placed ADOC on notice that severe sanctions will result if there are any protocol deviations during Smith's execution.

[6] As a preliminary matter, Smith's proposed amended complaint contains some general protocol challenges that (we agree with the Dissent) are time-barred.  To challenge the Execution Protocol, Smith had to bring his claim within the statute of limitations.  "All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008).  Thus, in order to have his claim

22-13781                 Opinion of the Court                         9

argues that the Execution Protocol does not expressly prevent the hours-long attempt to establish intravenous access that allegedly resulted in superadded pain during James's execution and Miller's attempted execution. We agree with Smith that this claim is not mooted by the district court's order that ADOC not violate its Execution Protocol.  We next ask whether these remaining allegations state a claim under the Eighth Amendment.[7]  In the context of this appeal, we ask whether leave to amend the complaint would have been futile.

Leave to amend under Federal Rule of Civil Procedure 15(a)(2) "shall be freely given when justice so requires."  *McKinley v. Kaplan*, 177 F.3d 1253, 1255 (11th Cir. 1999) (per curiam).  But

---

heard, Smith was required to bring it within two years from the date the limitations period began to run.  *See* Ala. Code § 6-2-38.

Although Alabama implemented lethal injection as its primary method of execution, Ala. Code § 15-18-82.1(a), in 2002, the district court liberally assumed (which the Commissioner does not argue against) that the release of the redacted Execution Protocol in 2019 was a substantial change and thus allowed that to reset the statute of limitations.  Smith therefore had until the end of 2021 to bring his general challenge, which he failed to do.  Smith did not file his challenge until August 2022.

[7] Smith pleaded these allegations alternatively as a deviation from or as an implementation of the Execution Protocol.  Either way, the court's order that ADOC not deviate from the Execution Protocol as written does not moot this aspect of his claim.  The parties disagree on whether the protocol permits an extended attempt to achieve intravenous access via the first provided procedure, so ADOC can, in its view, follow the protocol as written and per the district court's order while still subjecting Smith to the lengthy ordeal he challenges.

leave to amend is not always guaranteed, including when amendment would be futile. *See Garcia v. Chiquita Brands Int'l, Inc.*, 48 F.4th 1202, 1220 (11th Cir. 2022). "We generally review a district court's decision to deny leave to amend for abuse of discretion, but review *de novo* an order denying leave to amend on the grounds of futility, because it is a conclusion of law that an amended complaint would necessarily fail." *Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 864 (11th Cir. 2017).

We conclude that the district court erred in not granting leave to amend Smith's complaint because it found amendment to be futile. After reviewing Smith's proposed amended complaint de novo, we conclude that he pleaded sufficient facts to plausibly support an Eighth Amendment method-of-execution claim that is not barred by the applicable statute of limitations, and thus amendment would not have been futile. As a result, the district court erred in denying Smith's leave to amend his complaint.

To state a plausible claim for relief under the Eighth Amendment, Smith must plead "a substantial risk of serious harm, an objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment." *Baze v. Rees*, 553 U.S. 35, 50 (2008) (internal quotation marks omitted). The Eighth Amendment inquiry focuses on whether the state's chosen method of execution "cruelly superadds pain to the death sentence" by asking whether the state has "a feasible and readily implemented alternative method of

execution that would significantly reduce a substantial risk of severe pain." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1125, 1127 (2019).

We turn to Smith's non-moot allegations, which detail how the Execution Protocol does not specify how long the execution team can attempt to access a vein before moving to a central-line procedure, how this played out in the James execution and Miller attempted execution, and how it will affect Smith's execution.  In James's execution and Miller's attempted execution, the execution team spent considerable time attempting to establish IV access.  As Smith alleges in his proposed amended complaint, by the time James's scheduled execution date occurred, James had no outstanding litigation[8] that would prevent his execution from starting at 6:00 p.m. CST as typically set by Holman.  James entered the execution chamber behind a closed curtain and remained there for over three hours while the execution team tried to access a vein.  In Miller's attempted execution, Miller remained behind the closed curtain for over two hours as the execution team attempted IV access.  Dr. Joel Zivot, an anesthesiologist who reviewed James's autopsy findings and documents in Miller's ongoing litigation about

---

[8] Often with executions, the inmate seeks relief from the courts close to the date of execution.  As a result, ADOC often does not move the inmate into the execution room until the courts resolve an inmate's case.  *See Miller v. Hamm*, -- F. Supp. 3d --, 2022 WL 16720193, at *2 (M.D. Ala. Nov. 4, 2022) (describing how the Supreme Court vacated the district court's injunction at 9:00 p.m. then at 9:55 p.m. Miller was taken to the execution room where prep for his execution began).

