**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

KENNETH EUGENE SMITH,     )
          )
          Plaintiff,     )     Case No. 2:22-cv-00497
          )
v.          )     CAPITAL CASE
          )
JOHN Q. HAMM, in both his individual     )
capacity and his official capacity as     )
Commissioner, Alabama Department of     )
Corrections, *et al.*,     )
          )
          Defendants.     )

**PLAINTIFF KENNETH EUGENE SMITH'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT .............................................5

    A.   ADOC Subjected Mr. James to Torture, Cruelty, and Severe Pain During One of the Longest Executions in History .................................................5

    B.   ADOC Subjected Mr. Miller to Torture, Cruelty, and Severe Physical and Psychological Pain During Its Failed Attempt to Execute Him ...........................6

    C.   ADOC Subjected Mr. Smith to Torture, Cruelty, and Severe Physical and Psychological Pain During Its Failed Attempt to Execute Him ...........................7

    D.   Mr. Smith's Claims .................................................................................9

LEGAL STANDARD............................................................................................10

ARGUMENT ......................................................................................................11

I.    MR. SMITH STATES A PLAUSIBLE EIGHTH AMENDMENT CLAIM ...................11

    A.   Mr. Smith Plausibly Alleges that a Second Attempt to Execute Him by Lethal Injection Would Pose an Objectively Intolerable Risk of Harm. ...............11

        1.   The Eleventh Circuit's Holding that Mr. Smith Plausibly Alleged that His Execution by Lethal Injection Would Pose an Intolerable Risk of Serious Harm is Law of the Case.................................................11

        2.   This Court Has Held that Analogous Allegations to Those in the SAC State a Plausible Eighth Amendment Claim....................................13

        3.   There is No Basis to Disregard the Eleventh Circuit's Decision in this Case and this Court's Decision in *Miller*...........................................17

    B.   The Eleventh Circuit's Holding that Mr. Smith Plausibly Alleged that Nitrogen Hypoxia is an Available Alternative Method of Execution is Law of the Case............................................................................................20

    C.   Mr. Smith Plausibly Alleges that He is Entitled to Monetary Damages from Defendants in Their Individual Capacities....................................................22

II.    MR. SMITH STATES A PLAUSIBLE FOURTEENTH AMENDMENT CLAIM.........25

CONCLUSION....................................................................................................28

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*AcryliCon USA, LLC v. Silikal GmbH & Co.*,
   46 F.4th 1317 (11th Cir. 2022) ...............................................................................12

*Arthrex, Inc. v. Parcus Med., LLC*,
   No. 2:11-cv-694, 2012 WL 12903892 (N.D. Fla. Aug. 21, 2012) .........................22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................10

*Baze v. Rees*,
   553 U.S. 35 (2008).............................................................................11, 24, 25, 28

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................................10

*Bucklew v. Precythe*,
   139 S. Ct. 1112 (2019).............................................................................................20

*Chavez v. Florida SP Warden*,
   742 F.3d 1267 (11th Cir. 2014) (Wilson, J., concurring) .......................................19

*Criswell v. City of Naples*,
   No. 2:19-cv-305, 2020 WL 2745818 (M.D. Fla. May 27, 2020) ...........................27

*CSX Transp., Inc. v. Ala. Dep't of Rev.*,
   888 F.3d 1163 (11th Cir. 2018) ..............................................................................12

*Disser v. City of Tampa*,
   No. 8:13-cv-885, 2013 WL 3975759 (M.D. Fla. July 31, 2013)............................27

*Engquist v. Oregon Dep't of Agr.*,
   553 U.S. 591 (2007).................................................................................................26

*Estelle v. Gamble*,
   427 U.S. 97 (1976)...................................................................................................23

*Farmer v. Brennan*,
   511 U.S. 825 (1994)......................................................................................4, 24, 25

*Gissendaner v. Comm'r, Ga. Dep't of Corrs.*,
   779 F.3d 1275 (11th Cir. 2015) ..............................................................................21

*Glossip v. Gross*,
    576 U.S. 863 (2015)................................................................................11, 14

*Grider v. City of Auburn*,
    618 F.3d 1240 (11th Cir. 2010) ...............................................................27

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982)..................................................................................23

*Hazelwood v. Foundation Fin. Grp., LLC*,
    551 F.3d 1223 (11th Cir. 2008) ...........................................................3, 17

*Hope v. Pelzer*,
    536 U.S. 730 (2002)..................................................................................23

*In re Ohio Execution Protocol Litig.*,
    No. 2:11-cv-1016, 2017 WL 2964901 (S.D. Ohio July 12, 2017) ...........20

*King v. Volunteers of Am., North Ala., Inc.*,
    502 F. App'x 823 (11th Cir. 2012) ..........................................................21

*Miller v. Hamm*,
    No. 2:22-cv-506, 2022 WL 16720193 (M.D. Ala. Nov. 4, 2022) .................. *passim*

*Miller v. Hamm*,
    No. 2:22-cv-506, 2022 WL 4348724 (M.D. Ala. Sept. 19, 2022), *vacated on
    other grounds*, 143 S. Ct. 50 (2022) ...................................................26, 27

*Nance v. Comm'r, Ga. Dep't of Corrs.*,
    ___ F.4th ___, No. 20-11393, 2023 WL 1111207 (11th Cir. Jan. 30, 2023) .............17, 18, 19

*Nance v. Ward*,
    142 S. Ct. 2214 (2022)..........................................................................11, 22

*Price v. Comm'r, Dep't of Corrs.*,
    920 F.3d 1317 (11th Cir. 2019) (per curiam).........................................21

*State of La. ex rel. Francis v. Resweber*,
    329 U.S. 459 (1947)..............................................................................24, 25

*This That & the Other Gift & Tobacco, Inc. v. Cobb County, Ga.*,
    439 F.3d 1275 (11th Cir. 2006) .............................................................2, 12

*U.S. Secs. & Exchange Comm'n v. Big Apple Consulting USA, Inc.*,
    No. 6:09-cv-1963, 2011 WL 13143143 (M.D. Fla. Dec. 29, 2011) .........22

*United States v. Moore*,
    22 F.4th 1258 (11th Cir. 2022) ................................................................17

iii

*Vill. of Willowbrook v. Olech*,
    528 U.S. 562 (2000) .................................................................................4, 26

*Zurich Am. Ins. Co. v. Southern Owners Ins. Co.*,
    No. 3:15-cv-01041, 2018 WL 1071939 (M.D. Fla. Feb. 26, 2018) ........................23

**Statutes**

42 U.S.C. § 1983 ...................................................................................................9

Fed. R. Civ. P. 8(a)(3) .......................................................................................4, 23

Fed. R. Civ. P. 12(b)(6) .........................................................................................10

**Other Authorities**

5 Alan Wright, Arthur Miller, & A. Benjamin Spencer, Fed. Prac. & Proc. § 1255
    (4th ed. Apr. 2022 Update) ..............................................................................4

Chandler, *Alabama 'close' to finishing nitrogen execution protocol*, AP News
    (Feb. 15, 2023), https://apnews.com/article/crime-alabama-
    5818261f3209a332bb4badf280960ca1 ............................................................22

Death Penalty Information Center, Execution Database,
    https://deathpenaltyinfo.org/executions/execution-
    database?year=2022&year=2023 ....................................................................16

Franklin, *Alabama to resume executions following procedure review*, News 3
    (Feb. 25, 2023), https://www.wrbl.com/news/alabama-to-resume-executions-
    following-procedure-review/ .......................................................................14, 15

Hyrnkiw, *Could Alabama model its execution laws after states that don't have
    executions?*, Al.com, Dec. 20, 2022, https://www.al.com/news/2022/12/could-
    alabama-model-its-execution-laws-after-states-that-don't-have-
    executions.html ...............................................................................................16

