# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **KENNETH EUGENE SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 2:22-cv-00497-RAH** |
| | ) | |
| **v.** | ) | CAPITAL CASE |
| | ) | |
| **JOHN Q. HAMM, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## ANSWER TO SECOND AMENDED COMPLAINT

Steve Marshall
*Alabama Attorney General*

Richard D. Anderson*
*Alabama Assistant Attorney General*
 *Counsel of Record

Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130-0152
(334) 242-7300
Richard.Anderson@AlabamaAG.gov

July 19, 2023

Defendants John Q. Hamm, Terry Raybon, and Steve Marshall, in their official capacities, for their answer to Plaintiff Kenneth Eugene Smith's amended complaint,[1] state as follows. Any allegation in said complaint not expressly admitted is denied.

## RESPONSE TO INTRODUCTION

1.      Admitted to the extent that Kenneth Smith has been sentenced to death and is in the custody of the Alabama Department of Corrections ("ADOC") at William C. Holman Correctional Facility ("Holman").

2.      Admitted to the extent that Smith sought to bar his execution through lethal injection by means of this action.

3.      To the extent that Smith alleges what he feared, Defendants lack sufficient information to admit or deny his claims. Defendants deny that this paragraph presents an accurate account of the execution of Joe Nathan James.

4.      Denied.

5.      Admitted to the extent that the preparations for Alan Miller's execution were unsuccessful, that Miller was examined following the aborted execution, and that Miller made allegations in a lawsuit filed in the Middle District of Alabama. Otherwise denied.

_____

1. Doc. 71.

6.      Admitted to the extent that Smith was the next scheduled execution.

7.      Admitted to the extent that ADOC counsel sent an e-mail to Smith's counsel at approximately 7:45 p.m., the contents of which will speak for themselves, and that final preparations for Smith's execution began at a time when no court had granted any stay of the proceedings.

8.      Admitted to the extent that Barber was secured in the execution chamber prior to the entry of the stay, that the Eleventh Circuit Court of Appeals granted a stay, and that Smith remained secured in the execution chamber during the course of that stay. Defendants deny that "the execution continued" past the point at which a stay was entered.

9.      Admitted to the extent that execution witnesses were not brought to Holman. Defendants lack sufficient information to admit or deny Smith's allegations about his thought process.

10.     Admitted to the extent that after the stay was lifted, preparations for Smith's execution began, and the IV team attempted to gain venous access.

11.     Defendants deny that Smith was placed in "an inverse crucifixion position" or that any intramuscular sedative was administered to Smith. Admitted to the extent that (1) pursuant to the lethal injection protocol, an attempt to obtain venous access through a central line procedure was made and that, as is standard in such procedures, (2) a local anesthetic was administered at the site where the central

line was attempted, and (3) Smith violently struggled and resisted attempts to carry out his lawful execution, ultimately preventing the attempt to place a central line.

12.     Admitted that Smith's counsel sent the email described. Defendants lack sufficient information to admit or deny the allegation of "unverified reports…circulating from media witnesses."

13.     Admitted to the extent that the preparations for Smith's execution ceased prior to midnight.

14.     This paragraph contains Smith's arguments and conclusions rather than any genuine allegation of fact, and hence, it is denied.

15.     Denied.

16.     Admitted.

17.     This paragraph contains Smith's arguments and conclusions rather than any genuine allegation of fact, and hence, it is denied.

## JURISDICTION AND VENUE

18.     Admitted.

19.     Admitted.

20.     Admitted.

## PARTIES

21.     Admitted.

*Defendant Hamm*[2]

22.    Admitted.

23.    Admitted.

24.    Admitted to the extent that Defendant Hamm was present at Smith's aborted execution on November 17, 2022, and that he usually is responsible for maintaining an open line to the Governor and the Attorney General. The Commissioner or his or her designee must be present at Holman for executions.

25.    Admitted to the extent that Defendant Hamm has authority to approve the protocols and procedures of ADOC.

26.    Admitted to the extent that Defendant Hamm has such powers and authorities as are conveyed to him under Alabama law.