12                    Opinion of the Court                    22-13781

his attempted execution, opined that the risk of a prolonged ordeal "are real and not theoretical": "Reports after the attempted execution of AE Miller . . . indicate that ADOC personnel had the same trouble establishing IV access that they had in JN James' execution, concluding their efforts after about two hours only as midnight approached when the death warrant expired." These factual allegations[9] show a pattern of difficulty by ADOC in achieving IV access with prolonged attempts.[10]

Smith alleges that it will be difficult to access his veins because of both general and specific risks. Dr. Zivot explained that establishing IV access in an execution where the inmate knows they will die increases the general risks with IV access. Dr. Zivot discussed how extreme anxiety caused by an impending execution triggers the condemned inmate's sympathetic nervous system, which in turn causes his or her blood vessels to constrict, making them harder to locate for IV access. Dr. Zivot also discussed that another general risk is that the execution team at Holman has likely

---

[9] Based on the many news articles reporting on James's execution, the time James spent behind the curtain is a verifiable, true fact. Further, Miller's length of time has been supported by Miller's own declaration in his lawsuit against the Commissioner for the torture he experienced during that time frame.

[10] Although there is little case law on the length of time typically needed to obtain IV access during an execution, Kentucky's protocol, which the Supreme Court in *Baze* approved, gave a one-hour time limit to obtain IV access. *See* 553 U.S. at 45.

undergone less training and therefore possesses fewer skills than medical professionals who establish IV's regularly.[11]

Turning to Smith's specific risks, Dr. Zivot explained that Smith's height and weight corresponds to a BMI that is borderline obese and "[i]t is much more difficult to locate suitable veins in obese individuals." Also, Dr. Zivot discussed that Smith recently started on medications for depression and insomnia, conditions likely triggered in anticipation of his impending execution. Dr. Zivot opined that Smith's anxiety and anguish levels at his execution will likely be high. Bolstering Smith's specific risks is Dr. Zivot's declaration in which he opined that Smith's "risks [for] a failed intravenous attempt are very likely quite similar in circumstance to the recent failed attempt at IV access of" Miller.

Considering these allegations, Smith has plausibly alleged that there will be extreme difficulty in accessing his veins. Because of the difficulty in accessing Smith's veins, Smith plausibly pleaded that, considering ADOC's inability to establish difficult IVs swiftly

_____

[11] ADOC's execution team is unidentified, so the court has no way of knowing the medical training of the individuals who are setting up IV access. And while we recognize the need to protect the specific individuals who perform these functions, many other states detail what training and credentials are required for those individuals. *See Baze*, 553 U.S. at 45 (detailing Kentucky's requirements); *Lopez v. Brewer*, 680 F.3d 1068, 1075 (9th Cir. 2012) (discussing Arizona's updated protocols along with the training and experience of the IV team); *Cooey v. Strickland*, 589 F.3d 210, 219 (6th Cir. 2009) (addressing Ohio's new protocol requiring that medical team meet certain training and qualifications).

14                    Opinion of the Court                    22-13781

and successfully in the past, he will face superadded pain as the ex-
ecution team attempts to gain IV access.

      We also find that Smith plausibly pleads that there is an
available alternative method that will reduce the risk of severe
pain.  In *Price v. Commissioner, Department of Corrections*, we
found that Alabama's statutorily authorized method of execution
(nitrogen hypoxia) could not be considered unavailable simply be-
cause no mechanism to implement the procedure had been final-
ized.  920 F.3d 1317, 1328 (11th Cir. 2019) (per curiam).  Yet the
Commissioner continues to argue that Smith failed to provide an
available alternative method.   The Commissioner completely
misses our point from *Price*.  We find that nitrogen hypoxia is an
available alternative method for method-of-execution claims.  Fur-
ther, Smith has sufficiently pleaded that nitrogen hypoxia will sig-
nificantly reduce his pain.