KAR 16:330 § 2(13) (effective July 2018),
    https://files.deathpenaltyinfo.org/legacy/files/pdf/Kentucky%20LI%20Protoco
    l%20effective%207:2018.pdf ...........................................................................16

Louisiana Department of Public Safety and Corrections, Regulation No. C-03-001
    Attachment E § 3.J.2 (Effective March 12, 2014),
    https://files.deathpenaltyinfo.org/documents/2014.03.14.LA.protocol.pdf ...........16

Oklahoma Department of Corrections, Execution Procedures OP-040301 §
    VII.F.6.h (Effective Feb. 20, 2020),
    https://files.deathpenaltyinfo.org/documents/Oklahoma-Protocol-2-20-2020-
    OP-040301.pdf ...............................................................................................16

Order (Ala. S. Ct. Jan. 13, 2023),
     https://judicial.alabama.gov/docs/rules/Rule_8(d)(1),Ala.R.App.P.Order.pdf........................15

Report of the Oklahoma Death Penalty Review Commission (April 2017),
     https://s3.amazonaws.com/content.newsok.com/documents/Report%20of%20t
     he%20OK%20Death%20Penalty%20Review%20Comm'n_April%202017.pdf ..................15

Tennessee Lethal Injection Protocol Investigation Report and Findings (Dec. 13,
     2022),
     https://app.box.com/s/cxeblwhscz6a8mbngp6cylwbcsz2c7jx/file/1102145253
     665............................................................................................................................15

U.S. Const. Amend. VIII ...................................................................................... *passim*

U.S. Const. Amend. XIV ...................................................................................... *passim*

Plaintiff Kenneth Eugene Smith submits this opposition to Defendants' motion to dismiss the Second Amended Complaint (Doc. 78) ("Defs.' Mot.").

## INTRODUCTION

On November 17, 2022, Defendants tried, but failed, to execute Mr. Smith by lethal injection because they were unable to place intravenous ("IV") lines in him. Mr. Smith's was the third consecutive execution that the Alabama Department of Corrections ("ADOC") botched in the space of four months all for the same reason—ADOC personnel are incapable of reliably placing IV lines. And to make matters worse, Defendants and ADOC made no investigation after the first two to determine what happened and why so that the problem would not recur, and yet set out to execute Mr. Smith anyway. Defendants apparently intend to execute Mr. Smith by the very same method that failed in their first attempt and that failed for the same reason three consecutive times over four months.

The Court should deny Defendants' motion to dismiss because it directly contradicts the Eleventh Circuit's decision in this very case. The Eleventh Circuit held unambiguously on November 17, 2022 that Mr. Smith had "pleaded sufficient facts [in his first amended complaint] to plausibly support an Eighth Amendment method-of-execution claim that is not barred by the applicable statute of limitations." Doc. 41 at 10; *see also id.* at 15 ("Smith's proposed amended complaint states a plausible claim for relief that was brought within the statute of limitations."). In doing so, the Eleventh Circuit expressly found both that Mr. "Smith plausibly pleaded that, considering ADOC's inability to establish difficult IVs swiftly and successfully in the past, he will face superadded pain as the execution team attempts to gain access," and that "he plausibly pleads that there is an available alternative method that will reduce the risk of severe pain." *Id.* at 13–14. The Court's findings regarding the potential for problems with the execution came to fruition on

1

November 17 when the execution failed.  There is no basis to ignore the Eleventh Circuit's decision just because Mr. Smith now has *even more* reasons for relief given that failed execution attempt.

Mr. Smith's Second Amended Complaint (Doc. 71) ("SAC") pleads the same facts to support the same plausible claim—that attempting to execute Mr. Smith by lethal injection would violate his right under the Eighth and Fourteenth Amendments to be free from cruel and unusual punishment.  The Eleventh Circuit's holding is binding under the law-of-the-case doctrine, which provides that "the findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal." *This That & the Other Gift & Tobacco, Inc. v. Cobb County, Ga.*, 439 F.3d 1275, 1283 (11th Cir. 2006) (citation and internal quotation marks omitted).

If that were not sufficient to deny Defendants' motion to dismiss Mr. Smith's Eighth Amendment claim (and it is), that claim, which the Eleventh Circuit held Mr. Smith sufficiently pleaded, is bolstered in the SAC by factual allegations concerning the severe and ongoing physical and psychological pain to which ADOC subjected Mr. Smith during its first attempt to execute him.  This Court previously has found that nearly identical allegations asserted by Alan Eugene Miller—who ADOC also attempted, but failed, to execute by lethal injection—against the same Defendants state a plausible Eighth Amendment claim because "it is plausible to infer that a second attempt to execute Miller by lethal injection will likely expose him, for a second time, to the same extreme pain and suffering over the same period, if not longer, that he says he experienced during the first attempt."  *Miller v. Hamm*, No. 2:22-cv-506, 2022 WL 16720193, at *13–14 (M.D. Ala. Nov. 4, 2022).

Ignoring the Eleventh Circuit's express holding in this case and this Court's decision in *Miller*, Defendants contend that Mr. Smith has not plausibly alleged that a second attempt to

execute him by lethal injection would pose an objectively intolerable risk of harm.  Defendants

rely on a recent Eleventh Circuit decision in a different case, which they say supports that result.

It does not.  And that decision cannot override the Eleventh Circuit's prior holding in this case in

any event—one three-judge panel of the Court "lack[s] authority to overrule or modify [the ruling

of a prior three-judge panel], as the holding of a three-judge panel is the law of the circuit unless

it is overruled (or undermined to the point of abrogation) by the en banc Eleventh Circuit, or by

the Supreme Court of the United States."  *Hazelwood v. Foundation Fin. Grp., LLC*, 551 F.3d

1223, 1227 (11th Cir. 2008).

 Equally without merit is Defendants' now thrice-repeated contention that Mr. Smith has

failed to plead that nitrogen hypoxia is an available alternative method of execution.  That

contention also is precluded by the law of the case doctrine as it previously has been rejected by

the Eleventh Circuit and by this Court in this case.  *See* Doc. 41 at 14 ("We find that nitrogen

hypoxia is an available alternative method for method-of-execution claims."); Doc. 33 at 18 n.4

("nitrogen hypoxia is an available alternative method, even though the State disclosed at oral

argument that it has yet to establish a protocol for carrying out executions via nitrogen hypoxia").

 If Mr. Smith proves his Eighth Amendment Claim he is entitled to declaratory and

injunctive relief preventing Defendants from making a second attempt to execute him by lethal

injection and also monetary damages from Defendants in their individual capacities for their

actions and inactions during Mr. Smith's failed execution, which caused him severe physical and

psychological pain.  Defendants are not protected by qualified immunity because clearly

established law put them on notice that their "deliberate indifference" to Mr. Smith's health and

safety by failing to investigate and remedy their lethal injection process after it failed the

immediate two times before they attempted to execute him and ignoring his pleas about the pain

their efforts were causing him exposed them to potential liability.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Mr. Smith also states a plausible claim for violation of Mr. Smith's Fourteenth Amendment right to equal treatment under the law.  Mr. Smith is one of only three people—along with Doyle Lee Hamm and Mr. Miller—who have survived ADOC's attempt to execute him by lethal injection.  Defendants did not attempt to execute Mr. Hamm by lethal injection again and will not attempt to execute Mr. Miller by lethal injection again.  Mr. Smith should not be treated differently. But although Mr. Smith is "similarly situated" to Mr. Hamm and Mr. Miller, Defendants are "intentionally treat[ing] [him] differently" by seeking to try to execute him by lethal injection again with "no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  This Court found that Mr. Miller stated a plausible "class of one" equal protection claim based on his like allegations "that the Defendants are treating him differently from Doyle Hamm because they are pursuing a second lethal injection execution on Miller even though they did not attempt a second lethal injection execution on Doyle Hamm."  *Miller*, 2022 WL 16720193, at *11.