*Defendant Raybon*

27.    Admitted.

28.    Admitted.

29.    Admitted, with the exception of that certain responsibilities set out in the Protocol may be carried out by the warden's designee.

30.    Admitted to the extent that Warden Raybon has those responsibilities and that he performs his duties in a manner consistent with the Alabama and United

---

[2] Defendants note that, pursuant to this Court's partial granting of the Motion to Dismiss, all individual capacity claims have been dismissed.

States constitutions.

31.    Admitted.

*Defendant Marshall*

32.    Admitted.

33.    Admitted to the extent that Defendant Marshall has the powers and responsibilities entrusted to him under Alabama law.

34.    Admitted to the extent that the Office of the Attorney General files motions to set an execution date at the appropriate time as provided for under Alabama law, such motions may be withdrawn under appropriate circumstances, and the Office of the Attorney General provides legal representation and advice to many state agencies, including ADOC. Denied to the extent that the Office of the Attorney General has direct control over the actions of ADOC.

35.    Admitted to the extent that the Office of the Attorney General maintains an open line to the ADOC Commissioner (or his or her designee) during each execution.

36.    Admitted to the extent that the Office of the Attorney General informs the Commissioner (or his or her designee) of any stays that would prevent an execution from going forward.

37.    Denied.

*Defendant Wood*

38.     Defendant Wood was struck as a defendant.

39.     Defendant Wood was struck as a defendant.

*John Does 1–3 and John Does 4–6*

40.     The Doe defendants were struck as defendants.

41.     The Doe defendants were struck as defendants.

42.     The Doe defendants were struck as defendants.

43.     The Doe defendants were struck as defendants.

44.     The Doe defendants were struck as defendants.

## CASE OR CONTROVERSY

45.     Admitted.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

46.     Admitted.

## FACTUAL ALLEGATIONS

**A.     ADOC's Lethal Injection Protocol**

47.     Admitted to the extent that ADOC's Protocol has been released in redacted form.

48.     Admitted.

49.     Admitted to the extent that the open line is used to communicate relevant information.

50.     Denied.

51.     Admitted to the extent that ADOC complies with any stay of execution that is put into place.

52.     Admitted to the extent that ADOC complies with any stay of execution that is put into place.

53.     Admitted.

54.     Admitted to the extent that ADOC counsel confirmed that intramuscular sedation is not a part of the Protocol.

55.     Admitted.

56.     Admitted.

57.     Admitted to the extent that ADOC counsel confirmed that lidocaine is not an intramuscular sedative.

58.     Admitted.

59.     Admitted.

60.     Admitted that ADOC does not employ intramuscular sedatives in the lethal injection process.

61.     Admitted that the Court asked whether "[a] topical cream would be okay, but a shot would not."

62.     Admitted to the extent that ADOC counsel informed the Court that speculations that an intramuscular sedative had been administered to Joe James were unfounded, and that no intramuscular sedative would be given to Smith.

63.    Admitted.

64.    Denied.

65.    Admitted.

66.    Admitted.

67.    Admitted.

68.    Admitted.

69.    Admitted.

70.    This paragraph contains Smith's arguments and conclusions rather than any genuine allegation of fact, and hence, it is denied.

**B.    Previous events.**

71.    Admitted to the extent that James's execution was ordered to be held on July 28, 2022.

72.    Denied.

73.    Admitted to the extent that lethal injection drugs were not administered to James at 6 p.m.

74.    Admitted to the extent that James was pronounced dead at or around 9:27 p.m.

75.    Admitted to the extent that before James was shown to witnesses, the IV team gained venous access.

76.    Admitted to the extent that Dr. Joel Zivot is employed by Emory

University School of Medicine and that an independent autopsy was performed following James's execution.

77.     Denied.

78.     Admitted to the extent that the Protocol allows for the performance of a central line procedure and that no central line procedure was attempted with James.