      Finally, accepting the allegations in Smith's proposed
amended complaint, we agree with the district court that his
Eighth Amendment challenge is not plainly time barred.  In his pro-
posed amended complaint, Smith details how long it took Ala-
bama's execution team to establish IV access in James's execution
and Miller's attempted execution at Holman.  It is the emergence
of ADOC's pattern of superadding pain through protracted efforts
to establish IV access in the two previous execution attempts that
caused Smith's claim to accrue.  This pattern emerged at the onset
of Miller's attempted execution. Thus, Smith's Eight Amendment
challenge is not plainly time barred.

Under a de novo review, we find that Smith's proposed amended complaint states a plausible claim for relief that was brought within the statute of limitations. The district court should have allowed Smith to file his proposed amended complaint. Thus, the district court erred in denying Smith's motion for leave to amend his complaint on the ground that amendment would be futile.[12]

## III.

Lastly, Smith moved to stay his execution while we consider his appeal.[13] At Smith's request, we expedited briefing and held oral argument to address Smith's underlying arguments. Because we have resolved Smith's underlying appeal, Smith's motion for stay of execution pending appeal is **DENIED as moot**.

**REVERSED AND REMANDED.**

---

[12] We find no error in the district court's treatment of Smith's remaining arguments.

[13] A stay pending appeal is appropriate only if the moving party establishes: "(1) a substantial likelihood of success on the merits; (2) that the [stay] is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm the [stay] would cause the other litigant; and (4) that the [stay] would not be averse to the public interest." *Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275, 1280 (11th Cir. 2015) (per curiam).

22-13781                Grant, J., Dissenting                     1

GRANT, Circuit Judge, dissenting:

The question before us is whether Smith's proposed amended complaint stated a plausible Eighth Amendment claim. The majority concludes that that Smith plausibly alleged that "there will be extreme difficulty in accessing his veins" for the lethal injection procedure, and that "considering ADOC's inability to establish difficult IVs swiftly and successfully in the past, he will face superadded pain as the execution team attempts to gain IV access." Majority Op. at 13–14.  Two problems with this conclusion come immediately to mind: first, that claim is nowhere to be found in Smith's proposed amended complaint.  And second, even if we reframe Smith's Eighth Amendment claim as arising from the Department's demonstrated "inability to establish difficult IVs swiftly and successfully," it is barred by the two-year statute of limitations. I respectfully dissent.

In his initial complaint, Smith alleged that execution by Alabama's lethal-injection process would violate his Eighth Amendment rights.  After the district court dismissed that claim as time barred, Smith submitted a proposed amended complaint alleging that the execution of Joe Nathan James and the attempted execution of Alan Eugene Miller "made clear for the first time that ADOC's lethal injection 'protocol' is entirely advisory—meaning executions are being carried out by individuals who are either unable or unwilling to follow the Protocol."  Proposed Amended Complaint ¶ 10; *see id.* ¶ 25.  He alleged that James's autopsy showed "two significant protocol violations"—an unauthorized

'cutdown' procedure" and "an unauthorized intramuscular injection"—and that eyewitness accounts indicated that the Department may also have gone off-protocol by sedating James before the execution began. *Id.* ¶ 8; *see id.* ¶¶ 27–46. He also alleged that the Department deviated from its protocol during the attempted execution of Miller by strapping him to a gurney "in a stress position" and by slapping him on his neck. *Id.* ¶ 9; *see id.* ¶¶ 48–56. And he alleged that because the Department's "lethal injection protocol is only advisory," permitting Alabama to execute him by that method would expose him to "an intolerable risk of torture, cruelty, or substantial pain."[1] *Id.* ¶ 13. He did *not* allege that executing him by strictly following the written protocol would violate the Eighth Amendment.

That is significant because, as the majority holds, the district court's order prohibiting any deviation from the lethal injection protocol "resolves Mr. Smith's concern that ADOC will likely violate" the protocol during his execution. Majority Op. at 8. The order renders his claim arising from anticipated protocol violations moot—and that is the only claim alleged in his proposed amended complaint.