The remainder of Defendants' motion raises arguments about the relief that Mr. Smith seeks.  Those arguments do not support dismissal because "'[t]he selection of an improper remedy in the Rule 8(a)(3) demand for relief will not be fatal to a party's pleading if the statement of the claim indicates the pleader may be entitled to relief of some other type.'"  *Miller*, 2022 WL 16720193, at *15 (quoting 5 Alan Wright, Arthur Miller, & A. Benjamin Spencer, Fed. Prac. & Proc. § 1255 (4th ed. Apr. 2022 Update)).  Mr. Smith withdraws his request for declaratory and injunctive relief only to the extent it seeks to prohibit Defendants from making a second attempt to execute him by any method without prejudice to his right to seek that relief in another forum.

4

SAC, Prayer for Relief ¶¶ 1.b, 1.d, 2.a, 2.b.  And Mr. Smith withdraws his request for a declaration that Defendants' attempt to execute him on November 17, 2022 violated his Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment.  *Id.*, Prayer for Relief ¶ 1.a.[1]

## FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT

Mr. Smith's claims are based on allegations concerning ADOC's three most recent attempts to execute condemned people by lethal injection, including his own failed execution. ADOC's protocol for executing condemned people by lethal injection (the "Protocol") authorizes only two methods for establishing IV access: the "standard procedure" or, if that is unsuccessful, "a central line procedure."  *Id.* ¶¶ 68–69.  But the botched execution of Joe Nathan James on July 28, 2022, the failed execution of Alan Eugene Miller on September 22, 2022, and the failed execution of Mr. Smith on November 17, 2022 establish that, once an execution begins, ADOC will continue attempting to place IV lines without regard to the Protocol and well beyond the point when it has become gratuitously painful, cruel, and torturous.  *Id.* ¶¶ 14, 70; *see also id.* ¶ 265 ("To subject Mr. Smith to a second execution by lethal injection would subject him to a torturous experience of unnecessary physical and psychological pain, as has been established through Alabama's last three executions.").

### A.    ADOC Subjected Mr. James to Torture, Cruelty, and Severe Pain During One of the Longest Executions in History

"ADOC's lethal injection process subjected Mr. James to at least a three- and one-half hour ordeal, including torture, cruelty, or substantial pain."  *Id.* ¶ 72.  For three hours when the

---

[1] Mr. Smith also withdraws his third claim for relief for violation of this Court's order prohibiting them from using "intramuscular sedation" during their failed attempt to execute him, Doc. 22 at 15, without prejudice to his right to move for sanctions for violation of the order after confirming the details during discovery and without prejudice to his right to submit evidence of Defendants' violation in support of his Eighth Amendment Claim. *Id.* ¶¶ 271–75.

procedure was not open to public observation, Mr. James was strapped to a gurney while ADOC personnel "poked, prodded, and cut him, attempting multiple times to access a vein for intravenous injection of the lethal drug cocktail." *Id.* ¶ 75. In addition, results of an independent autopsy "suggest that Mr. James was administered an intramuscular injection during the three-hour attempt to access a vein," which is not permitted by the Protocol. *Id.* ¶ 83. Indeed, after ADOC placed the IV lines and finally permitted public witnesses to observe the remaining execution process, Mr. James appeared unconscious and nonresponsive even before ADOC administered the lethal drugs. *Id.* ¶¶ 3, 84. Afterwards, "ADOC admitted that it 'cannot confirm' that Mr. James was fully conscious when he was executed." *Id.* ¶ 90. ADOC did not disclose what happened during the three hours when Mr. James could not be observed by public witnesses or initiate any investigation about what happened and why during those three hours before it attempted to execute Mr. Miller two months later. *Id.* ¶¶ 4, 88–89, 92.

### B. ADOC Subjected Mr. Miller to Torture, Cruelty, and Severe Physical and Psychological Pain During Its Failed Attempt to Execute Him

On September 22, 2022, ADOC attempted, but failed, to execute Mr. Miller. By Mr. Miller's account, two unidentified men in medical scrubs with unknown medical credentials repeatedly slapped, poked, prodded, and punctured his arms, hands, and feet for nearly two hours in a futile attempt to set IV lines while ignoring his expressions of "excruciating" pain. *Id.* ¶¶ 5, 93–98. Afterwards, ADOC personnel raised the gurney from a horizontal to a vertical position, leaving Mr. Miller hanging there without explanation. *Id.* ¶ 97. This futile, painful, and cruel process stopped only when the death warrant expired at midnight, although it should have been evident to Mr. Miller's executioners that they would not be able to establish IV lines by either of the authorized methods before then. *Id.* ¶ 99. Even after his execution was "postponed,"

6

Mr. Miller "continued to suffer emotional and physical pain from the trauma of his aborted execution." *Id.* ¶ 100.

C.    **ADOC Subjected Mr. Smith to Torture, Cruelty, and Severe Physical and Psychological Pain During Its Failed Attempt to Execute Him**

ADOC proceeded with Mr. Smith's scheduled execution on November 17 despite Mr. Miller's failed execution and Mr. James' botched execution and without any investigation to determine what happened and why during those executions to reduce the risk of recurrence. *Id.* ¶¶ 4, 6. Shortly before 8 p.m. CST while Mr. Smith's stay application was still pending before the Eleventh Circuit, corrections officers removed Mr. Smith from his holding cell, escorted him to the execution chamber, and strapped him to a gurney. *Id.* ¶¶ 149–59. Mr. Smith remained strapped to the gurney for nearly four hours, including for about two hours after the Eleventh Circuit entered a stay of execution about which he was not informed. *Id.* ¶¶ 145, 161. During that time, ADOC subjected Mr. Smith "to precisely the unnecessary and wanton infliction of pain that the Eighth Amendment was intended to prohibit" and that "he sought to enjoin by filing [his] lawsuit on August 18, 2022." *Id.* ¶ 236.

After Mr. Smith was removed from the holding cell and strapped to the gurney in the execution chamber, he was left alone there with three corrections officers. *Id.* ¶ 162. He believed that all his appeals had been exhausted and consequently readied himself for his anticipated imminent death by "focus[ing] on the glowing cross-shaped lights" in the execution chamber and trying to "maintain his dialogue with God," including by "thank[ing] God for the week he had just had with his family" and singing "I'm not alone" quietly. *Id.* ¶¶ 161–65. It was important to Mr. Smith to maintain his composure for his family and other witnesses and to express his final words. *Id.* ¶¶ 165, 187. But as time went on without action, without his witnesses arriving, and without explanation, Mr. Smith became increasingly "hopeless[]," "distressed" and "fear[ful] that

his witnesses would not make it in time." *Id.* ¶ 169.  Mr. Smith lay strapped to the gurney in that condition and as "he felt as though his circulation was being cut off" for more than two hours without explanation about what was happening.  *Id.* ¶ 166.

Beginning after 10 p.m. CST, as with Mr. James and Mr. Miller, three unidentified ADOC personnel with unknown medical credentials entered the execution chamber and poked, prodded, and jabbed Mr. Smith's arms, hands, and feet in a failed attempt to set IV lines by the standard procedure as three other unidentified people and the three corrections officers watched inside the execution chamber.  *Id.* ¶¶ 157, 179–89.  Then, without explanation to Mr. Smith, the IV team asked the corrections officers to adjust the gurney so that Mr. Smith's head was suspended below his feet in "an inverse crucifixion position" and attempted a central line procedure involving injection of an unknown substance and numerous attempts to insert a large needle under Mr. Smith's collarbone to access a central vein.  *Id.* ¶¶ 11, 190–213.  When the IV team injected him, Mr. Smith was "terrified" that he was being sedated as "he had heard" Mr. James had been, causing him "great emotional distress because it was important to him that he be composed and focused for his family and witnesses when they saw him for the last time." *Id.* ¶ 200.  The Protocol does not authorize ADOC to administer an injection to place IV lines and doing so "violated both ADOC's commitment to the Court and the Court's order—on penalty of sanctions—that the State not inject Mr. Smith with a sedative and/or anesthetic." *Id.* ¶ 203; *see also id.* ¶¶ 53–67.