79.     Denied.

80.     Admitted to the extent that "cutdown" procedures are not authorized or conducted pursuant to the Protocol.

81.     Admitted to the extent that this is a postmortem photograph of James.

82.     Denied.

83.     Admitted to the extent that the Protocol does not call for intramuscular injections.

84.     Admitted to the extent that James made no final statement.

85.     Admitted to the extent that the Protocol provides an opportunity for the condemned to make a last remark.

86.     Admitted to the extent that ADOC did not disclose details regarding the preparations for execution of James and that ADOC officials made a statement following the execution.

87.     Admitted to the extent that ADOC officials made a statement following the execution.

88.     Admitted to the extent that ADOC did not disclose details regarding the preparations for execution of James.

89.     Admitted to the extent that ADOC has not since provided such details.

90.     Admitted to the extent that ADOC denied sedating James prior to his execution.

91.     This paragraph contains Smith's arguments and conclusions rather than any genuine allegation of fact, and hence, it is denied.

92.     Admitted to the extent that the referenced news article was published.

93.     Admitted.

94.     Admitted that preparations for Miller's execution began after the Eleventh Circuit's stay was lifted.

95.     Admitted to the extent that after Miller was secured to the gurney, the IV team began attempting to obtain intravenous access in an appropriate manner. Smith's characterizations of that process are denied.

96.     Denied.

97.     Denied.

98.     Denied.

99.     Admitted to the extent that Miller was informed that his execution was postponed.

100.   Denied.

101.   Admitted to the extent that ADOC officials gave a statement. Smith's characterization of that statement is denied.

102.   Admitted to the extent that the State moved to reset Miller's execution.

103.   Admitted that this Court denied the motion to dismiss in Miller's case.

**C.     Smith's Lawsuit.**

104.   Admitted.

105.   Admitted.

106.   Admitted.

107.   Admitted.

108.   Admitted.

109.   Admitted.

110.   Admitted.

111.   Admitted.

112.   Admitted.

113.   Admitted.

114.   Admitted.

115.   Admitted.

116.   Admitted to the extent that this Court found Smith's claim "not time-barred in its entirety" and denied the motion for leave to amend.

117.   Admitted.

118.   Admitted.

119.   Admitted.

120.   Admitted.

121.   Admitted.

122.   Admitted.

123.   Admitted.

124.   Admitted to the extent that Smith sought a stay of execution in this Court.

125.   Admitted.

126.   Admitted that Smith subsequently appealed to the Eleventh Circuit Court of Appeals.

127.   Admitted that a stay was issued at 7:59 p.m.

128.   Admitted.

129.   Admitted.

**D.     Smith's Allegations Regarding the Preparations for his Execution.**

130.   Denied.

131.   Denied.

132.   This paragraph contains Smith's arguments and conclusions rather than any genuine allegation of fact, and hence, it is denied.

133.   Defendants lack sufficient information to admit or deny Smith's

allegations regarding his perceptions and thoughts.

134.   Admitted that Warden Raybon and a member of the IV team attempted to perform a vein assessment in preparation for Smith's execution.

135.   Admitted that Warden Raybon and a member of the IV team attempted to perform a vein assessment in preparation for Smith's execution.

136.   Admitted that Smith refused to comply with the attempt to perform a vein assessment.

137.   Admitted to the extent that no second attempt to assess Smith's veins occurred at his cell.

138.   Admitted.

139.   Admitted.

140.   Admitted.

141.   Admitted to the extent that corrections officers were stationed outside Smith's cell and that the cell front consists of metal bars with a plexiglass cover.

142.   Admitted.

143.   Smith's argumentative characterizations and claims of disruption are denied.

144.   Admitted.

145.   Admitted to the extent that litigation was ongoing after 6:00 p.m. Defendants lack sufficient information to admit or deny the extent of Smith's

knowledge.

146.   Admitted.

147.   Admitted that Smith's counsel misunderstood the requirements of the Protocol.

148.   Admitted to the extent that preparations for Smith's execution began at a time when no stay was in place. Defendants lack sufficient information to admit or deny the extent of Smith's knowledge.

149.   Admitted to the extent that Smith placed a phone call from his cell shortly before he was moved to the execution chamber.