---

[1] In seeking leave to amend his complaint, Smith represented that his Eighth Amendment claim was directed exclusively at deviations from the lethal injection protocol: "To be clear, Mr. Smith's challenge is not to the entirety of the protocol. It is to deviations from the protocol—namely, ADOC's treatment of the Protocol as advisory only—about which information has only recently surfaced." Doc. 24 at 2.

22-13781            Grant, J., Dissenting                3

The majority concludes that Smith has stated an Eighth Amendment claim with allegations that "detail how the Execution Protocol does not specify how long the execution team can attempt to access a vein before moving to a central-line procedure." Majority Op. at 11. But Smith has not made any such claim in his proposed amended complaint, and we cannot rewrite his complaint for him. *See West v. Warden, Comm'r, Alabama DOC*, 869 F.3d 1289, 1299 (11th Cir. 2017); *see also United States v. Cordero*, 7 F.4th 1058, 1068 n.11 (11th Cir. 2021) (even for pro se litigants, the Court may not rewrite a deficient pleading).

Smith has urged us to interpret his proposed amended complaint as raising a similar claim by arguing that repeatedly "jabbing" the condemned inmate over a period of "nearly two hours" in an attempt to establish an IV (as in Miller's attempted execution) constitutes a violation of the written protocol that also violates the Eighth Amendment. Appellant's Brief at 31–32. It would be a stretch to say that Smith's proposed amended complaint articulated that claim, either. And even if it did, the proposed amendment would still be futile.

The ordeal of being strapped to a gurney and repeatedly jabbed with a needle while Department staff attempt unsuccessfully to start an IV line could eventually cross the line and amount to cruel and unusual punishment. But whether the possibility that Smith might endure such treatment is described as a deficiency in the lethal injection protocol or a violation of it, that risk was or

4                    Grant, J., Dissenting                    22-13781

should have been known to him more than two years before he filed his initial § 1983 complaint on August 18, 2022.

As Smith himself alleges in his proposed amended complaint, the Department attempted to execute Doyle Lee Hamm by lethal injection on February 22, 2018.   Proposed Amended Complaint ¶ 62.   Department staff tried for two-and-a-half hours to establish an IV line for Hamm, but were unable to do so.   *Id.*   During that two-and-a-half-hour period, Department staff "punctured Hamm at least 11 times in his limbs and groin, causing him to bleed profusely on the gurney."   *Id.*   The Department called off the execution, and Hamm's experience was reported contemporaneously in various news publications.   *See, e.g., Doyle Lee Hamm punctured at least 11 times in execution attempt, report states*, Montgomery Advertiser (March 6, 2018).   Smith's Eighth Amendment claim related to the Department's potentially extended efforts to establish IV access is therefore barred by the two-year statute of limitations.[2]   *See McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008) ("a federal claim accrues when the prospective plaintiff 'knows or has reason to know of the injury which is the basis of the action.'" (citation omitted)).

---

[2]  Smith's 42 U.S.C. § 1983 claim is governed by Alabama's two-year statute of limitations.   *See* Ala. Code 6-2-38; *McNair*, 515 F.3d at 1173.

22-13781                    Grant, J., Dissenting                    5

*        *        *

Smith's concern about the Alabama Department of Corrections's difficulties with efficiently starting an IV line for its lethal injection protocol is understandable—as is his concern that the Department may be willing to disregard its protocol altogether if it is unable to start an IV line in the usual way.  But unfortunately for everyone involved, the Department's problems in quickly establishing IV access for lethal injection are nothing new.  To the extent that his proposed amended complaint states an Eighth Amendment claim based on potentially extended efforts to start an IV, that claim accrued more than two years ago, and it is therefore time barred.  And Smith's claim that the Department is likely to violate his Eighth Amendment rights by performing off-protocol procedures during his execution—in starting an IV or otherwise—is mooted by the district court's order prohibiting any such deviations.  I would affirm the district court's decision denying Smith's request to amend his complaint because the proposed amendment would be futile.  *See Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007).