ADOC's attempts to use a central line procedure to obtain IV access caused Mr. Smith to "writh[e] and shak[e] uncontrollably" because the "pain was so intense that he could hardly breathe and was sweating . . . profusely from the torture. . . ." *Id.* ¶¶ 209–10; *see also id.* ¶ 208 ("He was in such physical pain that he had difficulty breathing and his voice weakened.").  "For Mr. Smith, the needle jabs seemed like an eternity." *Id.* ¶ 210.  Throughout ADOC's failed attempt to set IV

8

lines, the IV team, the three other unidentified people observing those efforts, and the corrections officers in the execution chamber ignored Mr. Smith's expressions of pain and his pleas to contact his counsel or this Court. *Id.* ¶¶ 180, 202, 209, 237. "The IV team's deeply inept efforts to establish a central line were prolonged and continued well past the point at which it should have been apparent that it would not be successful." *Id.* at ¶ 211. ADOC ceased its efforts only when the warrant expired at midnight, but not before causing Mr. Smith severe and lingering physical and psychological pain.

"The botched execution was terrifying and extremely painful for Mr. Smith." *Id.* ¶ 263. After his ordeal concluded around midnight and Mr. Smith was released from the gurney restraints, he was hyperventilating and unable to lift his arms, sit up, stand, walk, undress or dress without assistance from corrections officers. *Id.* ¶¶ 224–30. Since his failed execution, Mr. Smith continues to experience physical and psychological pain, including lingering pain in his arm, near his collarbone, back spasms, and difficulty sleeping, and post-traumatic stress disorder. *Id.* ¶¶ 234–36; *see also id.* ¶ 238 ("Mr. Smith now lives with psychological trauma that the human brain is not able to process, causing him great distress.").

### D.   Mr. Smith's Claims

Mr. Smith asserts two claims for violation of his constitutional rights under 42 U.S.C. § 1983. First, Mr. Smith asserts a claim for violation of his Eighth and Fourteenth Amendment right to be free from cruel and unusual punishment against all Defendants in their official and individual capacities ("Eighth Amendment Claim"). *Id.* ¶¶ 252–66. Against Defendants in their official capacities, he seeks a declaration that a second attempt to execute him by lethal injection would violate his right to be free from cruel and unusual punishment and preliminary and permanent injunctive relief prohibiting Defendants from doing so. *Id.*, Prayer for Relief ¶¶ 1.b,

1.d.  He also seeks compensatory and punitive damages against Defendants in their individual capacities for their intentional infliction of pain and their deliberate indifference to his suffering during their failed attempt to execute him in November.  *Id.*, Prayer for Relief ¶ 1.c.

Second, Mr. Smith asserts a claim for violation of his Fourteenth Amendment right to equal protection of the laws against Defendants Hamm, Raybon, and Marshall in their official capacities ("Fourteenth Amendment Claim").  *Id.* ¶¶ 267–70.  He seeks a declaration that a second attempt to execute him by lethal injection would violate his right to equal protection and preliminary and permanent injunctive relief prohibiting Defendants from doing so.  *Id.*, Prayer for Relief ¶ 2.[2]

## LEGAL STANDARD

The standard governing a motion to dismiss under Rule 12(b)(6) is well-settled.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Miller*, 2022 WL 16720193, at *1 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*, 556 U.S. at 678.  Making that determination is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Miller*, 2022 WL at 16720193, at *2 (quoting *Ashcroft*, 556 U.S. at 679).  In doing so, "the court must accept well-pled facts as true, but the court is not required to accept a plaintiff's legal conclusions."  *Id.* at *1.

---

[2]As noted above, Mr. Smith withdraws his third claim for violation of this Court's order and withdraws his demand for certain relief.

ARGUMENT

## I.   MR. SMITH STATES A PLAUSIBLE EIGHTH AMENDMENT CLAIM

The Eleventh Circuit already has held that the facts alleged in Mr. Smith's first amended complaint, which also are alleged in the SAC, state a plausible Eighth Amendment Claim.  Doc. 41 at 10, 15.  In doing so, the Eleventh Circuit found both that Mr. Smith had plausibly (and, as it turned out, presciently) alleged that executing him by lethal injection would pose an objectively intolerable risk of serious harm and that nitrogen hypoxia is an alternative and available execution method that would significantly reduce that risk.  *Id.* at 14–15.  The Eleventh Circuit's decision is binding as law of the case.

### A.   Mr. Smith Plausibly Alleges that a Second Attempt to Execute Him by Lethal Injection Would Pose an Objectively Intolerable Risk of Harm.

"To state a plausible claim for relief under the Eighth Amendment, Smith must plead 'a substantial risk of serious harm, an objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment.'"  Doc. 41 at 10 (quoting *Baze v. Rees*, 553 U.S. 35, 50 (2008)); *see also Nance v. Ward*, 142 S. Ct. 2214, 2220 (2022) (holding that the first element that a plaintiff asserting a method of-execution claim must plead is "that the State's method of execution presents a 'substantial risk of serious harm'—severe pain over and above death itself" (quoting *Glossip v. Gross*, 576 U.S. 863, 877 (2015)).  In the SAC, Mr. Smith plausibly alleges that element as the Eleventh Circuit held and this Court held based on similar factual allegations in *Miller*.

#### 1.   The Eleventh Circuit's Holding that Mr. Smith Plausibly Alleged that His Execution by Lethal Injection Would Pose an Intolerable Risk of Serious Harm is Law of the Case.

"Under the 'law of the case' doctrine, the findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial

11

court or on a later appeal." *This That & the Other Gift & Tobacco*, 439 F.3d at 1283 (citation and internal quotation marks omitted); *see also AcryliCon USA, LLC v. Silikal GmbH & Co.*, 46 F.4th 1317, 1326 (11th Cir. 2022) ("'subsequent courts are bound by any findings of fact or conclusions of law made by the court of appeals in a prior appeal of the same case'" (citation omitted)).  This doctrine "has its greatest force when a case is on remand to the district court," which "must implement both the letter and the spirit of the mandate taking into account the appellate court's opinion and the circumstances it embraces." *CSX Transp., Inc. v. Ala. Dep't of Rev.*, 888 F.3d 1163, 1174 (11th Cir. 2018) (citations and internal quotation marks omitted).  Under the law of the case doctrine, the Eleventh Circuit's decision finding that Mr. Smith plausibly alleged that his execution by lethal injection would pose an objectively intolerable risk of harm to him is binding in this case.

In reaching that conclusion, the Eleventh Circuit summarized Mr. Smith's allegations about Mr. James' botched execution and Mr. Miller's failed execution and concluded that those "factual allegations show a pattern of difficulty by ADOC in achieving IV access with prolonged attempts." Doc. 41 at 11–12.  Next, the Court summarized Mr. Smith's factual allegations about the general risks, including that "extreme anxiety caused by an impending execution" can cause the condemned person's "blood vessels to constrict, making them harder to locate for IV access" and the likelihood that ADOC's execution team is inexperienced in placing IVs. *Id.* at 12–13.  The Court also considered the risks specific to Mr. Smith, including that his "height and weight corresponds to a BMI that is borderline obese" and  that the "'risks [for] a failed intravenous attempt [of Mr. Smith] are very likely quite similar in circumstance to the recent failed attempt at IV access of' Miller." *Id.* at 13 (citation omitted).  Based on those allegations, the Court held that Mr. "Smith plausibly alleged that there will be extreme difficulty in accessing his veins" and

"plausibly pleaded that, considering ADOC's inability to establish difficult IVs swiftly and successfully in the past, he will face superadded pain as the execution team attempts to gain IV access." *Id.* at 14.