150.   Admitted to the extent that corrections officers moved Smith to the execution chamber.

151.   Admitted to the extent that the process of moving the condemned to the chamber includes appropriate restraints.

152.   Admitted that the Eleventh Circuit issued a stay at 7:59 p.m.

153.   Denied.

154.   Admitted to the extent that Smith was moved to the execution chamber and secured at or about the time that Defendants learned the Eleventh Circuit had issued a stay.

155.   Admitted to the extent that Smith was properly secured to the gurney, otherwise denied.

156.   Admitted to the extent that Smith was properly secured to the gurney, otherwise denied.

157.   Admitted to the extent that persons dressed in business attire were present.

158.   Admitted.

159.   Admitted to the extent that after entry of the stay preparations for the execution ceased, ADOC counsel confirmed having received Smith's counsel's e-mail and shortly thereafter notified Smith's counsel that a motion to lift the stay had been filed in the United States Supreme Court.

160.   Denied.

161.   Admitted to the extent that Smith remained properly secured to the gurney. Defendants lack sufficient information to admit or deny Smith's statements of belief.

162.   Admitted.

163.   Defendants lack sufficient information to admit or deny Smith's statements of belief.

164.   Admitted to the extent that there is a clock in the execution chamber. Defendants lack sufficient information to admit or deny Smith's perceptions.

165.   Admitted to the extent that there are lights in the ceiling of the execution chamber. Defendants lack sufficient information to admit or deny Smith's

statements of belief or perceptions.

166.   Defendants lack sufficient information to admit or deny Smith's statements of belief or perceptions.

167.   Admitted to the extent that Smith was informed that his witnesses would be present at the appropriate time. Defendants lack sufficient information to admit or deny Smith's statements of belief or perceptions.

168.   Admitted.

169.   Defendants lack sufficient information to admit or deny Smith's statements of belief or perceptions.

170.   Admitted to the extent that preparations for Smith's execution began after the United States Supreme Court issued its order lifting the stay of execution.

171.   Admitted to the extent that preparations for Smith's execution began after the United States Supreme Court issued its order lifting the stay of execution.

172.   Admitted to the extent that preparations for Smith's execution began after the United States Supreme Court issued its order lifting the stay of execution.

173.   Admitted to the extent that preparations for Smith's execution began after the United States Supreme Court issued its order lifting the stay of execution. Defendants lack sufficient information to admit or deny what Smith perceived at other times.

174.   Admitted to the extent that a third person was present at times,

observing the efforts of the IV team.

175.   Denied.

176.   Denied.

177.   Admitted to the extent that preparations for Smith's execution began after the United States Supreme Court issued its order lifting the stay of execution.

178.   Admitted to the extent that the two members of the IV team were present in the execution chamber during the attempts to gain IV access.

179.   Admitted.

180.   Admitted to the extent that the IV team made appropriate efforts to obtain IV access.

181.   Denied.

182.   Defendants lack sufficient information to admit or deny Smith's statements of belief or perceptions.

183.   Admitted to the extent that the IV team made appropriate efforts to obtain IV access.

184.   Admitted to the extent that Smith expressed a desire to call the court.

185.   Admitted to the extent that the IV team made appropriate efforts to obtain IV access.

186.   Admitted to the extent that the IV team made appropriate efforts to obtain IV access, including using a "vein finder" that emitted light, and that the

attempts to gain IV access were obstructed when Smith began to struggle against the IV team. Defendants deny that Smith was not attempting to fight.

187.   Smith's characterizations of appropriate attempts to gain IV access are denied. Defendants lack sufficient information to admit or deny Smith's statements of belief or perceptions.

188.   Denied.

189.   Defendants deny that any photographs were taken.

190.   Admitted to the extent that Smith was placed in a "Trendelenburg Position" as part of the appropriate efforts to gain IV access. Defendants deny that Smith was placed or left in an "inverse crucifixion position."

191.   Admitted to the extent that some personnel left the chamber. Defendants deny that Smith was suspended upside down.

192.   Defendants deny that Smith was left "suspended upside down."

193.   Admitted to the extent that some personnel returned to the chamber.

194.   Admitted to the extent that a licensed physician attempted to perform a central line procedure, as provided for by the Protocol.