The SAC contains the same allegations about Mr. James' botched execution and Mr. Miller's failed execution that the Eleventh Circuit considered in finding ADOC's "pattern of difficulty . . . in achieving IV access." *Id.* at 12; SAC ¶¶ 71–103 (describing Mr. James' botched execution and Mr. Miller's failed execution). And the SAC includes allegations about Mr. Smith's own failed execution, *id.* ¶¶ 130–238, which puts him "in a rare position of having proof that an execution by lethal injection caused him severe pain," *id.* ¶ 264, supporting a plausible inference that he faces an objectively intolerable risk that the same thing will happen if ADOC is permitted to try to execute him by lethal injection again. Accordingly, the Court is bound by the Eleventh Circuit's finding as law of the case that Mr. Smith's factual allegations plausibly plead that "he will face superadded pain as the execution team attempts to gain IV access." Doc. 41 at 14.

### 2. This Court Has Held that Analogous Allegations to Those in the SAC State a Plausible Eighth Amendment Claim.

In addition to the allegations that the Eleventh Circuit found sufficient to state an Eighth Amendment Claim, the SAC includes allegations that Defendants' first failed attempt to execute Mr. Smith caused him severe and ongoing physical and psychological distress. SAC ¶¶ 208–10, 224–30, 234–36, 238, 263. And Mr. Smith alleges that Defendants attempted to execute him after failing to investigate what happened during Mr. James' botched execution and Mr. Miller's failed execution to avoid a recurrence. *Id.* ¶¶ 4, 6.

Considering Mr. Miller's similar allegations after ADOC's failed attempt to execute him, this Court held that Mr. Miller stated a plausible claim for violation of his Eighth Amendment right to be free from cruel and unusual punishment. Like Mr. Smith, Mr. Miller alleged "that he was

painfully punctured with needles over various parts of his body for approximately 90 minutes during the first execution attempt," which caused "extreme physical pain as well as psychological pain . . . ." *Id.* Like Mr. Smith, Mr. Miller further alleged "that he continues to have pain in his arms as well as psychological and emotional pain from the failed execution attempt, including disturbed sleep and intrusive thoughts, compounding the pain he says he experienced during the execution attempt itself." *Id.*

Based on Mr. Miller's allegations, this Court found that "it is plausible to infer that a second attempt to execute Miller by lethal injection will likely expose him, for a second time, to the same extreme pain and suffering over the same period, if not longer, that he says he experienced during the first attempt" given that "Defendants are pursuing a lethal injection execution that has already failed on Miller and caused him extreme pain and suffering, allegedly 'without having undertaken any review of what went wrong in his case, or how to avoid such gratuitous pain and suffering in his second execution.'" *Id.* (citation omitted). The Court concluded that, "[a]ccepting his allegations as true, Miller has adequately demonstrated that exposing him to a second lethal injection execution poses 'an objectively intolerable risk of harm.'" *Id.* at *14 (quoting *Glossip*, 576 U.S. at 877). The Court should reach the same conclusion based on Mr. Smith's virtually identical allegations to the allegations made by Mr. Miller.

The "top-to-bottom review of ADOC's execution process," that ADOC is reportedly undertaking at the request of the Governor does not alter the analysis. SAC ¶ 16. In fact, it emphasizes that there were problems with ADOC's implementation of its Protocol and is an admission that Mr. Smith's claims had and continue to have validity. Just last Friday, ADOC announced it had completed that review. *See* Franklin, *Alabama to resume executions following procedure review*, News 3 (Feb. 25, 2023), https://www.wrbl.com/news/alabama-to-resume-

executions-following-procedure-review/.  Eschewing the request of 170 Alabama clergy, the review was *not* "a comprehensive, independent, and external review of Alabama's death penalty procedures" and does *not* reflect "transparency, accountability, and humility."  Letter to Governor Ivey, dated February 7, 2023, https://www.scribd.com/document/624339382/Clergy-Letter-to-Governor-Ivey#:~:text=February%207%2C%202023%20Dear%20Governor%20Ivey%3A%20We%20know,we%20are%20writing%20to%20you%20about%20our%20urgent.  And the planned changes to ADOC's execution procedures do not inspire confidence that they will reduce the intolerable risk to Mr. Smith from a second attempt to execute him by lethal injection.

According to a letter from Commissioner Hamm to Governor Ivey, ADOC "has decided to add to its pool of available medical personnel for executions" but it has yet to do so, and "has ordered and obtained new equipment that is now available for use in future executions."  Franklin, *Alabama to resume executions following procedure review*, *supra*.[3]  Aside from those unidentified and yet to be retained medical personnel and unspecified new equipment, the only concrete change to Alabama's execution process is an amendment to the Alabama Rules of Appellate Procedure to authorize the Governor to set time frames for executions.  *See* Order (Ala. S. Ct. Jan. 13, 2023), https://judicial.alabama.gov/docs/rules/Rule_8(d)(1),Ala.R.App.P.Order.pdf.       The   Governor

---

[3] In contrast to Commissioner Hamm's two-page letter to the Governor announcing the completion of ADOC's review, the independent commission established after Oklahoma botched executions and imposed a moratorium to review its death penalty procedures issued an approximately 270-page comprehensive report on its findings and recommendations. *See* The Report of the Oklahoma Death Penalty Review Commission (April 2017), https://s3.amazonaws.com/content.newsok.com/documents/Report%20of%20the%20OK%20Death%20Penalty%20Review%20Comm'n_April%202017.pdf.  And a similar independent review of Tennessee's lethal injection death penalty procedures produced a more than 40-page report of findings and recommendations. *See* Tennessee Lethal Injection Protocol Investigation Report and Findings (Dec. 13, 2022), https://app.box.com/s/cxeblwhscz6a8mbngp6cylwbcsz2c7jx/file/1102145253665.

requested that the Alabama Supreme Court make that change to alleviate a purported "time crunch" caused by ADOC regulations that currently require executions to begin at 6 p.m. CT and the Alabama Supreme Court's previous practice of issuing single-day death warrants that expired at midnight. *See* Hyrnkiw, *Could Alabama model its execution laws after states that don't have executions?*, Al.com, Dec. 20, 2022, https://www.al.com/news/2022/12/could-alabama-model-its-execution-laws-after-states-that-don't-have-executions.html. The Governor can now ensure that ADOC has an indefinite time to conduct executions.

Additional time will not solve the problem that has plagued ADOC in Mr. James' botched execution and the failed executions of Mr. Miller and Mr. Smith. As Mr. Smith alleges, "[i]t should not . . . take[] anywhere near three hours for the IV team to either establish IV access by the procedures allowed by the Protocol or to determine that neither was achievable." *Id.* ¶ 77.[4] Since ADOC's botched execution of Mr. James on July 28, 2022, six (6) states have executed seventeen (17) condemned people by lethal injection. *See* Death Penalty Information Center, Execution Database, https://deathpenaltyinfo.org/executions/execution-database?year=2022&year=2023. There have been no reports that any of those executions

---

[4] Other states' lethal injection protocols confirm that it should not take long to establish IV lines. *See*, *e.g.*, KAR 16:330 § 2(13) (effective July 2018), https://files.deathpenaltyinfo.org/legacy/files/pdf/Kentucky%20LI%20Protocol%20effective%207:2018.pdf ("If the IV team cannot secure two (2) IV catheters within a reasonable time, not to exceed two (2) hours, the Commissioner shall notify the Governor's Office that the execution has been suspended until a new execution order is received."); Louisiana Department of Public Safety and Corrections, Regulation No. C-03-001 Attachment E § 3.J.2 (Effective March 12, 2014), https://files.deathpenaltyinfo.org/documents/2014.03.14.LA.protocol.pdf ("If the IV Team cannot secure one or more sites within one hour, the Governor's Office shall be contacted by the Secretary and a request shall be made that the execution be scheduled for a later date."); Oklahoma Department of Corrections, Execution Procedures OP-040301 § VII.F.6.h (Effective Feb. 20, 2020), https://files.deathpenaltyinfo.org/documents/Oklahoma-Protocol-2-20-2020-OP-040301.pdf ("After one hour of unsuccessful IV attempts, the agency director shall contact the governor or designee to advise of the status and potentially request a postponement of the execution.").

lingered for hours, much less to establish IV access in the condemned person.  Contrary to ADOC's repeated public statements, its problem is not that it lacks sufficient time to place IVs.  The problem lies elsewhere in its Protocol or the personnel charged with implementing it.  If ADOC could not place IV lines in Mr. Smith in more than one hour when it attempted to execute him in November, there is no reason to believe that ADOC will have greater success with more time during a second attempt—a conclusion made all the more true by the botched and failed executions of Mr. James and Mr. Miller that preceded ADOC's attempt to execute Mr. Smith.  *See Miller*, 2022 WL 16720193, at *14 ("it is plausible to infer that a second attempt to execute [Mr. Miller] by lethal injection will likely expose him to the same severe pain over the same period, if not longer").