195.   Admitted to the extent that a licensed physician attempted to perform a central line procedure, as provided for by the Protocol.

196.   Admitted to the extent that Smith resisted efforts to perform a central line procedure.

197.   Admitted to the extent that a licensed physician attempted to perform a central line procedure, as provided for by the Protocol.

198.   Admitted to the extent that a licensed physician attempted to perform a central line procedure, as provided for by the Protocol.

199.   Defendants lack sufficient information to admit or deny Smith's statements of belief or perceptions.

200.   Defendants lack sufficient information to admit or deny Smith's statements of belief or perceptions.

201.   Admitted to the extent that Smith incorrectly claimed that the central line procedure violated this Court's order.

202.   Admitted to the extent that administration of a local anesthetic is a standard part of performing a central line procedure. Defendants deny that any sedative was administered to Smith. Defendants lack sufficient information to admit or deny Smith's statements of belief or perceptions.

203.   Smith's misrepresentation of this Court's order is denied.

204.   Admitted to the extent that a licensed physician attempted to perform a central line procedure, as provided for by the Protocol.

205.   Admitted to the extent that a licensed physician attempted to perform a central line procedure, as provided for by the Protocol. Defendants lack sufficient information to admit or deny Smith's statements of belief or perceptions.

206.   Admitted to the extent that Smith strenuously resisted the efforts to perform a central line, necessitating further restraint by ADOC personnel. Defendants deny that Smith did not resist.

207.   Admitted to the extent that a licensed physician attempted to perform a central line procedure, as provided for by the Protocol.

208.   Defendants lack sufficient information to admit or deny Smith's statements of belief or perceptions.

209.   Admitted to the extent that Smith strenuously resisted the efforts to perform a central line procedure.

210.   Admitted to the extent that a licensed physician attempted to perform a central line procedure, as provided for by the Protocol. Defendants lack sufficient information to admit or deny Smith's statements of belief or perceptions.

211.   Denied.

212.   Denied.

213.   Admitted to the extent that the violence of Smith's struggles prevented the central line procedure from being successfully performed.

214.   Defendants lack sufficient information to admit or deny Smith's statements of belief or perceptions.

215.   Admitted to the extent that no further attempts to gain IV access were made.

216.   Defendants lack sufficient information to admit or deny Smith's statements of belief or perceptions.

217.   Admitted to the extent that witnesses and media were not brought to Holman. Defendants lack sufficient information to admit or deny Smith's allegations regarding "unverified reports" or rumors.

218.   Admitted to the extent that that no immediate response was made to counsel's e-mail.

219.   Defendants lack sufficient information to admit or deny Smith's statements of belief or perceptions.

220.   Admitted to the extent that that Smith was told that the attempts to gain IV access were over.

221.   Defendants lack sufficient information to admit or deny Smith's statements of belief or perceptions.

222.   Admitted to the extent that the one IV line that was successfully established was removed after efforts to place a second line or to perform a central line procedure failed. Defendants lack sufficient information to admit or deny Smith's statements of belief or perceptions.

223.   Admitted to the extent that there were no further legal proceedings that night after the Supreme Court lifted its stay of execution. Defendants lack sufficient information to admit or deny Smith's statements of belief or perceptions.

224.   Admitted to the extent that Smith remained strapped to the gurney for a short time.

225.   Admitted to the extent that Smith was removed from the execution chamber and returned to his cell.

226.   Admitted to the extent that Smith was removed from the execution chamber and returned to his cell.

227.   Admitted to the extent that Smith was removed from the execution chamber and returned to his cell. Defendants lack sufficient information to admit or deny Smith's statements of belief or perceptions.

228.   Admitted to the extent that Smith was removed from the execution chamber and returned to his cell. Defendants lack sufficient information to admit or deny Smith's statements of belief or perceptions.

229.   Admitted to the extent that Smith was taken to the infirmary for a body chart.

230.   Admitted to the extent that Smith was returned to the holding cell and that he was given a new uniform. Defendants deny that Smith was "tortured." Defendants lack sufficient information to admit or deny Smith's statements of belief or perceptions.