> **3.** **There is No Basis to Disregard the Eleventh Circuit's Decision in this Case and this Court's Decision in *Miller*.**

Ignoring the Eleventh Circuit's decision in this case and this Court's decision in *Miller*, Defendants contend that the Court should dismiss Mr. Smith's Eighth Amendment Claim because "[a]llegations of pain related to difficulty achieving intravenous access do not amount to cruel and unusual punishment."  Defs. Mot. 23 (citing *Nance v. Comm'r, Ga. Dep't of Corrs.*, ___ F.4th ___, No. 20-11393, 2023 WL 1111207 (11th Cir. Jan. 30, 2023)).  Plaintiff's reliance on *Nance* is misplaced.

As an initial matter, *Nance* does not purport to overrule the Eleventh Circuit's decision in this case.  Nor could it.  The *Nance* panel "lack[ed] authority to overrule or modify [the Eleventh Circuit's prior holding in this case], as the holding of a three-judge panel is the law of the circuit unless it is overruled (or undermined to the point of abrogation) by the en banc Eleventh Circuit, or by the Supreme Court of the United States."  *Hazelwood v. Foundation Fin. Grp., LLC*, 551 F.3d 1223, 1227 (11th Cir. 2008); *see also United States v. Moore*, 22 F.4th 1258, 1267 (11th Cir. 2022) ("Under our prior precedent rule, [the Court's prior holding] binds us unless it is overruled

17

or undermined to the point of abrogation by this Court sitting en banc or by the Supreme Court."). For that basis alone, the Court should reject Defendants' reliance on *Nance*.

In any event, *Nance* is distinguishable on its facts.  In *Nance*, the Eleventh Circuit held that a condemned prisoner stated "a plausible claim for relief" based on his allegation that his medicine "has made his brain less receptive to pentobarbital, the drug Georgia uses in lethal injections." 2023 WL 1111207, at *5.  As to a separate method-of-execution claim, the Court found that "Nance plausibly alleged that the lethal drug could not be successfully administered through a standard intravenous catheter due to his weak veins" and that attempting to do so "would subject him to a substantial risk of harm," requiring the State to use an alternative procedure to establish IV access.  *Id.* at *6.  The Court nevertheless found that "Nance's allegations based on his vein condition did not state a claim for relief because he has not plausibly alleged that both of the identified alternative lethal injection procedures would be constitutionally impermissible."  *Id.* Specifically, the Court held that the plaintiff's allegation that central line cannulation "is an unacceptable alternative procedure was deficient" because "[a]lthough Nance asserted that cannulation is a painful and complicated procedure, *he did not assert any facts supporting that allegation*," but he was "still at liberty to amend his complaint."  *Id.* (emphasis added).  Finally, independent of the plaintiff's allegations about the procedures authorized by Georgia law to access a vein, the Court held that the mere allegation "that state technicians would subject him to an unconstitutional level of pain by repeatedly pricking him with a needle" was insufficient by itself to state a claim.  *Id.*

The Eleventh Circuit's holding in *Nance* does not control the outcome here—even setting aside the separate, controlling decision from the Eleventh Circuit in this case—because Mr. Smith alleges facts materially different from those alleged in *Nance*.  First, there was no allegation in

*Nance* like Mr. Smith's "factual allegations" that the Eleventh Circuit found "show a pattern of difficulty by ADOC in achieving IV access with prolonged attempts." Doc. 41 at 11–12; *see also Chavez v. Florida SP Warden*, 742 F.3d 1267, 1276 (11th Cir. 2014) (Wilson, J., concurring) (affirming denial of method-of-execution challenge, but noting that "in the event of a botched execution in this or a future case, such evidence may be relevant in a subsequent Eighth Amendment challenge to Florida's execution practices"). Thus, unlike *Nance* where the Eleventh Circuit found that the plaintiff failed to allege facts to support his claims that an alternative procedure for obtaining IV access would be painful, Mr. Smith alleged facts about Mr. James' botched execution and Mr. Miller's failed execution that support his allegation that he will face an objectively intolerable risk of harm.

Second, there was no allegation in *Nance* that Georgia already had attempted, but failed, to execute *the plaintiff*, causing severe and continuing physical and psychological distress. Here, as in *Miller*, "[t]he cruel and unusual punishment is Defendants subjecting [Mr. Smith] to the same traumatic and painful experience *for a second time*." *Miller*, 2022 WL 16720193, at *13 (citation and internal quotation marks omitted, emphasis in original). Thus, unlike *Nance*, Mr. Smith alleged facts about *his* failed execution, including specific facts about the "severe pain" and "psychological trauma" caused by ADOC's attempted central line procedure. SAC ¶¶ 200, 238; *see also id.* ¶ 207 ("Mr. Smith felt like he was being stabbed in the chest"); *id.* ¶ 208 ("He was in such physical pain that he had difficulty breathing and his voice weakened.").

Third, as in *Miller*, and unlike *Nance*, Mr. Smith's allegations are not limited to physical pain from needle pricks. Like Mr. Miller, Mr. Smith alleges that ADOC's failed attempt to execute him "caused him severe physical and psychological pain." *Miller*, 2022 WL 16720193, at *12. In Mr. Smith's case that included ADOC's attempt to use a central line procedure performed by an

unidentified person in a surgical gown and with a surgical drape placed over Mr. Smith that caused him to "writh[e] and shak[e] uncontrollably" and "pain . . . so intense that he could hardly breathe" and caused him to "sweat[] . . . profusely."  SAC ¶¶ 209–10.  After his four-hour ordeal, Mr. Smith was unable to move his limbs, walk, or dress and undress himself without assistance.  *Id.* ¶¶ 224–30.  And Defendants discount entirely the emotional distress and "psychological trauma" that Mr. Smith alleges he suffered and continues to suffer from ADOC's failed attempt to execute him.  *Id.* ¶ 17 ("Defendants subjected [Mr. Smith] to hours of torture while trying to execute him and exposed him to the severe mental anguish of a mock execution."); *see also id.* ¶¶ 234–38; *In re Ohio Execution Protocol Litig.*, No. 2:11-cv-1016, 2017 WL 2964901, at *22 (S.D. Ohio July 12, 2017) ("It is certainly possible to imagine a painless but lingering death" that "would . . . violate the Eighth Amendment.").