231.   Admitted.

232.   Admitted.

233.   Denied.

234.   Denied.

235.   Defendants lack sufficient information to admit or deny Smith's statements of belief or perceptions.

236.   Denied.

237.   Denied.

238.   Defendants lack sufficient information to admit or deny that Smith and Miller are "the only living execution survivors in the United States."

**E.     Smith's Allegations Regarding the Protocol.**

239.   This paragraph contains Smith's arguments and conclusions rather than any genuine allegation of fact, and hence, it is denied.

240.   Admitted to the extent that the preparations for an execution are not carried out in public view.

241.   Admitted that ADOC maintains the confidentiality and privacy of personnel who participate in executions.

242.   Admitted to the extent that only authorized state personnel witness the preparations for executions.

243.   Denied.

244.   Admitted to the extent that ADOC was not able to obtain IV access during the preparations for the execution of Doyle Hamm.

245.   Admitted to the extent that ADOC personnel made public statements. Smith's argumentative characterizations and conclusions are denied.

246.   Admitted to the extent that a settlement was reached in Hamm's case. Smith's argumentative characterizations and conclusions are denied.

247.   Because the Protocol is not advisory, this allegation is denied.

248.   Admitted to the extent that Doyle Hamm had a history of medical issues and intravenous drug use. Smith's arguments and conclusions are denied.

249.   Because the Protocol is not advisory, this allegation is denied.

**F.   Nitrogen Hypoxia.**

250.   Admitted to the extent that the Eleventh Circuit found nitrogen hypoxia available as a matter of law in *Price v. Dunn*, 920 F.3d 1317 (11th Cir. 2019).

251.   Admitted to the extent that nitrogen hypoxia does not require IV access.

## FIRST CLAIM FOR RELIEF

252.   Defendants incorporate their responses to paragraphs 1 through 251.

253.   Admitted.

254.   Admitted.

255.   Admitted.

256.   Admitted to the extent that the United States Supreme Court has, in dicta, spoken to a "hypothetical situation" in which "a series of abortive attempts at electrocution" could amount to an Eighth Amendment violation. *Baze v. Rees*, 553

25

U.S. 35, 50 (2008).

257.   Denied.

258.   Admitted to the extent that Defendants were aware of the Eleventh Circuit's opinion.

259.   Denied.

260.   Denied. Defendants note that Smith admitted that he refused to allow a vein assessment prior to his execution. Doc. 71 ¶¶ 133–37.

261.   Admitted to the extent that the IV team made a reasonable effort to obtain IV access during the period in which no stay was in place.

262.   Admitted to the extent that only one IV line was successfully established for Smith.

263.   Denied.

264.   This paragraph contains Smith's arguments and conclusions rather than any genuine allegation of fact, and hence, it is denied.

265.   Denied.

266.   Denied.

### SECOND CLAIM FOR RELIEF

267.   Defendants incorporate their responses to paragraphs 1 through 251.

268.   Denied.

269.   Denied.

270.   Denied.

## THIRD CLAIM FOR RELIEF

This Court has dismissed the allegations in Claim Three (paragraphs 271 through 275). These paragraphs are denied.

## RESPONSE TO PRAYER FOR RELIEF

Defendants maintain that Smith has not shown and cannot show that his rights under the Constitution were violated by the unsuccessful preparations for his execution. Defendants further maintain that Smith cannot show that his rights under the Constitution would be violated if he were executed by lethal injection. Consequently, no relief is warranted.

## DEFENSES

A.   Smith is not entitled to the relief he seeks.

B.   Defendants deny any claim or allegation of Smith's amended complaint that is not expressly admitted above.


Respectfully submitted on this the 19th day of July 2023.


Respectfully submitted,

Steve Marshall
*Attorney General*


27

**/s/ Richard D. Anderson**
Richard D. Anderson (ASB-2655-R52A)

A. Reid Harris (ASB-1624-D29X)
*Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36130-0152
Telephone: 334.35.8674
Facsimile: 334.353.8400
Reid.Harris@AlabamaAG.gov

**Counsel for Defendants**

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 19, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

**/s/ Richard D. Anderson**
*Counsel for Defendants*