> **B.    The Eleventh Circuit's Holding that Mr. Smith Plausibly Alleged that Nitrogen Hypoxia is an Available Alternative Method of Execution is Law of the Case.**

Mr. Smith's Eighth Amendment Claim also requires him to plead that there is "a feasible and readily implemented alternative method of execution that would significantly reduce a substantial risk of severe pain . . . ."  *Bucklew v. Precythe*, 139 S. Ct. 1112, 1125 (2019) (citations omitted).  To satisfy that element, Mr. Smith alleges that "nitrogen hypoxia is an available and feasible alternative method of execution" that "would eliminate the need to establish intravenous access, . . . and, therefore, would eliminate the intolerable risk" that Mr. Smith faces from lethal injection.  SAC ¶¶ 250–51.  Based on those allegations, the Eleventh Circuit found "that Smith plausibly pleads that there is an available alternative method that will reduce the risk of severe pain."  Doc. 41 at 14.  The Court relied on its previous holding that "Alabama's statutorily authorized method of execution (nitrogen hypoxia) could not be considered unavailable simply

because no mechanism to implement the procedure had been finalized." *Id.* (citing *Price v. Comm'r, Dep't of Corrs.*, 920 F.3d 1317, 1328 (11th Cir. 2019) (per curiam)).

Defendants rehash their argument that *Price* is dicta that "cannot be squared" with Supreme Court authority.  Defs' Mot. at 25.  But that argument is foreclosed by the Eleventh Circuit's rejection of it *in this case*: "[T]he Commissioner continues to argue that Smith failed to provide an alternative method.  The Commissioner completely misses our point from *Price*." *Id.*; *see also* Doc. 33 at 18 n.4 ("nitrogen hypoxia is an available alternative method, even though the State disclosed at oral argument that it has yet to establish a protocol for carrying out executions via nitrogen hypoxia"); *Miller*, 2022 WL16720193, at *15 ("because the State of Alabama has statutorily adopted nitrogen hypoxia as an official method of execution, Miller has satisfied his burden to demonstrate that nitrogen hypoxia is feasible and readily implemented").  The Eleventh Circuit's holding is law of the case.

That Defendants have a petition for certiorari pending in the Supreme Court does not mandate a different result for two reasons.[5]  First, "[u]ntil the Supreme Court issues a decision that actually changes the law, [courts in the Eleventh Circuit] are duty-bound to follow [the Eleventh Circuit's] precedent." *Gissendaner v. Comm'r, Ga. Dep't of Corrs.*, 779 F.3d 1275, 1284 (11th Cir. 2015).  In alleging that nitrogen hypoxia is an alternative and available alternative method of execution, Mr. Smith relied on indisputably governing Eleventh Circuit law.  Even if the Supreme Court grants certiorari and reverses (which it should not), Mr. Smith would seek, and should be entitled, to amend his complaint to include allegations consistent with any such Supreme Court decision.  *See*, *e.g.*, *King v. Volunteers of Am., North Ala., Inc.*, 502 F. App'x 823, 826 (11th Cir.

---

[5] The Supreme Court did not consider Defendants' petition at its February 24 conference.  *See* Defs. Mot. 7.  The Court is now scheduled to consider the petition at its March 3 conference.

2012) (noting that the "district court granted [plaintiff's] request" "to amend her complaint to reflect changes in the law"); *Arthrex, Inc. v. Parcus Med., LLC*, No. 2:11-cv-694, 2012 WL 12903892, at *2 (N.D. Fla. Aug. 21, 2012) (granting motion to amend complaint "due to a change in the law regarding the pleading requirements to plead an indirect infringement of a patent"); *U.S. Secs. & Exchange Comm'n v. Big Apple Consulting USA, Inc.*, No. 6:09-cv-1963, 2011 WL 13143143, at *5 (M.D. Fla. Dec. 29, 2011) (granting motion to amend where a Supreme Court decision "constituted an intervening change in law").

Second, Commissioner Hamm recently stated that ADOC is "'close'" to finalizing its nitrogen hypoxia protocol and that it "'should be' finished by the end of the year.'" Chandler, *Alabama 'close' to finishing nitrogen execution protocol*, AP News (Feb. 15, 2023), https://apnews.com/article/crime-alabama-5818261f3209a332bb4badf280960ca1. Given Commissioner Hamm's representation, any "incidental delay" while ADOC finalizes the protocol does not render nitrogen hypoxia unavailable. *See Nance*, 142 S. Ct. at 2223 (condemned person can allege available alternative that "necessitates a change in state law" even though "amending a state statute may require some more time and effort than changing an agency protocol").

### C. Mr. Smith Plausibly Alleges that He is Entitled to Monetary Damages from Defendants in Their Individual Capacities.

In addition to declaratory and injunctive relief against Defendants in their official capacities, Mr. Smith's Eighth Amendment Claim seeks monetary damages against Defendants in their individual capacities for injuries caused by their violation of his constitutional rights during his failed execution. SAC, Prayer for Relief ¶ 1.c. Defendants do not dispute that Mr. Smith would be entitled to declaratory and injunctive relief if he prevails on his Eighth Amendment Claim. However, they contend that they are shielded from liability for monetary damages by qualified immunity. The Court should reject Defendants' contention. But even if accepted,

Defendants' contention does not compel dismissal of Mr. Smith's Eighth Amendment Claim because "'[t]he selection of an improper remedy in the Rule 8(a)(3) demand for relief will not be fatal to a party's pleading if the statement of the claim indicates the pleader may be entitled to relief of some other type.'" *Miller*, 2022 WL 16720193, at *15 (citation omitted); *see also Zurich Am. Ins. Co. v. Southern Owners Ins. Co.*, No. 3:15-cv-01041, 2018 WL 1071939, at *3 (M.D. Fla. Feb. 26, 2018) ("a well-pleaded claim ought not be dismissed because a party misconceives the appropriate remedy").

Under the qualified immunity doctrine, "[d]espite their participation in . . . constitutionally impermissible conduct, [government officials] may nevertheless be shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.*

It is clearly established that the Eighth Amendment right to be free from cruel and unusual punishments protects against "the unnecessary and wanton infliction of pain." *Id.* at 737 (citations, internal quotation marks, and alterations omitted); *see also Estelle v. Gamble*, 427 U.S. 97, 102 (1976) (same). The test for determining whether a punishment inflicted on a prison inmate satisfies that standard also is clearly established: whether the prison official(s) alleged to have inflicted the harm "acted with 'deliberate indifference' to the inmates' health or safety." *Id.* at 738. To establish "deliberate indifference," an inmate must allege and ultimately prove that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts

from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Defendants were on notice that their conduct satisfied that standard and exposed them to potential liability for their actions and inactions during their failed attempt to execute Mr. Smith, resulting in severe physical and psychological distress. Defendants did nothing to investigate and remedy the situation when their actions led to the same result twice before they attempted to execute Mr. Smith. Defendants ignored Mr. Smith's pleas about the pain their actions were causing. And this Court's decision denying the same Defendants' motion to dismiss in *Miller* put them on notice that their actions and inactions could result in liability. As Mr. Smith alleges: "In proceeding with their attempt to execute Mr. Smith despite their knowledge from past experience with Mr. James and Mr. Miller that they would have difficulty establishing intravenous access, well past the time that it was obvious that they could not establish two intravenous lines in Mr. Smith, and ignoring Mr. Smith's expressions of severe physical pain and emotional anguish, Defendants acted with deliberate indifference to Mr. Smith's constitutional rights." SAC ¶ 237; *see also id.* ¶ 263 ("With deliberate indifference to Mr. Smith's constitutional rights, Defendants undertook repeated attempts to establish veinous access despite their knowledge of their own difficulty establishing IV access and a more humane alternative of nitrogen hypoxia."); *id.*, Prayer for Relief ¶ 1.c (seeking "[a]n award of compensatory and punitive damages against all Defendants for their intentional infliction of pain and their deliberate indifference to Mr. Smith's suffering as a result of his botched lethal injection execution").

Defendants contend that "[t]he allegations in the Second Amended Complaint amount to an 'isolated mishap' that cannot constitute a constitutional violation." Defs. Mot. 17 (citing *Baze*, 553 U.S. at 50; *State of La. ex rel. Francis v. Resweber*, 329 U.S. 459, 463–64 (1947) (plurality

op.)).  But that is not a fair characterization of the SAC.  Far from an "isolated mishap," the SAC alleges that ADOC has botched three consecutive executions in four months for the same reason—its inability to establish IV access without gratuitous pain, cruelty, and torture—without any investigation after the first two into what happened and why in an effort to prevent a recurrence. It is as if in *Resweber*, the State did nothing to investigate and fix the "mechanical malfunction [that] interfered with the first [execution] attempt," *Baze*, 553 U.S. at 50, and then the same mechanical malfunction interfered with the next two executions.  The third failed execution is not an "isolated mishap" or an "'accident with no suggestion of malevolence'" at issue in *Resweber*. *Id.* (quoting *Resweber*, 329 U.S. at 463).  It is instead, "'a series of abortive attempts,'" which "demonstrate[s] an 'objectively intolerable risk of harm' that officials may not ignore." *Id.* (quoting *Resweber*, 329 U.S. at 471 (Frankfurter, J., concurring); *Farmer*, 511 U.S. at 846).

Equally without merit is Defendants' contention that "it is undisputed that '[t]here [was] no purpose to inflict unnecessary pain' on" Mr. Smith."  Defs. Mot. 18 (quoting *Resweber*, 329 U.S. at 464.  To the contrary, as noted above, the SAC alleges that Defendants acted with *deliberate indifference* to Mr. Smith's constitutional rights. That Defendants "'made their best efforts,'" Defs. Mot. 17 (quoting SAC ¶ 261), although "deeply inept," SAC ¶ 211, does not change that; it merely supports the plausible inference that Defendants will fare no better in a second attempt to execute Mr. Smith.

## II.  MR. SMITH STATES A PLAUSIBLE FOURTEENTH AMENDMENT CLAIM

In his second claim for relief, Mr. Smith alleges that Defendants are intentionally treating him differently from Doyle Hamm in violation of Mr. Smith's right to equal protection under the Fourteenth Amendment.  SAC ¶¶ 268–69.  ADOC tried, but failed, to execute Mr. Hamm by lethal injection in 2018 and did not attempt to execute him by lethal injection (or any other means) again.

*Id.* at ¶¶ 268, 244–48.  Similarly, just two months ago, Defendants settled Mr. Miller's litigation after ADOC attempted, but failed, to execute him by lethal injection, by "agree[ing] that any future effort to execute [his] sentence of death can only be by means of nitrogen hypoxia"—*i.e.*, that Defendants will not attempt to execute him by lethal injection again.  *Miller v. Hamm*, No. 2:22-cv-506, Doc. 124 at ¶ 3 (M.D. Ala. Nov. 28, 2022).  To Mr. Smith's knowledge, Mr. Hamm and Mr. Miller are the only other condemned people who survived ADOC's attempt to execute them by lethal injection.  ADOC intends to subject Mr. Smith to a second attempted execution by lethal injection even though it did not subject Mr. Hamm and will not subject Mr. Miller to one.

The Supreme Court has recognized "that an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that [he] has been irrationally singled out as a so-called 'class of one.'"  *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601 (2007).  That is because "[w]hen those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference."  *Id.* at 602.  Thus, "[a] plaintiff may successfully allege a violation of his equal protection rights as a 'class of one' by showing 'that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'"  *Miller v. Hamm*, No. 2:22-cv-506, 2022 WL 4348724, at *16 (M.D. Ala. Sept. 19, 2022) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)), *vacated on other grounds*, 143 S. Ct. 50 (2022).

Applying those principles, this Court held that Mr. Miller stated a plausible equal protection claim after ADOC's failed attempt to execute him based on his contention "that the Defendants are treating him differently from Doyle Hamm because they are pursuing a second lethal injection execution on Miller even though they did not attempt a second lethal injection

execution on Doyle Hamm." *Miller*, 2022 WL 16720193, at *11.  Mr. Smith's Equal Protection Claim is virtually identical to Mr. Miller's, and the Court should reach the same result here as it did in Mr. Miller's case.

Mr. Smith has plausibly alleged both elements of his Equal Protection Claim.  Thus, Mr. Smith is "similarly situated to" Mr. Hamm and Mr. Miller "in all legally relevant respects." *Miller*, 2022 WL 4348724, at *16.  ADOC attempted, but failed, to execute each of Mr. Hamm, Mr. Miller, and Mr. Smith (and no others) by lethal injection, causing them each severe physical and emotional distress.  Yet Mr. Smith is the only one of that exclusive class who ADOC intentionally intends to subject to a second attempt at execution by lethal injection.

Defendant contends that Mr. Smith is not similarly situated to Mr. Hamm because Mr. Hamm "'was a cancer patient and had a prior history of intravenous drug use, which compromised the ability to access his veins." Defs. Mot. 19 (quoting SAC ¶ 19).  But a comparator is "similarly situated" if he and Mr. Smith are "'prima facie identical in all *relevant* respects.'" *Grider v. City of Auburn*, 618 F.3d 1240, 1264 (11th Cir. 2010) (citation omitted, emphasis added); *see also Disser v. City of Tampa*, No. 8:13-cv-885, 2013 WL 3975759, at *10 (M.D. Fla. July 31, 2013) ("A valid comparator must be similarly situated with respect to all factors that an objectively reasonable governmental decision maker would have found *relevant* in making the challenged decision." (emphasis added)); *Criswell v. City of Naples*, No. 2:19-cv-305, 2020 WL 2745818, at *3 (M.D. Fla. May 27, 2020) ("While Plaintiffs did not detail all the ways [the comparators] are identical, at this stage of the proceedings, the allegation of 19 comparators is plausible and therefore sufficient to state a claim.").  While Mr. Hamm's medical condition and prior drug use explain why ADOC was unable to access his veins, it does not explain why ADOC spared him a second execution by lethal injection.  And, significantly, there is no allegation that Mr. Miller is a

cancer patient or has a history of IV drug use that would explain why ADOC will spare him a second execution by lethal injection.

Mr. Smith also plausibly alleges that "Defendants' disparate treatment" is not "rationally related to a legitimate government interest." SAC ¶ 269. Defendants contend that "the State has an interest in 'preserving the dignity of the procedure,' *Baze*, 553 U.S. at 57, and allocating its resources to ensure executions occur as expeditiously as possible." Defs. Mot. 20. But those interests apply equally to all executions. Defendants make no attempt to explain why those interests justify different outcomes for Mr. Hamm (and Mr. Miller) than for Mr. Smith.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to dismiss the SAC.

Respectfully submitted,

*/s/ Andrew B. Johnson*

Andrew B. Johnson (ASB: 8504-r76j)
BRADLEY ARANT BOULT CUMMINGS, LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203
Tel: (205) 521-8000
Fax: (205) 521-8800
ajohnson@bradley.com

Jeffrey H. Horowitz (NY Bar No. 3949070)
David A. Kerschner (NY Bar No. 5126420)
Robert M. Grass (NY Bar No. 5126420)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019-9710
Tel: (212) 836-8000
Fax: (212) 836-8689
jeffrey.horowitz@arnoldporter.com
david.kerschner@arnoldporter.com
robert.grass@arnoldporter.com

Angelique Ciliberti (ASB: 1504-T44C)

28

ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Tel: (202) 942-5000
Fax: (202) 942-5999
angelique.ciliberti@arnoldporter.com

*Attorneys for Plaintiff Kenneth Eugene Smith*

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2023, I electronically filed the foregoing with the Clerk of the Court using the Pacer system, which will send notification to the following:

Richard D. Anderson
A. Reid Harris
Assistant Attorney General
Office of the Attorney General
Capital Litigation Division
501 Washington Avenue
Montgomery, AL 36130
Richard.Anderson@AlabamaAG.gov
Reid.Harris@AlabamaAG.gov

Thomas A. Wilson
Deputy Solicitor General
Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130
Thomas.Wilson@AlabamaAG.gov

*Attorneys for Defendants*

_/s/ Andrew B. Johnson_
Of Counsel